JOHNSON BOTTINI, LLP
FRANK J. JOHNSON (174882)
frankj@johnsonbottini.com
FRANCIS A. BOTTINI, JR. (175783)
frankb@johnsonbottini.com
DEREK J. WILSON (250309)
derekw@johnsonbottini.com
655 W. Broadway, Suite 1400
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 233-5535

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MARY E. BARBOUR AS TRUSTEE FOR THE MARY E. BARBOUR FAMILY TRUST ONE, Derivatively On Behalf of BROCADE COMMUNICATIONS SYSTEMS, INC.,

Plaintiff,

vs.

GREGORY L. REYES, DAVID L. HOUSE, MICHAEL KLAYKO, RICHARD DERANLEAU, KUMAR MALAVALLI ANTONIO CANOVA, MICHAEL J. BYRD, STEPHANIE JENSEN, NEIL DEMPSEY, SANJAY VASWANI, L. WILLIAM KRAUSE, ROBERT R. WALKER, GLENN C. JONES, MICHAEL J. ROSE, SETH D. NEIMAN, NICHOLAS G. MOORE, CHRISTOPHER B. PAISLEY, WILLIAM K. O'BRIEN, LARRY SONSINI, MARK LESLIE, TYLER WALL, RENATO A. DIPENTIMA, JOHN W. GERDELMAN, KPMG, LLP, WILSON SONSINI GOODRICH & ROSATI, P.C. AND DOES 1-25, inclusive,

Defendants,

and

BROCADE COMMUNICATIONS SYSTEMS, INC., a Delaware corporation,

Nominal Defendant.

Case No. C 08-02029 CRB

PLAINTIFF MARY E. BARBOUR'S CASE MANAGEMENT CONFERENCE STATEMENT

Date: June 12, 2008
Time: 1:30 p.m.
Dept.: 8

Plaintiff Mary E. Barbour submits this Case Management Statement pursuant to Civil Local Rule 16.10.[1]

## I. JURISDICTION AND SERVICE

The basis for the Court's subject matter jurisdiction in this case is Article III of the United States Constitution and 28 U.S.C. § 1331 because of claims arising under RICO, 18 U.S.C. §§ 1962(c) and 1964. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

With respect to service, all defendants have been served and the proofs of service have been filed with the Court.

## II. FACTS AND PROCEDURAL BACKGROUND

On April 15, 2008, Plaintiff Mary E. Barbour, as Trustee of the Mary E. Barbour Family Trust One, filed the present derivative action. The *Barbour* complaint alleges federal and state law claims pertaining to the illegal manipulation of stock options that occurred at Brocade Communications Systems, Inc. By order dated May 27, 2008, the Court granted Plaintiff's Administrative Motion to Consider Whether Cases Should Be Related Pursuant to L.R. 3-12(b), in which the Court ordered the cases related but did not consolidate the *Barbour* action with the related actions pending before this Court, including *In re Brocade Communications Systems, Inc. Derivative Litigation*, No. C05-02233 CRB and *In re Brocade Communication Systems, Inc. Sec. Litig.*, Case No. C-05-2042 CRB.

The *Barbour* complaint adds new claims for violations of and conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c) and 1964, which have not been asserted in any other related litigation. It also adds several new claims for declaratory relief (Counts XII through XIV) which have not been asserted in any other related litigation. The declaratory relief claims seek a declaration that Brocade has no further duty to

[1] Due to the fact that most of the individual defendants have not yet made a general appearance, it is not possible to submit a joint CMC Statement as required by the local rules.

advance legal fees and expenses to Reyes (Count XII) and Jensen (Count XIII) and further seeking a declaration that Reyes, Jensen, and certain other defendants have a duty to return to Brocade legal fees and expenses that have been advanced by Brocade to such defendants. The *Barbour* complaint also names the following defendants who are not defendants in any other related derivative action: John Gerdelman, Renato DiPentima, Tyler Wall, Wilson Sonsini Goodrich & Rosati, P.C., Michael Rose, and Glenn C. Jones.

## III. OTHER RELATED ACTIONS

The status of the related actions is summarized by Brocade in the Joint Case Management Conference Statement filed in *In re Brocade Communications Systems, Inc. Derivative Litigation*, No. C05-02233 CRB, to which Plaintiff respectfully refers the Court to avoid duplication.

## IV. PRINCIPAL FACTUAL ISSUES

The principal disputed factual issues in the case are whether Brocade has no further duty to advance fees and expenses to Reyes and Jensen; whether Reyes and Jensen have a duty to return to Brocade the legal fees and expenses they have been advanced; whether the defendants violated and/or conspired to violate RICO; whether the defendants breached their fiduciary duties as officers and directors of Brocade with respect to their alleged involvement in the stock options manipulation scheme; whether KPMG LLP committed auditor malpractice; and whether Wilson Sonsini Goodrich & Rosati, P.C. committed legal malpractice.

## V. PRINCIPAL LEGAL ISSUES

As to the RICO claims, the principal legal issues will be whether each defendant committed one or more predicate acts in furtherance of the alleged conspiracy and whether each defendant conspired to violate RICO. To demonstrate a pattern of racketeering activity, a plaintiff must show at least two predicate acts of racketeering activity occurring within a ten-year period. 18 U.S.C. § 1961(5); *Sell v. Zions First Nation Bank*, 2006 U.S. Dist. LEXIS 6558 (D. Ariz.). With respect to Reyes and Jensen, there is no dispute that such defendants committed multiple predicate acts which constitute RICO violations since such defendants have been convicted of multiple criminal securities violations. When Congress passed the Private Securities

Litigation Reform Act of 1995, it specifically held that criminal securities convictions constitute predicate acts under RICO:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter [18 USC § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962 [18 USC § 1962]. ***The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.***

RICO, 18 U.S.C. § 1964(c) (emphasis added). The other legal issues relevant to the RICO claims are: (1) what level of particularity must be pled; (2) what must be pled to constitute a conspiracy to violate RICO; and (3) what must be pled to establish an "associated-in-fact enterprise." Last year, the Ninth Circuit issued an *en banc* clarification of RICO standards. In *Odom v. Microsoft*, 486 F.3d 541 (9th Cir. 2007), the Court held that RICO claims are subject to F.R.C.P. 9(b) and therefore must be pled with specificity, but that knowledge or state of mind may be averred generally consistent with F.R.C.P. 8. *Odom*, 486 F.3d at 553-54. With respect to pleading an "associated-in-fact enterprise," the Ninth Circuit held that an associated-in-fact enterprise does not require any ascertainable separate structure and that it is not a difficult task to allege an associated-in-fact enterprise. *Odom*, 486 F.3d at 551-53. The Ninth Circuit also reiterated that RICO is a remedial statute and is to be broadly interpreted and liberally construed. Moreover, with respect to the "continuity" element, the Court stated that "the continuity requirement does not, in itself, require that every member [of the conspiracy] 'be involved in each of the underlying acts of racketeering or that the predicate acts be interrelated in any way.'" *Odom*, 486 F.3d at 552-53 (quoting *United States v. Qaoud*, 777 F.2d 1105, 1116 (6th Cir. 1985)). Instead, the continuity requirement is focused on whether the defendants' behavior was an "ongoing" activity. Moreover, it is well-established under the law of conspiracy that a conspirator who joins the conspiracy late – even on the last day -- is jointly and severally liable for treble damages for the entire period of the conspiracy. *United States v. Dicesare*, 765 F.2d 890, 900 (9th Cir. 1985). *See*

*also United States v. Saavedra*, 684 F.2d 1293, 1301 (9th Cir. 1982) ("[A] conspirator who joins a pre-existing conspiracy is bound by all that has gone on before in the conspiracy."). Finally, with respect to what is necessary to plead a claim for conspiracy to violate RICO, the Ninth Circuit held that a claim for conspiracy to violate RICO will be upheld in all cases where the plaintiff has sufficiently pled an underlying violation of RICO. *Odom*, 486 F.3d at 547.

With respect to Plaintiff's auditor malpractice claims against KPMG, LLP, Plaintiff believes that the legal standards applicable to such claims – negligence – are straightforward. With respect to KPMG's potential defenses, Plaintiff anticipates that KPMG may argue that the knowledge of Reyes and other senior executives of Brocade should be attributable to Brocade and thus preclude a claim by Brocade that it relied on KPMG's clean audits and KPMG's failure to disclose the stock option backdating activity. Plaintiff believes that such an argument, were it to be advanced by KPMG as a defense, has no merit. Indeed, a similar situation was presented in the context of a shareholder derivative accounting malpractice claim in *In re Cendant Corp. Sec. Litig.*, 139 F. Supp. 2d 585, 597-98 (D.N.J. 2001). There, with respect to the accounting malpractice claim against Ernst & Young, the evidence demonstrated that most of the senior executives of Cendant participated in the fraud. Notwithstanding the knowledge and participation of the company's senior executives, the court denied a motion to dismiss filed by Ernst & Young. The court held that, regardless of the knowledge and participation of the individual defendants, a claim for accounting malpractice was stated against Ernst & Young since the plaintiff had alleged that Ernst & Young was aware of or recklessly disregarded the fraud and nonetheless failed to comply with its duty as an independent auditor to discover and/or report the fraud. *In re Cendant*, 139 F. Supp. 2d at 597-98. One of the key issues was whether the knowledge of the culpable senior executives should be attributable to the corporation. The court refused to attribute the executives' knowledge to the corporation since the executives, notwithstanding their statements that they believed they were acting in the best interests of the corporation, ultimately did not act in a manner that was in the company's best interests:

> . . . although the individuals who allegedly committed the fraud painted a false financial picture of the company with the intent to benefit the company, these actions were ultimately against the best

> interests of the company and should not be imputed to prevent Cendant from recovery against a separate, alleged wrongdoer, E&Y.

Here, despite Reyes' frequent protestations that he was merely seeking to benefit Brocade through his stock options backdating activity, those actions, which have cost Brocade hundreds of millions of dollars, were ultimately not in the best interests of Brocade. Thus, his conduct cannot be imputed to Brocade for the purpose of precluding a claim by Brocade against KPMG.

In *Cendant*, the court held that despite language in older cases to the effect that auditors do not have a duty to "ferret out" fraud, the passage of the PSLRA, the Sarbanes Oxley Act, and recent SEC accounting rules have heightened the duties of an auditor to public corporations. In denying Ernst & Young's motion to dismiss, the *Cendant* court noted:

> Cendant further reminds the Court that although Judge Posner concluded that auditors do not have a duty to "ferret out fraud," that concept has changed significantly since that case was decided in 1982. Specifically, the PSLRA imposes stricter duties on auditors to detect and report fraud, and new statements on auditing standards ("SASs") have been promulgated. *See* 15 U.S.C. § 78j-1(b)(3) (auditor has affirmative obligation to report fraud to SEC if the audited company does not); SAS 82 (auditor has duty to inform management of misstatements); AICPA Codification of Statements on Auditing Standards, AU 316.38 (2000). Finally, Cendant contends that it would be unfair to impute the fraud perpetrated by CUC managers to Cendant to avoid E&Y's liability for its own wrongdoing. Cendant Br., at 14. Cendant cites *Battenfeld v. Baird, Kurtz & Dobson*, in which a district court refused to impute such fraudulent actions to the surviving company of a merger. 60 F. Supp. 2d 1189, 1217-18 (D. Kan. 1999). *Battenfeld* held that the surviving corporation was a victim of the fraud of the original corporation because the actions of the individual who had painted a false financial picture were adverse to the interests of the company. *Id.* at 1218.
>
> Especially given the recent changes in accounting standards and the increased duties of auditors to report misstatements both to the SEC and to management, Cenco's concern that a company guilty of fraud might be able to shift liability in its entirety does not apply. Even if Cendant were to prevail, it would only be able to shift the portion of the damages ultimately found to be attributable to E&Y, not the entire amount and thus would not be unfair as in a full Cenco scenario. As in *Battenfeld*, although the individuals who allegedly committed the fraud painted a false financial picture of the company with the intent to benefit the company, these actions were ultimately against the best interests of the company and should not be imputed to prevent Cendant from recovery against a separate, alleged wrongdoer, E&Y. This motion is denied.

*In re Cendant*, 139 F.Supp.2d at 597-98.

With respect to Plaintiff's legal malpractice claims against Wilson Sonsini, Plaintiff does not anticipate any novel or unexpected legal issues. The legal standards applicable to such claims are well-established, and Plaintiff believes that Wilson Sonsini's legal advice with respect to stock options at Brocade for almost a decade, the presence of its founding partner on Brocade's board, and the firm's violation of Cal. R. Prof. Conduct 3-310 for more than two years, resulting in Wilson Sonsini's withdrawal from all the related cases in response to the motion to disqualify Wilson Sonsini filed in the state court action, provide ample evidence of the breach of professional responsibility.

## VI. MOTIONS

There are no pending motions. The key motions Plaintiff desires to file at the present time are the following: (1) a motion for summary adjudication as to Plaintiff's Twelfth Cause of Action against Reyes and Thirteenth Cause of Action against Jensen for declaratory relief relating to such defendants' obligation to return the legal fees advanced to them by Brocade, and for a declaration that Brocade has no further duty to advance fees and expenses to Reyes and Jensen; and (2) a motion to compel with respect to documents withheld by Brocade under claim of privilege.

With respect to the motions Plaintiff is ready to file, and would like to file as soon as possible, regarding advancement of legal fees and indemnification, Plaintiff points out that the convictions of Reyes and Jensen are both now final, as Reyes perfected his appeal on January 18, 2008 and Jensen perfected her appeal on March 26, 2008. Notwithstanding the appeals, the convictions now constitute final dispositions in the Ninth Circuit. *See Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988); *Collins v. D.R. Horton, Inc.*, 2007 U.S. App. LEXIS 22613, at *21 (9th Cir. Sept. 24, 2007). Thus, Brocade has no further duty to advance any legal fees or expenses to Reyes and Jensen, and Reyes and Jensen have an immediate duty to reimburse Brocade for the more than $53 million that Brocade has advanced to them. Federal public policy prohibits indemnification for violations of the federal securities laws. *Laventhol v. Horwath*, 637 F.2d 672, 676 (9th Cir. 1980). This federal policy, together with the final federal verdicts, pre-

empt and preclude Reyes and Jensen, who were unanimously convicted on all counts, from seeking indemnification under any state law or under any contractual indemnification agreements which are contrary to controlling federal precedent.[2]

Simply put, these defendants have an immediate obligation to return to Brocade the legal fees and expenses that they have been advanced. Nonetheless, Brocade has done nothing to seek the return of such fees and expenses from Reyes and Jensen. Indeed, far from seeking the return of such fees and expenses, Brocade continues to advance fees and expenses to Reyes and Jensen. Brocade's filings to this Court in connection with the sentencing of Reyes and Jensen stated that Reyes and Jensen had collectively been advanced $53,849,576 in legal fees and expenses as of January 2008 ($46,709,323 to Reyes and $7,140,253 to Jensen). Ignoring the additional amounts that Brocade has advanced to Reyes and Jensen since January 2008, and assuming Brocade could earn 4.7% by investing the money Reyes and Jensen owe it in a 30-year U.S. Treasury bond, Brocade has already lost $1,054,554 by not taking prompt action in January 2008 to seek the return of the $53,849,576 in fees and expenses from Reyes and Jensen.[3]

Time is money. Plaintiff has included the requisite declaratory relief claims in her complaint. No other complaint or proceeding other than the *Barbour* action contains a claim for declaratory relief. While the SLC filed a letter with this Court on June 9, 2008 stating that it wants to pursue many of the claims contained in the *Barbour* complaint (including the RICO claims) against 11 different defendants, the SLC states that it will not be able to file a complaint until "early August." Of course, after the complaint is filed, it will have to be served. Thus, the SLC will be in no position to do anything about the pressing indemnification issue until mid-September at the earliest. Brocade itself is without power to seek return of the fees since it granted plenary and exclusive authority over the claims to the SLC.

---

[2] Plaintiff points out that counsel for Brocade appears to concur with this fact. In a January 14, 2008 letter to the Court, Brocade's counsel stressed that federal public policy and precedent in the Ninth Circuit do not permit indemnification where a defendant has been convicted of violations of the federal securities laws.

[3] Calculated as follows, and based on the fact that five months have elapsed since the Reyes conviction became final in January 2008: $53,849,576 x 4.7% x 5/12.

Here, in contrast, Plaintiff was permitted to file a motion for summary adjudication as to Counts XII and XIII for declaratory relief 20 days from the date Plaintiff served Reyes and Jensen with the summons and complaint. F.R.C.P. 56(a). Reyes was personally served in this case on April 20, 2008 and Jensen was personally served on April 22, 2008.[4] Thus, the Federal Rules of Civil Procedure permitted Plaintiff to file a motion for summary judgment or adjudication as to Reyes and Jensen on May 12, 2008.

Plaintiff requests a hearing date and briefing schedule as soon as possible for a motion for summary judgment and/or adjudication as to her declaratory relief claims (Counts XII and XIII) against Reyes and Jensen. The necessary evidence already exists to move for summary adjudication as to the fact that: (1) Brocade has no further duty to advance fees and expenses to Reyes and Jensen; and (2) Reyes and Jensen have an immediate duty to return the advanced fees and expenses. Plaintiff will be prepared to address this issue more fully at the CMC.

The second motion Plaintiff seeks to file (if necessary) concerns documents improperly withheld by Brocade under claim of attorney-client privilege and/or work product. With respect to the documents recently produced by Brocade to Plaintiff, tens of thousands of documents have been withheld under privilege grounds. The privilege log produced by Brocade is almost six inches thick. The privilege log unequivocally states that most of the documents were withheld because of alleged attorney client and work product privileges relating to the Audit Committee's investigation.[5] Of course, this Court long ago held that the privileges otherwise applicable to such documents were waived due to Brocade's voluntary decision to cooperate with the government:

> The Court holds, however, that MoFo and WSG&R surrendered whatever privileges may have attached to the supbpoenaed materials when they shared their contents with the government. Because the law firms waived both the attorney-client privilege

---

[4] The proofs of service were filed with the Court on June 10, 2008.

[5] For example, Brocade has withheld a December 28, 2004 email between defendant Chris Paisley and defendants Moore, O'Brien, and attorneys Craig Martin and Paul Friedman of MoFo under the attorney client and work product privileges. The privilege log states the reason for withholding the documents as "Attorney client communication re Audit Committee Special investigation." Privilege log at BRCD-FCA 1000440. Brocade has improperly withheld tens of thousands of documents on identical grounds.

> and the work-product privilege when they disclosed the substance of their investigative interviews, reports, and conclusions with the government, the Court finds that these privileges pose no obstacle to Reyes' attempt to subpoena them.

*United States of America v. Reyes and Jensen*, 239 F.R.D. 591, 603 (N.D. Cal. 2006). Moreover, this Court held that the Ninth Circuit does not recognize selective waiver of the privileges: "In accord with every appellate court that has considered the issue in the last twenty-five years, this Court holds that Brocade's Audit Committee, and their attorneys at MoFo and WSG&R, cannot waive the attorney-client privilege selectively." *Id.* at 603. The Court further held that there can be no selective waiver of the work product privilege in this case. *Id.* at 603-04.

Notwithstanding the prior order from this Court holding that Brocade has waived the attorney client and work product privileges, Brocade has withheld tens of thousands of documents on privilege grounds. Given the direct applicability of the Court's prior December 22, 2006 Order, Plaintiff requests that the Court order Brocade to immediately produce the withheld documents to Plaintiff. Should Brocade refuse to do so, Plaintiff requests a hearing date and briefing schedule for a motion to compel.

## VII. DAMAGES

Plaintiff seeks several types of damages from defendants. Plaintiff seeks treble damages under RICO against all RICO defendants. The RICO damages are calculated as all damages incurred by Brocade as a result of the stock options backdating scheme. Those damages exceed $700 million. The damages are composed of the settlement Brocade recently had to pay to settle the securities fraud class action case ($160 million), the legal fees and expenses advanced to the individual defendants ($64,478,039 as of January 2008), the fine paid by Brocade to the SEC ($7 million), the costs and expenses incurred by Brocade relating to the backdated stock options (in excess of $50 million), legal fees and expenses incurred by Brocade as a result of the internal investigations and restatement of financial results, the loss of opportunity relating to the offer by Cisco to acquire the company (in excess of $400 million), damages to Brocade's reputation and goodwill, and other damages. Additional damages exist with respect to Plaintiff's professional malpractice claims against KPMG and WSGR consisting of the professional fees paid to such

advisors.

## VIII. AMENDMENT OF PLEADINGS

Plaintiff believes it is premature to set a deadline to amend the pleadings. Despite the fact that Plaintiff's counsel received certain documents in the state court action, the confidentiality order in that case precluded counsel from utilizing any such documents in this case. Thus, the present complaint was filed utilizing exclusively publicly-available documents. Plaintiff thus would like to incorporate documents produced in this case to draft an amended complaint, if necessary. Such documents would include the documents that Brocade has improperly withheld under the attorney-client and work product privileges. Thus, Plaintiff requests that the Court defer setting a deadline for amending the pleadings until after defendants have produced such documents.

## IX. EVIDENCE PRESERVATION

Plaintiff believes that the individuals who are defendants in the related actions have previously taken steps to preserve all relevant evidence. However, since there are new defendants in this case, such defendants should be ordered to immediately preserve all relevant documents.

## X. DISCLOSURES

The parties have not yet made the initial disclosures under F.R.C.P. 26(f). Plaintiff requests that a further CMC be set and that the parties be ordered to comply with their FRCP 26(f) disclosures prior to such further CMC.

## XI. SETTLEMENT AND ADR

Plaintiff believes it may make sense to explore settlement under the direction of the Court or an experienced mediator.

## XII. CONSENT TO MAGISTRATE JUDGE

Plaintiff does not consent to assignment of the case to a magistrate.

## XIII. OTHER SCHEDULING ISSUES

In light of the significant proceedings which have already occurred in the related cases, Plaintiff believes that a prompt trial date is warranted. Plaintiff believes that further dates for

designation of experts, discovery cutoff, hearing of dispositive motions, and other deadlines should be set at a further CMC.

**XIV. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES**

Plaintiff filed her "Certification of Interested Entities or Persons" on April 18, 2008 which stated: "Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report. "

Dated: June 11, 2008

JOHNSON BOTTINI, LLP

/s/ Francis A. Bottini, Jr.

Francis A. Bottini, Jr.

Attorneys For Plaintiff