1   accordance with GAAS and concluded that Brocade's financial statements fairly presented its

2   financial results in conformity with GAAP.

3       307.   In reaching these conclusions, KPMG unreasonably relied on uncorroborated

4   representations by Brocade management and/or unreasonably determined that the stock

5   compensation expense was immaterial to Brocade's financial statements. As a result, KPMG did not

6   comply with GAAS by unreasonably failing to exercise due professional care and skepticism and to

7   obtain sufficient competent evidential matter.   Instead, KPMG substituted management

8   representations for competent evidence and failed to take appropriate action to correct Brocade's

9   inconsistent and deficient public disclosures while issuing inaccurate audit reports.  Therefore,

10  KPMG deliberately acquiesced in or ratified the dishonest acts of, and receipt of improperly

11  backdated or otherwise manipulated stock options by Brocade insiders.

12                  **THE BROCADE BOARD**

13      308.   The Director Defendants, by their fiduciary duties of care, good faith and loyalty,

14  owed to Brocade a duty to ensure that the Company's financial reporting fairly presented the

15  operations and financial condition of Brocade in all material aspects.  In order to adequately carry

16  out these duties, it was and is necessary for the Director Defendants to know and understand the

17  material, non-public information to be disclosed or omitted from the Company's public statements.

18  This material, non-public information included the fact that Brocade's internal controls were non-

19  existent or materially inadequate and that defendants Reyes, Jensen, Byrd and Canova were

20  improperly backdating option grants to themselves, other employees and directors.

21      309.   The Director Defendants knew this material information through the Board meetings

22  that occurred since 1999, as well as at meetings of committees of the Board.

23      310.   Despite these duties, the Director Defendants negligently, recklessly and/or

24  intentionally caused or allowed, by their actions or inactions, the improper stock option grants

25  discussed herein to be issued and approved since at least 1999.

26      311.   Instead of properly disclosing the improper stock option backdating practices, the

27  Director Defendants caused or allowed these practices to continue unabated and undisclosed until

28  June 2006.

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1      312.    The standing committees of the Brocade Board responsible for compensation and

2    oversight are and have been the Compensation Committee and the Audit Committee.

3                              **The Compensation Committee**

4      313.    The Compensation Committee consists of defendants Dempsey, Krause, House and

5    Vaswani with Dempsey serving for over seven years; defendants Krause, House and Vaswani have

6    each served for at least three years. Since 1999, defendants Leslie, Neiman, O'Brien and Krause also

7    served on the Compensation Committee at various times.

8      314.    Pursuant to the Compensation Committee Charter, the Committee is charged as

9    follows:

10        The Compensation Committee shall, for each of the Company's executive officers,
          review and approve such executive officer's (i) annual base salary level; (ii) annual
11        incentive compensation; (iii) long-term incentive compensation; (iv) employment,
          severance and change-in-control agreements, if any; and (v) any other compensation,
12        ongoing perquisites or special benefit items. In so reviewing and approving
          executive compensation, the Compensation Committee shall:
13
                • identify corporate goals and objectives relevant to executive
14                compensation (including efforts by the Company to retain such
                  executives and the cost to the Company of each executive's
15                compensation or of all executive compensation as a whole);

16              • evaluate each executive's performance in light of such goals and
                  objectives and set each executive's compensation based on such
17                evaluation and such other factors as the Compensation Committee
                  deems appropriate and in the best interests of the Company; and
18
                • determine any long-term incentive component of each executive's
19                compensation based on awards given to such executive in past years,
                  the Company's performance, stockholder return and the value of
20                similar incentive awards relative to such targets at comparable
                  companies and such other factors as the Compensation Committee
21                deems appropriate and in the best interests of the Company.

22        The Compensation Committee shall report the results of such review and any
          action it takes with respect to the compensation of the Company's executive officers
23        to the Board.

24        Except for grants and awards to executive officers of the Company, the
          Compensation Committee may delegate to one or more officers of the Company its
25        authority to make grants and awards under the Company's incentive compensation or
          other equity-based plans *as the Compensation Committee deems appropriate and in*
26        *accordance with the terms of such plans*.

27    **Disclosure**

28        The Compensation Committee shall prepare the report on executive
          compensation that is required by SEC rules to be included in the Company's annual

                                        - 123 -

1   proxy statement.

2   **Reporting to the Board**

3       The Compensation Committee shall make regular reports to the Board. These
    reports shall include a review of any recommendations or issues that arise with
4   respect to Company compensation and benefits policies, executive compensation and
    any other matters that the Compensation Committee deems appropriate or is
5   requested to be included by the Board.

6   315.   Accordingly, as members of the Compensation Committee, defendants Dempsey,

7   Krause, House, Vaswani and Leslie bore direct responsibility to the issuance of option grants under

8   the Company's Plans.  In particular, the Compensation Committee: (i) discharges the Board's

9   responsibilities relating to compensation of Brocade's executive officers, including evaluation of the

10  CEO; (ii) produces an annual report on executive compensation for inclusion in Brocade's proxy

11  statements; and (iii) exercises overall responsibility for approving and evaluating executive officer

12  compensation plans. Though the Compensation Committee may, according to its charter, delegate

13  its authority, the committee remained under a duty to ensure that the delegee, defendant Reyes, acted

14  in accordance with the Plans.

15  316.   Therefore, the members of Brocade's Compensation Committee are responsible for

16  administering the issuance of option grants under the Company's 1999 Stock Option Plan.

17  Accordingly, defendants Dempsey, Krause, House, Vaswani and Leslie were responsible to review

18  the stock option grants to Brocade executives and evaluate the appropriateness of the actions relative

19  to any authority delegated to defendant Reyes.   But, since at least 1999, such defendants

20  impermissibly delegated their authority to Reyes.  Moreover, on June 2003, the Compensation

21  Committee approved a recommendation to award Reyes 1.1 million options but failed to provide the

22  terms of the award. Instead, the Compensation Committee delegated to Reyes himself the authority

23  to choose the terms (*i.e.* grant date and exercise price), thus creating an obvious opportunity for him

24  to fraudulently manipulate the award to enrich himself.  Thus, these Director Defendants did not

25  fulfill their duties, therefore causing and allowing the Company's executives to obtain unreasonable

26  and unreported compensation via the backdating of stock option grants.

27  317.   The members of the Compensation Committee knew or should have known that: (i)

28  compensation practices were critical to the Company's success; (ii) executive and employee

- 124 -
AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  compensation schemes were heavily dependant upon stock option grants; (iii) Brocade's historical

2  stock option grants had highly variable grant dates that coincided with patterns of jumps in share

3  values following stock option grants; and (iv) the delegation of authority to defendant Reyes to

4  approve substantially all stock options granted to key employees utterly lacked any adequate internal

5  controls (*i.e.* segregation of duties), which provided Reyes with the opportunity to commit and

6  conceal unabated and consequent damages fraud on a unmitigated massive scale. Defendants Reyes,

7  Jensen, Byrd and Canova were unduly compensating Brocade's employees, officers and directors

8  and thereby permitted or condoned the unlawful practices described herein. Accordingly, through

9  the improper abdication of their duties and responsibilities as members of the Compensation

10  Committee, the misconduct of these defendants was a direct and proximate cause of the unlawful

11  practices alleged herein.

12  **The Audit Committee**

13      318.    The Audit Committee consists of defendants Walker, Jones and Rose. Since 1999,

14  defendants Neiman, Dempsey, Leslie, Sonsini, Paisley, Moore, Krause and O'Brien each served at

15  various times on the Audit Committee.

16      319.    Pursuant to its Charter, the Audit Committee is charged as follows:

17  **Financial Statements, Disclosure and Other Risk Management and Compliance Matters**

18

19  • Reviewing and discussing with management and the independent auditors the annual audited financial statements and quarterly unaudited financial statements, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," prior to filing the Company's Annual Reports on Form 10-K and Quarterly Reports on Form 10-Q, respectively, with the SEC;

20

21

22  • Directing the Company's independent auditors to review before filing with the SEC the Company's interim financial statements included in Quarterly Reports on Form 10-Q, using professional standards and procedures for conducting such reviews;

23

24

25  • Conducting a post-audit review of the financial statements and audit findings, including any significant suggestions for improvements provided to management by the independent auditors;

26

27  • Reviewing before release the unaudited quarterly operating results in the Company's quarterly earnings release;

28

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

- Overseeing compliance with the requirements of the SEC for disclosure of auditor's services and audit committee members, member qualifications and activities;

- Reviewing on a continuing basis the adequacy of the Company's system of internal controls, including meeting periodically with the Company's management and the independent auditors to review the adequacy of such controls and to review before release the disclosure regarding such system of internal controls required under SEC rules to be contained in the Company's periodic filings and the attestations or reports by the independent auditors relating to such disclosure;

- Providing a report in the Company's proxy statement in accordance with the rules and regulations of the SEC;

- Reviewing the Company's policies and practices with respect to risk assessment and risk management, including discussing with management the Company's major financial risk exposures and the steps that have been taken to monitor and control such exposures;

- Establishing procedures for receiving, retaining and treating complaints received by the Company regarding accounting, internal accounting controls or auditing matters and procedures for the confidential, anonymous submission by employees of concerns regarding questionable accounting or auditing matters;

- If necessary, instituting special investigations with full access to all books, records, facilities and personnel of the Company;

- As appropriate, obtaining advice and assistance from outside legal, accounting or other advisors (without seeking Board of Directors approval);

- Reviewing, approving and monitoring the Company's code of ethics for its senior financial officers;

- Reviewing management's monitoring of compliance with the Company's standards of business conduct and with the Foreign Corrupt Practices Act;

- Reviewing, in conjunction with counsel, any legal matters that could have a significant impact on the Company's financial statements;

- Reviewing the Company's financial and accounting reporting compliance relating to its employee benefit plans; and

- Reviewing and approving in advance any proposed related party transactions.

**Reporting to the Board**

- At least quarterly, reporting to the Board. This report shall include a review of any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, the performance and independence of the Company's independent auditors, the performance of the internal audit function and any other matters that the Audit Committee deems appropriate or is requested to be included by the Board;

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  • At least annually, reviewing and assessing the adequacy of this charter and
   recommend any proposed changes to the Board for approval; and

2

3  • At least annually, evaluating its own performance and report to the Board on
   such evaluation.

4  320.  During FY:04, the Audit Committee submitted a report incorporating the fabricated

5  financial results for inclusion in Brocade's FY:05 Proxy Statement that provided, in relevant part:

6      The Audit Committee has reviewed and discussed our audited financial statements
       for the fiscal year ended October 30, 2004 with our management. In addition, the
7      Audit Committee has discussed with KPMG LLP, our independent auditors, the
       matters required to be discussed by Statement on Auditing Standards No. 61
8      (Communications with Audit Committee). The Audit Committee also has received
       the written disclosures and the letter from KPMG as required by the Independence
9      Standards Board Standard No. 1 (Independence Discussions with Audit Committees)
       and the Audit Committee has discussed the independence of KPMG LLP with that
10     firm.

11     Based on the Audit Committee's review of the matters noted above and its
       discussions with our independent auditors and our management, the Audit
12     Committee recommended to the Board of Directors that the financial statements be
       included in our Annual Report on Form 10-K.

13
   321.  Accordingly, as members of the Audit Committee at some point since at least 1999,
14
   defendants Walker, Jones, Rose, Neiman, Dempsey, Leslie, Sonsini, Paisley, Moore, Krause and
15
   O'Brien had a special duty to know and understand this material information regarding the stock
16
   option grants as set out in the Audit Committee's charter, which provides in relevant part that the
17
   Audit Committee is responsible for: (i) assisting the Board in fulfilling its responsibilities for general
18
   oversight of the integrity of Brocade's financial statements; (ii) Brocade's compliance with legal and
19
   regulatory requirements; (iii) the independent auditors' qualifications and independence; (iv) the
20
   performance of Brocade's internal audit function and independent auditors; and (v) risk assessment
21
   and risk management. Under the Audit Committee Charter, the Audit Committee assists the Board
22
   in the oversight and monitoring of the Company's financial controls, including any improvement or
23
   changes to be made in such internal controls.
24
   322.  The members of the Audit Committee knew, recklessly disregarded or should have
25
   known that Brocade's financial statements were inaccurate and certain stock option grants were
26
   improper, because they failed to consider the risks of material misstatement related to matters
27
   involving the granting, documenting, accounting and reporting of stock options, and thereby
28
   permitted or condoned the unlawful practices described herein. Also, the Audit Committee failed to

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  consider the materially weak internal controls designed to ensure stock option practice complied

2  with GAAP and SEC rules. Accordingly, defendants Walker, Jones, Rose, Neiman, Dempsey,

3  Leslie, Sonsini, Paisley, Moore, Krause and O'Brien, through their improper execution of their duties

4  and responsibilities as members of the Brocade Audit Committee, knew of, or recklessly disregarded

5  or should have known the unlawful practices at Brocade described herein.

6  **DEMAND FUTILITY ALLEGATIONS AGAINST THE BOARD AT THE TIME THE STATE AND FEDERAL DERIVATIVE ACTIONS WERE INITIATED**

7

8      323.    At the time the original complaints were filed in the State Derivative Action and

9  Federal Derivative Action, the Board consisted of the following nine individuals: defendants House,

10 Klayko, Moore, Neiman, Paisley, Dempsey, Krause, Vaswani and Walker. No pre-suit demand was

11 made on that Board of Brocade to institute this action because such a demand would have been a

12 futile, wasteful and useless act.

13     324.    The Board retains and exercises the ultimate responsibility for approving compen-

14 sation awarded to Brocade's executive officers. This responsibility encompasses the awards of stock

15 options that were backdated by defendants Reyes, Jensen, Byrd and Canova. Therefore, the

16 defendants who sat on the Board at the time the original complaints filed in the State Derivative

17 Action and Federal Derivative Action face a substantial likelihood of personal liability for failing to

18 fulfill their fiduciary duties to Brocade in acquiescing to Reyes, Jensen, Byrd and Canova's improper

19 scheme, by implicitly approving the option grants as dated, as well as for their utter failure to

20 implement effective internal controls. Such defendants reasonably could and should have properly

21 informed themselves of the circumstances surrounding the options granted to Brocade's executives

22 before approving them. Indeed, these options were routinely approved by the Board when they were

23 dated at or near the Company's lowest closing price for the respective month in which the options

24 were granted, establishing that these decisions were not informed. Accordingly, there was and is

25 reason to doubt that defendants House, Klayko, Moore, Neiman, Paisley, Dempsey, Krause,

26 Vaswani and Walker were and are disinterested because they face a sufficient likelihood of liability

27 for their breaches of fiduciary duty to Brocade. The Board's decision to approve the options also

28

1   was not the product of valid business judgment. Thus, demand was futile as to House, Klayko,

2   Moore, Neiman, Paisley, Dempsey, Krause, Vaswani and Walker.

3       325.    The Compensation Committee of the Board is specifically responsible under its

4   charter for granting stock options or other equity awards to Brocade executives. This responsibility,

5   although held by the Board, is delegated to the Compensation Committee. But as alleged herein, the

6   Compensation Committee impermissibly delegated its responsibility to defendant Reyes in total

7   contravention of its charter, which states, in pertinent part, as follows:

8       *Purpose*

9           The purpose of the Compensation Committee of the Board of Directors (the
        "Board") of Brocade Communications Systems, Inc. (the "Company") shall be to
10      discharge the Board's responsibilities relating to compensation of the Company's
        executive officers. *The Compensation Committee has overall responsibility for (i)*
11      *overseeing the Company's compensation and benefits policies generally; (ii)*
        *overseeing, evaluating and approving executive officer compensation plans,*
12      *policies and programs;* and (iii) preparing the report on executive compensation that
        is required by Securities and Exchange Commission rules to be included in the
13      Company's annual proxy statement.

14      *Reporting to the Board*

15          The Compensation Committee shall make regular reports to the Board. These
        reports shall include a review of any recommendations or issues that arise with
16      respect to Company compensation and benefits policies, executive compensation and
        any other matters that the Compensation Committee deems appropriate or is
17      requested to be included by the Board.

18  From at least 2000 to April 2007, defendant Dempsey was a member of the Compensation

19  Committee, and was its Chairman from 2005 to April 2007. He also sat on the Audit Committee

20  from at least 2000 to 2004. Defendant Krause has been a member of the Compensation Committee

21  since 2004, and sat on the Audit Committee from 2005 to April 2006. Defendant House has been a

22  member of the Compensation Committee since January 2006, and also sat on this committee from

23  November 2004 to January 2005. Defendant Vaswani has sat on the Compensation Committee since

24  2004, and has been its Chairman since 2007. As members of the Compensation Committee, these

25  defendants were responsible to review and grant stock options granted to Brocade executives during

26  their respective tenures on the committee. These defendants did not fulfill this duty because they did

27  not act to inform themselves of the circumstances surrounding these option grants, thereby causing

28  or allowing the Company's executives to obtain unreasonable and unreported compensation via the

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    backdating of stock option grants.  In fact, Krause, House, Dempsey and Vaswani completely

2    abdicated their duties to Reyes.  Between fiscal years 2000-2004, the Compensation Committee held

3    only nine meetings, and did not even meet in fiscal year 2000 – all of which indicates that the

4    Company suffered from having a Compensation Committee that met only sporadically and devoted

5    patently inadequate time and effort to its work.  Accordingly, there was and is a reasonable doubt

6    that Dempsey, Krause, House and Vaswani were disinterested because they face a sufficient

7    likelihood of liability for their breaches of fiduciary duty to Brocade.  The Compensation

8    Committee's decision to approve the options also was not the product of valid business judgment.

9    Thus, demand was futile as to Dempsey, Krause, House and Vaswani.

10       326.    The Audit Committee of the Board is responsible under its charter for reviewing the

11    Company's financial and accounting reporting compliance relating to its employee benefit plans.

12    Since at least 1999, the Audit Committee was comprised, at various times, of defendants Dempsey,

13    Paisley, Moore, and Krause.  Dempsey sat on this committee from at least 2000 to 2004.  Paisley

14    was member of this committee, and its Chairman, from August 2002 to April 2006.  Moore sat on

15    this committee from 2003 to November 2005, and finally, Krause was a member of this committee

16    from 2005 to April 2006.  As members of the Audit Committee, these defendants were responsible

17    for ensuring that Brocade's internal controls were adequate and that the Company's quarterly and

18    annual financial statements were accurate.  Brocade's internal controls, however, were deficient as

19    evidenced by the ability of defendants Reyes, Jensen, Byrd and Canova to perpetrate the improper

20    backdating of stock option grants for almost seven years.  As a result of the improper option

21    backdating, the Company's financials were rendered inaccurate because those financials did not

22    account for the true amount of compensation being granted to Brocade's executives and employees.

23    Accordingly, there was and is a reasonable doubt that Paisley, Moore, Krause and Dempsey were

24    disinterested because they face a sufficient likelihood of liability for their breaches of fiduciary duty

25    to Brocade.  Thus, demand was futile as to defendants House, Neiman, Paisley, Dempsey, Krause

26    and Vaswani, directors who abdicated their fiduciary duties to Reyes' compensation committee of

27    one.

28

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    327.  On or about September 1999, the Board abdicated its duties with respect to the

2  granting of stock options to defendant Reyes under the 1998 Plan, who effectively became a

3  committee of one. Reyes maintained that authority throughout the period in which certain insiders,

4  including Reyes, oversaw the stock option manipulation. The decision to grant Reyes this

5  unchecked authority and to allow him to maintain that authority was not the product of valid

6  business judgment. This is because the Board consciously disregarded the fabricated Compensation

7  Committee minutes and other documents that defendants Reyes, Jensen and others used to carry out

8  their scheme. Accordingly, demand was futile as to defendants Dempsey, Neiman, Vaswani and

9  Krause.

10    328.  All of the members of the Board at the time of the original complaints filed in the

11  State Derivative Action and Federal Derivative Action authorized and/or permitted the false state-

12  ments disseminated directly to the public or made directly to securities analysts and which were

13  made available and distributed to shareholders, authorized and/or permitted the issuance of various

14  of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged

15  herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by

16  them.

17    329.  As a result of their access to and review of internal corporate documents,

18  conversations and connections with other corporate officers, employees and directors, and

19  attendance at management and Board meetings, each of the members of the Board at the time the

20  original complaints were filed in the State Derivative Action and Federal Derivative Action knew the

21  adverse, non-public information regarding the improper accounting and its detrimental impact on the

22  Company's reported earnings. While in possession of this material adverse, non-public, information

23  regarding the Company, the following defendants participated in the illegal insider selling:

24        (a)  Defendant Klayko sold 408,000 shares of Brocade stock for proceeds of

25  $2,061,440 while in possession of material non-public information; and

26        (b)  Defendant Dempsey sold 136,824 shares of Brocade stock for proceeds of

27  $15,205,898.50 while in possession of material non-public information.

28

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1 Because these defendants received an illicit personal financial benefit from the challenged insider

2 trading transactions, these defendants were and are interested.  They also face a sufficiently

3 substantial threat of liability for their illegal insider selling.  Since these directors breached their

4 fiduciary duties and were and are interested, any demand upon them would have been futile.

5       330.  The principal professional occupation of defendant Klayko was his employment with

6 Brocade, pursuant to which he received and continues to receive substantial monetary compensations

7 and other benefits.  Specifically, Klayko was paid the following compensation:

| Fiscal Year | Salary | Bonus | Restricted Stock Awards | Securities Underlying Options | Options Grants | Non-Equity Incentive Plan Compensation | All Other Compensation |
|---|---|---|---|---|---|---|---|
| 2007 | $605,000 | - | $1,042,457 | - | $1,125,975 | 1,299,314 | $18,333 |
| 2006 | $540,000 | $1,743,050 | $779,999 | 166,667 | - | - | $22,403 |
| 2005 | $481,364 | $341,951 | - | 1,600,000 | - | - | $3,587 |
| 2004 | $283,333 | $195,230 | - | 575,000 | - | - | $4,664 |
| 2003 | $175,000 | $42,464 | - | 713,781 | - | - | $3,324 |

13 Accordingly, at the time the original complaints in the State Derivative Action and Federal

14 Derivative Action were filed, Klayko lacked independence from Dempsey, Krause, House and

15 Vaswani – defendants who were not disinterested and/or independent and who exerted dispositive

16 influence over Klayko's compensation.  The Compensation Committee has the authority to review

17 and approve Klayko's base salary, bonus and equity compensation.  Therefore, this lack of

18 independence rendered Klayko incapable of impartially considering a demand to commence and

19 vigorously prosecute this action.

20      331.  Defendant Moore, by his specialized financial expertise and position as a member of

21 the Audit Committee, was in a unique position to understand the business of Brocade, as well as its

22 finances, markets and present and future business prospects.  Specifically, Moore holds a B.S. in

23 Accounting.  He was Global Chairman, CEO - U.S. of the PricewaterhouseCoopers LLP ("PwC")

24 accounting firm from July 1998 until June 2001.  Prior to that, he was Chairman and CEO of the

25 Coopers & Lybrand LLP accounting firm from October 1994 until June 1998.  His qualifications led

26 to Moore's appointment to the Audit Committee – a position that he held from 2003 to November

27 2005.  Thus, because of his unique education, skills and experience, as well as his position as a

28 member of the Audit Committee, Moore had a heightened duty to ensure the accuracy and fairness

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    of Brocade's financials.  Nevertheless, Moore faces a sufficient likelihood of liability because he

2    breached his duties by causing or allowing the improper financial statements described herein, and

3    by utterly failing to cause the Audit Committee to create, implement and maintain a system of

4    internal controls that would have timely detected and/or prevented the stock option backdating

5    misconduct alleged herein.  As a result, any demand upon him would have been futile.

6        332.    Defendant Paisley, by his specialized financial expertise and position as Chairman of

7    the Audit Committee, was perfectly positioned to understand the business of Brocade, as well as its

8    finances, markets and present and future business prospects.  Specifically, Paisley has a B.A. in

9    Economics and an M.B.A.  He has been the Dean's Executive Professor of Accounting and Finance

10   in the Leavy School of Business at Santa Clara University since January 2001.  From September

11   1985 until May 2000, Paisley was the Senior Vice President of Finance and Chief Financial Officer

12   of 3Com Corporation.  These qualifications led to Paisley's ascension as a director to become the

13   Chairman of the Audit Committee – a position that he held from August 2002 to April 2006.  Thus,

14   because of his unique education, skills and experience, as well as his position as Chairman of the

15   Audit Committee, Paisley had a heightened duty to ensure the accuracy and fairness of Brocade's

16   financials.  Nevertheless, Paisely faces a sufficient likelihood of liability because he breached his

17   duties by causing or allowing the improper financial statements described herein, and by utterly

18   failing to cause the Audit Committee to create, implement and maintain a system of internal controls

19   that would have timely detected and/or prevented the stock option backdating misconduct alleged

20   herein.  As a result, any demand upon Paisley would have been futile.

21       333.    The entire Brocade Board participated in the wrongs complained of herein.  Brocade's

22   directors were and are not disinterested or independent due to the following: defendants House,

23   Klayko, Moore, Neiman, Paisley, Dempsey, Krause, Vaswani and Walker served on the Brocade

24   Board during the period in which Company executives were improperly backdating their stock

25   option grants.  Pursuant to their specific duties as Board members, each was charged with the

26   management of the Company and to conduct its business affairs.  Each of the above-referenced

27   defendants breached the fiduciary duties that they owed to Brocade and its shareholders in that they

28   failed to prevent and correct the improper stock option backdating practices and utterly failed to

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    implement a system of internal controls that would have prevented or timely detected the backdating

2    activity alleged herein. Thus, the Brocade Board cannot exercise independent objective judgment in

3    deciding whether to bring this action and vigorously prosecute it because such directors were and are

4    interested: it is their actions that have subjected Brocade to damages in the form of substantial costs

5    that the Company has expended and continues to face, as more particularly alleged herein.

6          334.    A number of the members of the Board as it was constituted at the time that the

7    original complaints in the State Derivative Action and Federal Derivative Action were filed, because

8    of their inter-related business, professional and personal relationships, have developed debilitating

9    conflicts of interest that prevented them from taking the necessary and proper action on behalf of the

10   Company as requested herein. In addition to the conflicts that exist as a result of their participation

11   in the option backdating, improper accounting and insider selling, as detailed herein, the majority of

12   the Board, as it was constituted at the time the original complaints were filed in the State Derivative

13   Action and Federal Derivative Action, including the defendants listed below, are subject to the

14   following prejudicial entanglements:

15          (i)    **Defendants Moore and O'Brien Are Long-Time Business Associates:**

16          Defendant O'Brien was a Global Managing Partner of PwC. Defendant
       Moore was Global Chairman, CEO-US of PwC from July 1998 to June 2001.
17     Because of their long-standing and entangling business and professional
       relationships, defendant Moore will not take the action requested by plaintiff herein
18     against defendant O'Brien or the remainder of the Individual Defendants.

19          (ii)   **Defendants Klayko and Walker Are Long-Time Business Associates:**

20          Defendant Klayko held various positions at Hewlett-Packard Company prior
       to 1995. Defendant Walker held various positions at Hewlett-Packard Company for
21     24 years until he resigned in 1999. Because of their long-standing and entangling
       business and professional relationships, neither Klayko nor Walker will take the
22     action requested by plaintiff herein against one another or the remainder of the
       Individual Defendants.
23
            (iii)  **Defendants Paisley and Krause Are Long-Term Business Associates:**
24
            Defendant Paisley was the Senior Vice President of Finance and CFO of
25     3Com Corp. from 1985 to 2000. Defendant Krause served as President and CEO of
       3Com Corp. from 1981 to 1990, and as its Chairman from 1987 to 1993. Because of
26     their long-standing and entangling business and professional relationships, neither
       Paisley nor Krause will take the action requested by plaintiff herein against one
27     another or the remainder of the Individual Defendants.

28

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1

2

  (iv) **The SLC Intends to Take Action Against 11 Unspecified Defendants**

3

  Recently, the SLC informed the Court that it intends to file an Amended Complaint on behalf of the Company to bring claims related to the backdating scheme described herein against eleven unspecified defendants. This action only came after three years of litigation and after the criminal convictions of Jensen and Reyes, demonstrating that the Board at the time of the original filings of this action was unwilling to take action due to prejudicial personal and business relationships between themselves and the defendants.

4

5

6

  (v) **Defendants Dempsey, Moore and Neiman Interceded in Defendant Reyes' Criminal Trial, Arguing for Leniency:**

7

8

  Prior to defendant Reyes' sentencing, defendants Dempsey, Moore and Neiman (as well as defendant O'Brien) wrote letters to the Court in support of Reyes that were severely antagonistic to the best interests of Brocade:[10]

9

10

  • On September 25, 2007, Dempsey wrote a letter to the Court noting that he personally knew members of Reyes' immediate family, and that Dempsey found Reyes "to be ethical and a man of exceptional character." Dempsey argued against a jail sentence for Reyes.

11

12

  • On September 20, 2007, Moore wrote to the Court and urged it to show "leniency" in sentencing Reyes. In arguing for leniency, Moore essentially offered a well-crafted "everybody was doing it" sort of argument that had to be "fully understood and weighed very heavily in assessing the punishment."

13

14

  • In an undated letter, Neiman noted that he had gotten to know members of Reyes' immediate family and had "spent time with them as a family." Neiman asserted that he "never saw or heard of Greg doing anything to harm the company, its customers, its employees, or its shareholders." Neiman argued against the "prolonged separation" between Reyes and his family that a prison sentence would entail.

15

16

17

18  335. The acts complained of constitute violations of the fiduciary duties owed by

19 Brocade's officers and directors and these acts are incapable of ratification.

20  336. Brocade has been and will continue to be exposed to significant losses due to the

21 wrongdoing complained of herein, yet the Individual Defendants and Board (as it was constituted at

22 the time the original complaints were filed in the State Derivative Action and Federal Derivative

23 Action) have not filed any lawsuits against themselves or others who were responsible for that

24 wrongful conduct to attempt to recover for Brocade any part of the damages Brocade suffered and

25 will suffer thereby.

26 ————————————

27

[10] These letters are collected at Docket No. 688-6 in *United States of America v. Reyes*, No. 3:06-cr-00556-CRB-1 (N.D. Cal. Jul. 20, 2006).

28

**DEMAND FUTILITY ALLEGATIONS AGAINST
THE BOARD AT THE TIME OF THE FILING OF THIS ACTION**

337.    At the time of the filing of the original complaint in this action, Brocade's Board consisted of the following nine individuals: defendants House, Jones, Klayko, Krause, Rose, Vaswani, Walker, DiPentima and Gerdelman. Plaintiff did not make any demand on the Board to institute this action because such a demand would have been a futile, wasteful and useless act.

338.    During February 2008, the Board formed an SLC to investigate the claims asserted on behalf of Brocade in the State Derivative Action and Federal Derivative Action. The SLC consists of DiPentima and Gerdelman. The formation of the SLC is an admission that the remaining members of the Board lack the independence and disinterestedness needed to objectively and in good faith consider a demand that the Company bring the instant action. Moreover, recently, the SLC had decided to take action against eleven unspecified defendants. This decision, however, only came after three years of litigation and the criminal convictions of Reyes and Jensen. This late decision and the circumstances surrounding it further demonstrate the unwillingness of the majority of the Board to take actions against the defendants named herein. Thus, demand is futile as to defendants House, Jones, Klayko, Krause, Rose, Vaswani and Walker.

339.    Demand is futile as to defendants DiPentima and Gerdelman, and they are unfit to serve as members of the SLC, because each of them is interested in the subject matter of this litigation as a result of their breaches of fiduciary duty to Brocade. In particular, these two defendants breached fiduciary duties owed to Brocade by supporting WSGR as Brocade's outside counsel with respect to the litigation despite WSGR's blatant, disabling and non-waivable conflicts of interest. In fact, as members of the Board prior to their appointment to the SLC, DiPentima and Gerdelman supported the filing of various legal memoranda in opposition to motions to disqualify WSGR and force Brocade to retain independent counsel. Moreover, before their appointment to the SLC, DiPentima and Gerdelman – like their fellow directors – supported the Proposed Settlement, which threatens to wipe out Brocade's derivative claims that are worth potentially hundreds of millions of dollars. Indeed, along with other members of the Board, DiPentima and Gerdelman supported various filings by WSGR in federal court intended to move the Proposed Settlement

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  toward a successful final approval by that court. DiPentima and Gerdelman's support of legal

2  strategies that favor the Individual Defendants' interests at the expense of Brocade's interests is a

3  breach of fiduciary duty owed to Brocade. Accordingly, DiPentima and Gerdelman are interested

4  and demand is futile as to these two defendants.

5      340.  As alleged herein, the Board is ultimately responsible for approving the compensation

6  awarded to Brocade's executive officers. Such compensation encompasses the stock options that

7  were illicitly backdated by defendants Reyes, Jensen, Byrd and Canova. Five members of the Board

8  were involved in the egregious wrongdoing and remain liable for breaching their fiduciary duties in

9  connection with Brocade's wrongful compensation practices. Specifically, defendants House,

10 Klayko, Krause, Walker and Vaswani face sufficiently substantial liability for failing to fulfill their

11 fiduciary duties to Brocade in acquiescing to Reyes, Jensen, Canova and Byrd's improper scheme

12 and thereby causing and/or allowing the approval of the challenged option grants as dated.

13 Therefore, these defendants failed to exercise proper due care in carrying out their duties and

14 responsibilities as officers and directors of Brocade by consciously permitting the backdating

15 scheme to remain in place or by being recklessly ignorant in failing to inform themselves of the

16 illegal circumstances surrounding the options granted to Brocade's directors, executives and other

17 employees before approving them – including their utter failure to establish a system of internal

18 controls and oversight mechanisms that could and would have prevented or timely detected the illicit

19 backdating activity alleged herein. As a result of the misfeasance and complete abdication of their

20 fiduciary duties by these defendants, improperly-backdated options were routinely granted by Reyes

21 and peremptorily approved by the Board when they were dated at or near the Company's lowest

22 closing price for the respective month in which the options were granted, establishing that these

23 defendants failed to establish any effective internal controls and procedures. Moreover, these defen-

24 dants allowed the backdating scheme to continue unabated for almost seven years – a patently

25 unreasonable period of time – which revealed additional materially-deficient internal controls in

26 connection with the Company's financial reporting and accounting processes. Accordingly, reason-

27 able doubt exists that defendants House, Klayko, Krause, Walker and Vaswani are able to evaluate

28 demand in a sufficiently disinterested and independent manner. Further, the acts complained of

1   herein resulted in Brocade's material non-compliance with applicable legal, financial and ethical

2   regulations that has caused the Company to sustain substantial harm. In this regard, decisions made

3   by these defendants to invariably approve the options were not the product of valid business

4   judgment. For all the foregoing reasons, demand was futile as to House, Klayko, Krause, Walker

5   and Vaswani.

6          341.    Seven members of the Board participated in approving the Proposed Settlement,

7   which purported to globally extinguish all derivative claims against virtually all possible defendants

8   in all actions arising out of or otherwise related to the improprieties that have been complained of

9   extensively herein.    The Proposed Settlement was patently unfair to the Company and its

10  shareholders because Brocade has suffered and will continue to suffer harm from defendants'

11  actions.    Under the terms of the Proposed Settlement, the Board may have implemented some

12  corporate therapeutics, but to the extent the Board decided to do so, it also could have later discarded

13  any such reforms in the purported exercise of its business judgment – which proved to be routinely

14  and fatally flawed with regard to the Board's other breaches of fiduciary duty alleged herein.

15  Further, the Proposed Settlement, if approved, would have provided for absolutely no monetary

16  relief for the Company. Such a result was plainly contradictory to Brocade's best interests, as the

17  Company has suffered losses that reach well into the hundreds of millions, if not billions, of dollars

18  that relate to the backdating caused by the egregious misconduct of the Individual Defendants.

19  These losses, while massive, are still indeterminate, as the SEC Action and Federal Securities Class

20  Action remain unresolved. In stark contrast, defendants House, Klayko, Krause, Walker and

21  Vaswani would escape liability if the Proposed Settlement was approved, as they would receive a

22  broad release of all claims related to their wrongdoings. As a result, these defendants will be

23  allowed to walk away unscathed from the tumult and havoc wrought by their own misconduct

24  whereas Brocade and its shareholders cannot escape from the effects, which will continue to persist

25  well into the future. This demonstration of unjust enrichment or unfair exchange taken in spite of

26  the Company's immeasurable losses could not have been the decision of a board of directors

27  exercising valid business judgment. Motivated by their desire to entrench themselves on the Board

28  and extinguish liability for themselves, their legal counsel and auditors, the Board approved a

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  settlement that did not represent a fair, reasonable or adequate resolution of the derivative claims

2  asserted in either the Federal Derivative Action or State Derivative Action, and so has foregone

3  adherence to their duty to act in furtherance of the Company's best interests.  By displacing

4  Brocade's significant interest in a fair recovery with their unique, personal and economic interests,

5  the entire Board has also breached their fiduciary duties.  Accordingly, reasonable doubt exists as to

6  the ability of the entire Board to evaluate demand in a sufficiently disinterested and independent

7  manner.  For all the foregoing reasons, demand was futile as to defendants House, Jones, Klayko,

8  Krause, Rose. Vaswani, Walker, DiPentima and Gerdelman.

9      342.    Demand is futile as to defendants House, Jones, Klayko, Krause, Rose, Vaswani,

10  Walker, DiPentima and Gerdelman for the further reason that based on information and belief,

11  plaintiff alleges that Tolling Agreement expired as of January 1, 2008, and that these defendants

12  failed to make reasonable and timely efforts to secure its renewal.  In particular, on September 11,

13  2006, defendant WSGR, acting as counsel for Brocade and defendants House, Krause, Moore,

14  O'Brien, Paisley, Sonsini, Neiman, Dempsey and Vaswani, wrote a letter to counsel for defendant

15  Reyes giving notice that House, Krause, Moore, O'Brien, Paisley, Sonsini, Neiman, Dempsey and

16  Vaswani were terminating the Tolling Agreement "solely as to themselves."  This letter further

17  stated that "while all periods of limitation (statutory or otherwise) will begin to run again forty-five

18  (45) days from the date of service of this notice upon you as to any claims or causes of action which

19  Reyes may have against the Directors or which any of them may have against Reyes, the statute of

20  limitations remains tolled on any claim which Reyes may have against Brocade or which Brocade

21  may have against Reyes."  The fact that these defendants took such action was not publicly disclosed

22  until well over a year later, when the letter was attached as Exhibit 10.80 to Brocade's Form 10-K for

23  FY:07 filed on December 21, 2007.  The Tolling Agreement expired on its own terms a little over a

24  week later on January 1, 2008, and plaintiff is unaware of any public disclosures made by Brocade or

25  other information that would indicate this agreement was renewed or renegotiated with Reyes.  Thus,

26  by failing to take reasonable and necessary steps to secure the renewal of the Tolling Agreement,

27  defendants House, Jones, Klayko, Krause, Rose, Vaswani, Walker, DiPentima and Gerdelman

28  materially undermined Brocade's ability to file new claims in a new action against Reyes, who now

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1   may be able to defend such claims based on applicable periods of limitation or repose – all of which

2   would have been tolled with a renewed Tolling Agreement. Such grossly negligent inaction or

3   ineffective action by House, Jones, Klayko, Krause, Rose, Vaswani, Walker, DiPentima and

4   Gerdelman further evinces a languid and careless attitude with respect to the protection of Brocade's

5   ability to seek redress for the damages the Company has suffered as a result of the stock option

6   backdating scheme quarterbacked by Reyes, and thus, demand is futile as to these defendants.

7        343.   The Compensation Committee of the Board is specifically responsible under its

8   charter for granting stock options or other equity awards to Brocade executives. This responsibility,

9   although held by the Board, is delegated to the Compensation Committee. This committee,

10   however, impermissibly delegated its responsibility to Reyes in total contravention of its charter.

11   The charter for the Compensation Committee states, in pertinent part, as follows:

12      *Purpose*

13         The purpose of the Compensation Committee of the Board of Directors (the
        "Board") of Brocade Communications Systems, Inc. (the "Company") shall be to
14         discharge the Board's responsibilities relating to compensation of the Company's
        executive officers. ***The Compensation Committee has overall responsibility for (i)***
15         ***overseeing the Company's compensation and benefits policies generally; (ii)***
        ***overseeing, evaluating and approving executive officer compensation plans,***
16         ***policies and programs;*** and (iii) preparing the report on executive compensation that
        is required by Securities and Exchange Commission rules to be included in the
17         Company's annual proxy statement.

18      *Reporting to the Board*

19         The Compensation Committee shall make regular reports to the Board. These
        reports shall include a review of any recommendations or issues that arise with
20         respect to Company compensation and benefits policies, executive compensation and
        any other matters that the Compensation Committee deems appropriate or is
21         requested to be included by the Board.

22   During the Relevant Period, the members of the current Board who sat on the Compensation

23   Committee were defendants Krause, House and Vaswani, as alleged herein. As members of this

24   committee, these defendants were responsible to review and grant stock options granted to Brocade

25   executives during their respective tenures on the committee, and to ensure such grants were made,

26   documented, accounted for and reported in accordance with the shareholder-approved Plans and

27   applicable laws and accounting guidelines. These defendants did not fulfill this duty because they

28   did not act to inform themselves of the illegal circumstances surrounding these option grants, and

- 140 -

1  utterly failed to establish and maintain a system of adequate internal controls and oversight

2  procedures that could and would have timely detected or prevented the stock option backdating

3  alleged herein. Such failures by these defendants directly and proximately caused or allowed the

4  Company's executives to obtain unreasonable and unreported windfall compensation via the

5  backdating of stock option grants. Accordingly, there is a reasonable doubt that defendants Krause,

6  House and Vaswani are disinterested because they face a sufficient likelihood of liability for their

7  breaches of fiduciary duty to Brocade. The Compensation Committee's decision to approve stock

8  options that were backdated also was not the product of valid business judgment. Thus, demand was

9  futile as to Krause, House and Vaswani.

10      344.    The Audit Committee of the Board is responsible under its charter for reviewing

11  Brocade's financial and accounting reporting compliance relating to its employee benefit plans.

12  During the Relevant Period, defendant Krause was a member of the Audit Committee. As a member

13  of this committee, Krause was responsible for ensuring that Brocade established and implemented a

14  system of internal controls and oversight procedures in connection with financial reporting and

15  accounting that were adequate, and that the Company's quarterly and annual financial statements

16  were not presented in a manner that was materially false or misleading. Brocade's system of internal

17  controls, however, was non-existent, as evidenced by the unfettered ability of defendants Reyes,

18  Jensen, Byrd and Canova to perpetrate the improper backdating of stock option grants for almost

19  seven years. Indeed, with the criminal convictions of Reyes and Jensen, the utter lack of adequate

20  internal controls relative to the granting, documentation, accounting and reporting of stock options at

21  Brocade is beyond question. As a result of the improper stock option backdating, the Company's

22  financials were rendered inaccurate because they did not account for the true amount of

23  compensation being granted to Brocade's executives and employees. Accordingly, there is a reason-

24  able doubt that Krause is disinterested because they face a sufficient likelihood of liability for their

25  breaches of fiduciary duty to Brocade. Thus, demand was futile as to Krause.

26      345.    As a result of their access to and review of internal corporate documents,

27  conversations and connections with other corporate officers, employees and directors, and

28  attendance at management and Board meetings, each of the members of the current Board knew the

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  adverse, non-public information regarding the improper accounting and its detrimental impact on the

2  Company's reported earnings. Specifically, while in possession of this material adverse, non-public,

3  information regarding the Company, defendant Klayko sold 408,000 shares of Brocade stock for

4  proceeds of $2,061,440 while in possession of material non-public information. Because Klayko

5  received an illicit personal financial benefit from the challenged insider trading transactions, he is

6  interested. Also, Klayko faces a sufficiently substantial threat of liability for his illegal insider

7  selling. Since Klayko has breached his fiduciary duties and is interested, any demand upon him was

8  futile.

9      346.    The principal professional occupation of defendant Klayko was his employment with

10  Brocade, pursuant to which he received and continues to receive substantial monetary compensations

11  and other benefits. Specifically, defendant Klayko was paid the following compensation:

| Fiscal Year | Salary | Bonus | Restricted Stock Awards | Securities Underlying Options | Options Grants | Non-Equity Incentive Plan Compensation | All Other Compensation |
|---|---|---|---|---|---|---|---|
| 2007 | $605,000 | - | $1,042,457 | - | $1,125,975 | 1,299,314 | $18,333 |
| 2006 | $540,000 | $1,743,050 | $779,999 | 166,667 | - | - | $22,403 |
| 2005 | $481,364 | $341,951 | - | 1,600,000 | - | - | $3,587 |
| 2004 | $283,333 | $195,230 | - | 575,000 | - | - | $4,664 |
| 2003 | $175,000 | $42,464 | - | 713,781 | - | - | $3,324 |

Accordingly, Klayko lacked independence from House, Krause, Vaswani – defendants who are not

disinterested and/or independent and who exert dispositive influence over Klayko's compensation.

The Compensation Committee has the authority to review and approve Klayko's base salary, bonus

and equity compensation. Therefore, this lack of independence rendered Klayko incapable of

impartially considering a demand to commence and vigorously prosecute this action.

    347.    In order to bring this suit, all of the directors of Brocade would be forced to sue

themselves and persons with whom they have extensive business and personal entanglements, which

they will not do, thereby excusing demand. Namely, a number of the current members of the Board,

because of their inter-related business, professional and personal relationships, have developed

debilitating conflicts of interest that prevent the Board members of the Company from taking the

necessary and proper action on behalf of the Company as requested herein. In addition to the

conflicts that exist as a result of their participation in the option backdating, improper accounting and

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  insider selling, as detailed herein supra, the majority of the Board, including the defendants listed

2  below, are subject to the following prejudicial entanglements:

3          (a)    ***Klayko and Walker Are Long-Time Business Associates:***

4          Defendant Klayko held various positions at Hewlett-Packard
           Company prior to 1995. Defendant Walker held various positions at
5          Hewlett-Packard Company for 24 years until he resigned in 1999.
           Because of their long-standing and entangling business and
6          professional relationships, neither defendant Klayko nor defendant
           Walker would take the action requested by plaintiff herein against
7          one another or the remainder of the Individual Defendants.

8          348.    Each of the members of the Board who were directors during the time the false public

9  financial statements alleged herein were published authorized and/or permitted the false statements

10 disseminated directly to the public or made directly to securities analysts and which were made

11 available and distributed to shareholders, authorized and/or permitted the issuance of various of the

12 false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and

13 thus could not fairly and fully prosecute such a suit even if such suit was instituted by them.

14         349.    A majority of the current Board participated in the wrongs complained of herein.

15 Defendants House, Klayko, Krause, Walker and Vaswani are not disinterested or independent

16 because they served on the Board during the period in which Company executives were improperly

17 backdating their stock option grants. Pursuant to their specific duties as directors, each was charged

18 with the proper and diligent management of the Company and to conduct its business affairs. Each

19 of the above-referenced defendants breached the fiduciary duties that they owed to Brocade and its

20 shareholders in that they failed to prevent and correct the improper stock option backdating

21 practices, and completely failed to establish and maintain a system of adequate internal controls and

22 oversight mechanisms to timely prevent, detect and correct the hidden and improper activity related

23 to the backdating of stock options. Thus, the Board cannot exercise independent objective judgment

24 in deciding whether to bring this action or whether to vigorously prosecute this action because

25 House, Klayko, Krause, Walker and Vaswani are interested personally in the outcome as it is their

26 misconduct that has subjected Brocade to damages as alleged herein.

27         350.    The acts complained of constitute violations of the fiduciary duties owed by

28 Brocade's officers and directors and these acts are incapable of ratification.

- 143 -
AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    351.   Brocade has been and will continue to be exposed to significant losses due to the

2  wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed

3  any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt

4  to recover for Brocade any part of the damages Brocade suffered and will suffer thereby.

5                                        **COUNT I**

6  **Against the RICO Defendants for Violation of RICO, 18 U.S.C. § 1962(c), Through
   Conspiracy, Mail and Wire Fraud, Securities Fraud, and Manipulation of Stock Options**

7

8    352.   Plaintiff incorporates by reference and realleges each and every allegation contained

   above, as though fully set forth herein.
9

10   353.   Pursuant to 18 U.S.C. §1964(c), plaintiff, derivatively on behalf of Brocade, has and

11 may assert a private right of action against the RICO Defendants for their pattern of racketeering

   activity in violation of RICO.
12

13   354.   During the Relevant Period, the RICO Defendants devised and engaged in a scheme

14 whereby they formed a separate enterprise and/or association-in-fact enterprise for the common

15 purpose of illegally manipulating the granting of stock options at Brocade and to attempt to cover up

16 such misconduct by filing false financial statements with the SEC to the direct, obvious, and

   inescapable injury to the business and property of Brocade.
17

18   355.   In violation of 18 U.S.C. §1962(c), the RICO Defendants conducted or participated in

   the affairs of the enterprise identified herein.
19

20   356.   Plaintiff and Brocade are each "persons" within the meaning of 18 U.S.C. §§1961(3)

   and 1964(c).
21

22   357.   The RICO Defendants are "persons" within the meaning of 18 U.S.C. §§1961(3) and

   1964(c).
23

24                            **Defendants' RICO Enterprise**

25   358.   The RICO "enterprise" within the meaning of 18 U.S.C. §1961(4) is an association-

26 in-fact consisting of defendants Reyes, Jensen, Canova, Byrd, Neiman, Dempsey, Leslie, Paisley,

   House, Klayko, Moore, Krause, Vaswani, Walker, Jones, Rose, DiPentima, Gerdelman, Bossi, Wall,
27
   KPMG and Sonsini (the "RICO Enterprise"or "RICO Defendants").
28
     359.   The RICO Enterprise was an ongoing and continuing organization consisting of

                                         - 144 -

1   individuals who associated together for the common or shared purpose of manipulating awards of

2   stock options at Brocade, attempting to cover up the illegal stock option grants, and seeking to

3   eliminate the liability of the RICO Defendants and others for the illegal activity. Over a more than

4   eight-year timeframe during the Relevant Period, the RICO Defendants conspired and acted to

5   illegally manipulate the granting of stock options at Brocade, cover up the illegal granting of stock

6   options at the Company, and attempt to eliminate the liability of the RICO Defendants and others for

7   the illegal activity.  As a result of this illegal enterprise, stock options were manipulated, and

8   materially false financial statements were filed, for the fiscal years 1999 to 2004. Further, the RICO

9   Defendants were enriched and Brocade was damaged in that it received less money than it should

10  have when recipients of the options exercised the options.  From 1999 to the present, the RICO

11  Defendants took steps to conceal the illegal activity and to attempt to release culpable defendants

12  from liability for the illegal conduct, all to the detriment of Brocade.

13        360.    At all relevant times, the association of individuals and entities that form the RICO

14  Enterprise was also associated for the lawful purpose of working for Brocade, serving on the Board

15  or serving as Brocade's outside auditor.

16        361.    The RICO Defendants constructed and implemented a common system of granting

17  Brocade stock options with exercise prices less than the fair market value of Brocade's stock on the

18  grant date.  This common system involved a scheme whereby stock options were "backdated" by

19  issuing the options days or weeks after the supposed grant date, and then pricing the options at a low

20  point in the past instead of pricing the options on the date the options were actually awarded.  The

21  RICO Defendants are distinct individuals, entities or, in the case of KPMG, a partnership.

22        362.    The RICO Enterprise affected interstate commerce. It was a further part of said

23  scheme and artifice, and in furtherance thereof, that the RICO Defendants would and did communi-

24  cate with each other and with their co-conspirators and others, in person, through mail service

25  provided by the U.S. Postal Service, by telephone and other interstate and foreign wire facilities.

26        363.    For the purpose of executing and attempting to execute the scheme and artifice

27  described herein, the RICO Defendants and their co-conspirators would and did knowingly place and

28  cause to be placed in any post office or authorized depository for mail matters and things to be sent

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  and delivered by the United States Postal Service; took and received therefrom such matters and

2  things; and knowingly caused to be delivered by mail according to the direction thereon, and at the

3  place at which it is directed to be delivered by the person to whom it is addressed, any such matters

4  and things, in violation of 18 U.S.C. §1341, including, but not limited to, the instances set forth in

5  the predicate racketeering acts described below.

6      364.    For purposes of executing and attempting to execute that scheme and artifice, the

7  RICO Defendants and their co-conspirators would and did knowingly transmit and cause to be

8  transmitted in interstate and foreign commerce by means of wire, radio and television

9  communication writings, signs, signals, pictures and sounds (collectively "Transmissions") in

10  violation of 18 U.S.C. §1343, including, but not limited to, the transmissions set forth in the

11  predicate racketeering acts described below.

12                    **Conduct of the Affairs of the RICO Enterprise**

13      365.    The RICO Defendants conducted or participated in the conduct of the RICO

14  Enterprise in violation of 18 U.S.C. §1962(c). Such conduct and participation was carried out in at

15  least the following ways:

16          (a)    Through a conspiracy to commit securities and mail fraud in violation of 18

17  U.S.C. §371. Reyes was convicted of this offense on August 7, 2007. Jensen was convicted of this

18  offense on December 5, 2007;

19          (b)    Through knowingly and willingly, directly and indirectly, falsifying and

20  causing to be falsified books, records and accounts of Brocade as to a material matter, in violation of

21  15 U.S.C. §§78m(b)(2)(A), 78m(b)(5) and 78ff(a). Reyes was convicted of this offense on August 7,

22  2007. Jensen was convicted of this offense on December 5, 2007;

23          (c)    Through securities fraud, in violation of 15 U.S.C. §§78j(b) and 78ff; 17

24  C.F.R. §240.10b-5, 18 U.S.C. §2;

25          (d)    Through filing false SEC filings, in violation of 15 U.S.C. §§78j(b) and 78ff;

26  17 C.F.R. §240.10b-5, 18 U.S.C. §2; and

27          (e)    Through violation of 18 U.S.C. §§1341 (mail fraud) and 18 U.S.C. §1343

28  (wire fraud).

1          **The RICO Defendants' Pattern of Racketeering Activity and the Predicate Acts**

2          366.    Throughout the Relevant Period, the RICO Defendants knowingly, willfully and

3   unlawfully conducted or participated, directly or indirectly, in the conduct of the RICO Enterprise

4   through a pattern of racketeering activity, including multiple predicate acts chargeable under 18

5   U.S.C. §371, 15 U.S.C. §§78j(b) and 78ff; 17 C.F.R. §240.10b-5, 18 U.S.C. §2, and 15 U.S.C.

6   §§78m(b)(2)(A), 78m(b)(5) and 78ff(a), in violation of 18 U.S.C. §1962(c).

7          367.    From at least as early as 1999, and continuing until the time of filing of this

8   complaint, the RICO Defendants and others known and unknown did knowingly and intentionally

9   devise and intend to devise a scheme and artifice to defraud, and obtain money and property from,

10  members of the public and Brocade by means of materially false and fraudulent pretenses,

11  representations and promises, and omissions of material facts, knowing that the pretenses,

12  representations and promises, were false when made.

13         368.    The RICO Defendants' activities in furtherance of the RICO Enterprise were ongoing

14  and continuous over at least eight or more years.  These violations constitute a "pattern of

15  racketeering activity" within the meaning of 18 U.S.C. §1962(c).

16         369.    The predicate acts in furtherance of the RICO Enterprise included, but were not

17  limited to, the following:

18              (a)    *Predicate Act No. 1*:  Reyes and Jensen backdated Brocade Compensation

19  Committee minutes so that the minutes falsely reported that a meeting occurred on October 30, 2001

20  and that stock options were granted on that day and priced at the market value of Brocade's stock on

21  that day;

22              (b)    *Predicate Act No. 2*:  Reyes and Jensen backdated Brocade Compensation

23  Committee minutes so that the minutes falsely reported that a meeting occurred on November 28,

24  2001 and that stock options were granted on that day and priced at the market value of Brocade's

25  stock on that day;

26              (c)    *Predicate Act No. 3*:  Reyes and Jensen backdated Brocade Compensation

27  Committee minutes so that the minutes falsely reported that a meeting occurred on January 22, 2002

28

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  and that stock options were granted on that day and priced at the market value of Brocade's stock on

2  that day;

3          (d)    *Predicate Act No. 4*:  Reyes and Jensen backdated Brocade Compensation

4  Committee minutes so that the minutes falsely reported that a meeting occurred on February 28,

5  2002 and that stock options were granted on that day and priced at the market value of Brocade's

6  stock on that day;

7          (e)    *Common Facts for Predicate Act Nos. 1-4*:  For all of the backdated Compen-

8  sation Committee minutes, Reyes, Jensen and others conspired to commit the substantive crimes

9  noted above.  One witness testified that he understood Jensen and Reyes operated together in

10  determining the appropriate retroactive price for option grants.[11]  Another witness testified that under

11  Jensen's supervision, three possible retroactive grant dates would be selected.  Jensen would then

12  take the potential dates to Reyes and return with signed, falsified Compensation Committee meeting

13  minutes.  Jensen oversaw and directed Stephen Beyer, Colleen Devine, and Margie Lee in gathering

14  the historical price information for Brocade stock, preparing the false minutes, presenting those

15  minutes to Reyes for his signature, and passing the phony documentation along to the Company's

16  finance department. Jensen screened the pricing information and directed her subordinates to choose

17  a date that was not always the lowest in order to conceal that she and Reyes were selecting low-price

18  dates;

19          (f)    *Predicate Act No. 5*:  On or about January 24, 2002, Reyes, Canova,

20  Dempsey, Leslie, Neiman and Sonsini filed and signed, and caused Brocade to file, a Form 10-K

21  with the SEC for the fiscal year ended October 27, 2001, in which such defendants knowingly and

22  willfully made and caused Brocade to make untrue statements of material fact and to omit to state

23  material facts necessary to make the statements made not misleading.  Specifically, the Form 10-K

24  (1) falsely represented that Brocade did not incur compensation expenses in connection with its

25

26  _____

27  [11]  References to witness statements derive from testimony taken during the jury trials of either
Reyes or Jensen.  *See United States of America v. Reyes*, no. 3:06-cr-00556-CRB-1 & 2 (N.D. Cal.
Jul. 20, 2006).

28

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  stock option grants made during fiscal year 2001; (2) omitted to disclose that Brocade granted stock

2  options during fiscal year 2001 with exercise prices that were below the market value of the

3  Company's stock on the grant dates and that Brocade incurred compensation expenses in connection

4  with such stock option grants; (3) falsely represented that Brocade accounted for its stock option

5  grants in accordance with the provisions of APB 25 whereby the difference between the exercise

6  price and the fair market value at the grant date is recognized as compensation expense; and (4)

7  omitted to disclose that fraudulent entries relating to stock option grants were made in the books and

8  records of the Company;

9           (g)    *Predicate Act No. 6*:  On or about January 22, 2003, Reyes, Canova, Byrd,

10  Dempsey, Neiman, Paisley, Sonsini and KPMG filed, signed, or caused Brocade to file a Form 10-K

11  with the SEC for the fiscal year ended October 26, 2002, in which such defendants knowingly and

12  willfully made and caused Brocade to make untrue statements of material fact and to omit to state

13  material facts necessary to make the statements made not misleading.  Specifically, the Form 10-K

14  (1) falsely represented that Brocade did not incur compensation expenses in connection with its

15  stock option grants made during fiscal year 2002; (2) omitted to disclose that Brocade granted stock

16  options during fiscal year 2002 with exercise prices that were below the market value of the

17  Company's stock on the grant dates and that Brocade incurred compensation expenses in connection

18  with such stock option grants; (3) falsely represented that Brocade accounted for its stock option

19  grants in accordance with the provisions of APB 25 whereby the difference between the exercise

20  price and the fair market value at the grant date is recognized as compensation expense; and (4)

21  omitted to disclose that fraudulent entries relating to stock option grants were made in the books and

22  records of the Company.  KPMG audited the financial results in the Form 10-K and, notwithstanding

23  its knowledge of the falsity of the aforementioned statements in the Form 10-K, certified that the

24  financial statements complied in all respects with GAAP;

25           (h)    *Predicate Act No. 7*:  On or about January 20, 2004, Reyes, Canova,

26  Dempsey, Neiman, Paisley, Sonsini, Moore and KPMG filed, signed, or caused Brocade to file a

27  Form 10-K with the SEC for the fiscal year ended October 25, 2003, in which such defendants

28  knowingly and willfully made and caused Brocade to make untrue statements of material fact and to

1  omit to state material facts necessary to make the statements made not misleading. Specifically, the

2  Form 10-K (1) falsely represented that Brocade did not incur compensation expenses in connection

3  with its stock option grants made during fiscal year 2003; (2) omitted to disclose that Brocade

4  granted stock options during fiscal year 2003 with exercise prices that were below the market value

5  of the Company's stock on the grant dates and that Brocade incurred compensation expenses in

6  connection with such stock option grants; (3) falsely represented that Brocade accounted for its stock

7  option grants in accordance with the provisions of APB 25 whereby the difference between the

8  exercise price and the fair market value at the grant date is recognized as compensation expense; and

9  (4) omitted to disclose that fraudulent entries relating to stock option grants were made in the books

10  and records of the Company.  KPMG audited the financial results in the Form 10-K and,

11  notwithstanding its knowledge of the falsity of the aforementioned statements in the Form 10-K,

12  certified that the financial statements complied in all respects with GAAP;

13           (i)      *Predicate Act No. 8*: Jensen directed Brocade employees not to use e-mail or

14  voicemail when communicating about the stock option granting process. Jensen also used Steven

15  Beyer and other human resource employees to delete and fabricate evidence of Brocade's

16  backdating;

17           (j)      *Predicate Act No. 9*:  During February 2002, Byrd approved backdated

18  options for new hire Geruson and directed Brocade human resources employees to cover up the act;

19           (k)      *Predicate Act No. 10*:  Defendants Reyes and Byrd entered into their

20  respective indemnity agreements with Brocade on August 15, 2002. Reyes signed Byrd's agreement,

21  and Byrd signed the agreement for Reyes. Each such agreement purports to create a "private statute

22  of limitations" under which Brocade (or a shareholder derivative plaintiff) would be barred from

23  bringing any legal claim against either Reyes or Byrd after the expiration of two years from the date

24  of accrual of any cause of action giving rise to any such claim. Further, these agreements state that if

25  a claim (broadly defined to include most types of civil or criminal proceedings) against either Reyes

26  or Bryd terminates "by judgment, order, settlement (whether with or without court approval) or

27  conviction, or upon a plea of *nolo contendere*, or its equivalent, shall not create a presumption that

28  Indemnitee did meet any particular standard of conduct or have any particular belief or that a court

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  has determined that indemnification is not permitted by applicable law." These agreements, which

2  were entered into at a time when Reyes and Byrd were fully engaged in moving their backdating

3  scheme forward, were specifically intended by each of them to advance the cause of the RICO

4  Enterprise by eliminating or minimizing their liability exposure to the Company for their misconduct

5  related to the stock option backdating alleged herein. Each such agreement arises out of actions

6  taken by self-interested directors who acted in bad faith to advance their own interests at the expense

7  of Brocade and its shareholders, and are void and unenforceable as against public policy.

8          (l)     *Predicate Act No. 11*:  In 2005 and 2006, the RICO Defendants conspired to

9  cover up the racketeering activity by taking action to attempt to influence the legal and accounting

10 advisors to Brocade's Audit Committee that a restatement of Brocade's financial results was not

11 necessary. On information and belief, as part of this process, Sonsini and other RICO Defendants

12 caused Brocade to procure an opinion from WSGR that Brocade's accounting treatment for stock

13 options issued under the "part-time" program was appropriate and that it complied with GAAP;

14         (m)    *Predicate Act No. 12*:  In 2006, Klayko, Dempsey, House, Krause, Rose,

15 Jones, Vaswani and Walker took action as members of the Board to approve the Proposed

16 Settlement pursuant to which Brocade was to receive no monetary compensation and most of the

17 RICO Defendants and others were to receive complete releases for the illegal conduct. Defendant

18 Wall played an active role in negotiating the Proposed Settlement. This conduct was an integral part

19 of the ongoing conspiracy to cover up the RICO Enterprise and, when that failed, to release the

20 culpable individuals and entities from liability. Sonsini's law firm, WSGR, provided legal advice to

21 Klayko, Dempsey, House, Krause, Rose, Jones, Vaswani and Walker to approve the Proposed

22 Settlement even though WSGR and Sonsini faced a material and incurable conflict of interest in

23 representing Brocade's interests in the settlement discussions. Under the terms of the illusory

24 settlement, both Sonsini and WSGR were to receive complete releases from liability;

25         (n)    *Predicate Act No. 13*:  In January 2007, House, Jones, Klayko, Krause, Rose,

26 Vaswani and Walker caused Brocade to amend its stockholder rights plan, commonly referred to as a

27 "poison pill," to accelerate the expiration of the plan to January 23, 2007, thus terminating the plan.

28 The plan was terminated as part of the conspiracy to eliminate the liability of the RICO Defendants

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1   for the racketeering activity, since termination of the plan would greatly facilitate acquisition of

2   Brocade by another corporation or entity and any merger or acquisition of the Company would

3   generally, absent certain exceptions, eliminate the liability of the RICO Defendants for shareholder

4   derivative claims;

5          (o)    *Predicate Act No. 14:* In the spring of 2007, defendants took action to urge

6   the federal district court to approve the Proposed Settlement;

7          (p)    *Predicate Act No. 15*: In May 2007, plaintiffs in the State Derivative Action

8   filed a motion to disqualify WSGR from representing Brocade or any other party in the State

9   Derivative Action or Federal Derivative Action due to WSGR's material and incurable conflicts of

10  interest.  As part of the conspiracy to cover up the RICO Enterprise and procure releases for the

11  RICO Defendants and others, Wall, DiPentima, Gerdelman, House, Jones, Klayko, Krause, Rose,

12  Vaswani, and Walker caused Brocade in 2007 to oppose this motion to disqualify WSGR as counsel

13  for the Company in such derivative actions under circumstances in which these defendants had a

14  fiduciary duty to ensure that Brocade utilized independent counsel and to ensure that WSGR did not

15  continue to represent parties who were adverse to Brocade;

16         (q)    *Predicate Act No. 16*:  On February 26, 1998, while Brocade was still a

17  California corporation, the Board – including defendants Neiman and Dempsey – adopted the 1998

18  Plan.  At the meeting, these directors – again including Neiman and Dempsey – also passed a

19  resolution delegating to the Company's CEO the authority to make stock option awards under the

20  1998 Equity Incentive Plan to employees other than Section 16 officers.  However, this authorization

21  was only effective upon the IPO, which subsequently happened in May 1999.  This resolution

22  constituted an abdication of the duties owed by Neiman and Dempsey to Brocade as members of the

23  Board and as members of the Compensation Committee.  Thus, when Reyes became CEO of

24  Brocade in January 1999, he was not authorized, acting alone, to issue any stock options because the

25  Company had not yet conducted an IPO of its stock.  Moreover, once the IPO occurred, Reyes was

26  only authorized to issue stock options *under the 1998 Plan and not under any other plan*.  The

27  Board never passed an authorization similar to the February 26, 1998 resolution that gave Reyes

28  authority to issue stock options under the 1999 Plan or any subsequent plan.  The Board never did so

1   until February 21, 2001. Thus, all stock options issued by Reyes under Brocade's 1999 Stock Option

2   Plan at any time from 1999 to February 21, 2001 were and are completely void. Moreover,

3   Brocade's Compensation Committee had actual knowledge that Reyes was not authorized to issue

4   stock options under the 1999 Plan or later plans. As noted above Neiman and Dempsey were present

5   at the February 26, 1998 Board meeting and voted to authorize Reyes to issue options under the

6   1998 Plan. Thus, they knew that Reyes, who was not a member of the Compensation Committee,

7   could only issue options pursuant to a valid resolution of the full Board. The rest of the directors

8   also knew this because the stock options plans very clearly state that options may only be issued by

9   the full Board or a committee of the Board acting pursuant to a valid delegation of authority. Thus,

10  all members of the Board acted with knowledge or gross recklessness in allowing Reyes to issue

11  options under the 1999 Plan and later plans with no authority to issue such options;

12          (r)    *Predicate Act No. 17*:  In February 1999, Brocade was still a California

13  corporation and still was privately held. It had not yet completed an IPO. Nevertheless, Reyes

14  began to issue stock options as a "committee of one." Between February 19, 1999 and May 23,

15  1999, Reyes issued hundreds of thousands of unauthorized and void stock options. Defendants

16  Neiman, Dempsey, Leslie and Sonsini were aware that Reyes was acting without authority and

17  conspired with Reyes by: (i) allowing him to issue stock options without a proper delegation; and (ii)

18  allowing him to issue backdated stock options;

19          (s)    *Predicate Act No. 18*:  At a March 17, 1999 Board meeting, defendants

20  Neiman, Dempsey, Leslie, Reyes and Sonsini passed a resolution combining the 1995 Equity

21  Incentive Plan, 1998 Plan and 1998 Executive Equity Incentive Plan into the 1999 Plan, effective

22  upon closing of the IPO. However, they did not pass a resolution authorizing Reyes to act as a

23  "committee of one" with respect to options issued under the 1999 Plan. Thus, they consciously

24  permitted Reyes to continue to issue awards under the 1999 Plan without a proper delegation.

25          (t)    *Predicate Act No. 19*: Reyes continued to issue stock options as a "committee

26  of one" throughout 1999 and up to and including February 21, 2001. During that time, Reyes issued

27  hundreds of thousands of stock options. During this entire time, the Board never passed a resolution

28  authorizing Reyes to issue stock options under the 1999 Plan. Nevertheless, the members of the

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  Compensation Committee and the rest of the Board consciously continued to allow Reyes to issue

2  options as a "committee of one" and to issue backdated stock options; and

3          (u)    ***Predicate Act No. 20***:  On February 21, 2001, defendants Reyes, Dempsey,

4  Leslie, Neiman and Sonsini, constituting all the members of the Board at the time, issued a

5  resolution pursuant to a "Unanimous Written Consent."  Under the February 21, 2001 UWC, these

6  defendants authorized Reyes for the first time to grant nonstatutory stock options to non-executive

7  officer employees at Brocade under Brocade's 1999 Plan. The UWC authorized Reyes to issue such

8  options to the indicated employees "in his sole discretion." This UWC represented a blatant breach

9  of fiduciary duty by Reyes, Dempsey, Leslie, Neiman and Sonsini since Reyes had already been

10  issuing options "in his sole discretion" under the 1999 Plan for two years.  Moreover, Dempsey,

11  Leslie, Neiman and Sonsini knew Reyes was backdating stock options, knew Reyes had no authority

12  to do so, and passed the UWC in furtherance of the conspiracy to facilitate and empower Reyes.

13  Further, as members of the Compensation Committee, Neiman, Dempsey and Leslie had been

14  explicitly vested with the responsibility to issue stock options under the 1999 Plan by the full Board

15  in October 1999.  The delegation of sole discretion to Reyes constituted an abdication of the

16  fiduciary duties owed by Neiman, Dempsey and Leslie as members of the Compensation Committee.

17      370.    Pursuant to 18 U.S.C. §1964, the RICO Defendants are liable to plaintiff derivatively

18  on behalf of Brocade for threefold the actual damages sustained by Brocade, plus the costs of

19  bringing this suit, including reasonable attorney's fees.

20                           **Damages Caused by the RICO Enterprise**

21      371.    The RICO Defendants' violations of 18 U.S.C. §1962(c) directly and proximately

22  caused, and continue to cause, Brocade to be injured in its business or property by an aggregate

23  amount in excess of $100 million.  The damages caused to Brocade include, but are not limited to,

24  fines paid to the SEC, costs of investigation and restatement of its financial results, the advancement

25  of attorney fees to some of the RICO Defendants and others under indemnification agreements,

26  being named as a defendant in the securities fraud class action litigation before this Court, loss of

27  income when the manipulated stock options were exercised by the option recipients at lower exercise

28  prices, and tax and other damages.

**COUNT II**

**Against the RICO Defendants for Conspiracy to Violate RICO, 18 U.S.C. §1962(c)**

372. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

373. Throughout the Relevant Period, the RICO Defendants knowingly, willfully and unlawfully conspired and agreed with each other to conduct or participate, directly and indirectly, in the conduct of the affairs and activities of the RICO Enterprise, through a pattern of racketeering activity, including acts chargeable under 18 U.S.C. § 71, 15 U.S.C. §§78j(b) and 78ff; 17 C.F.R. §240.10b-5, 18 U.S.C. §2, and 15 U.S.C. §§8m(b)(2)(A), 78m(b)(5) and 78ff(a), in violation of 18 U.S.C. §1962(c) and (d), by agreeing to the objective of the conspiracy and/or by agreeing to commit at least two of the criminal predicate acts alleged herein. The predicate acts alleged above are specifically incorporated herein by this reference and are realleged as if fully set forth herein

374. The objects of the conspiracy were to illegally manipulate the granting of stock options at Brocade, conceal such illegal manipulation, and eliminate the liability of the RICO Defendants through securities fraud, conspiracy, making false entries in Brocade's books and records, filing false financial statements with the SEC, causing Brocade to retain WSGR, a materially conflicted law firm, and entering into and advocating court approval of the Proposed Settlement. Such objections were to be achieved and were achieved through the wrongful predicate acts alleged herein. The conspiracy and predicate acts alleged herein were affectuated through Transmissions in order to conduct or facilitate interstate commerce.

375. The RICO Defendants' violations of 18 U.S.C. §1962(d) directly and proximately caused, and continue to cause, Brocade to be injured in its business or property by an aggregate amount in excess of $100 million. The damages caused to Brocade include, but are not limited to, fines paid to the SEC, costs of investigation and restatement of its financial results, the advancement of attorney fees to the RICO Defendants and others under indemnification agreements, being named as a defendant in the Federal Securities Class Action, loss of income when the manipulated stock options were exercised by the option recipients at lower exercise prices, and tax and other damages.

376. In accordance with 18 U.S.C. §1964, the RICO Defendants are liable to plaintiff

1  derivatively on behalf of Brocade for threefold the actual damages sustained by Brocade, plus the

2  costs of bringing this suit, including reasonable attorney's fees.

3                                        **COUNT III**

4             **Against Defendants Reyes and Canova for Disgorgement**
                        **under the Sarbanes-Oxley Act of 2002**
5

6         377.    Plaintiff incorporates by reference and realleges each and every allegation set forth

7  above, as though fully set forth herein.

8         378.    Section 304 of Sarbanes-Oxley provides that if a public company prepares an

9  accounting restatement due to material non-compliance with any financial reporting requirement

10  under federal securities laws, and such non-compliance resulted from misconduct, then the

11  company's CEO and CFO must reimburse the company for certain payments made by the company

12  to those executives. Section 304, entitled "Forfeiture of Certain Bonuses and Profits," provides in

13  full:

14         (a)    **Additional compensation prior to noncompliance with**
              **commission financial reporting requirements**. If an issuer is required to
15         prepare an accounting restatement due to the material non-compliance of the
              issuer, as a result of misconduct, with any financial reporting requirement
16         under the securities laws, *the chief executive officer and chief financial*
              *officer of the issuer shall reimburse the issuer for –*
17
                     1.     any bonus or other incentive-based or equity-based
18             compensation received by that person from the issuer during the 12-
                  month period following the first public issuance or filing with the
19             Commission (whichever first occurs) of the financial document
                  embodying such financial reporting requirement; and
20
                     2.     any profits realized from the sale of securities of the issuer
21             during that 12-month period.

22         (b)    **Commission exemption authority**. The Commission may exempt
              any person from the application of subsection (a), as it deems necessary and
23         appropriate.

24         379.    Brocade has restated its fiscal 2002 through first fiscal quarter 2005 financial

25
26  statements due to the material non-compliance of such statements with federal securities laws

27  reporting requirements. These restatements resulted from "misconduct" within the meaning of

28  Section 304 of the SOX. As a result, defendants Reyes and Canova, Brocade's former CEO and

                                        - 156 -

1    CFO, are required to reimburse Brocade for all bonuses or other incentive-based or equity-based

2    compensation received by them from the Company during the period July 30, 2002 (the date of

3    enactment of the SOX) through January 29, 2005 (the end date of Brocade's first fiscal quarter

4    2005).

5        380.   Further, defendants Reyes and Canova are liable to Brocade for any profits realized

6    from the sales of securities by the Company during that same period of time.

7        381.   Defendants Reyes and Canova are also liable to plaintiffs for reasonable costs and

8    attorneys' fees in the prosecution of this derivative action on behalf of Brocade.

9

10                                    **COUNT IV**

11   **Against Defendants Reyes, Jensen, Neiman, Dempsey and Sonsini for Causing Brocade to
     Violate §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**

12       382.   Plaintiff incorporates by reference and realleges each and every allegation contained

13   above, as though fully set forth herein.

14       383.   Defendants Reyes, Jensen, Neiman, Dempsey and Sonsini caused Brocade to

15   disseminate public statements that falsely reported Brocade's compensation expenses due to the

16   illegal stock option manipulations perpetrated by the Individual Defendants as alleged herein. The

17   Individual Defendants knew that the Company's public statements concerning its compensation

18   expenses were misleading and intended to deceive, manipulate and/or defraud in connection

19   therewith.

20       384.   As such, defendants Reyes, Jensen, Neiman, Dempsey and Sonsini caused Brocade to

21   violate Section 10(b) of the Exchange Act and SEC Rule 10b-5 in that they caused the Company to:

22              (a)    Employ devices, schemes and artifices to defraud;

23              (b)    Make untrue statements of material facts or omitted to state material facts

24   necessary in order to make the statements made, in light of the circumstances under which they were

25   made, not misleading; or

26              (c)    Engage in acts, practices and a course of business that operated as a fraud or

27   deceit upon Brocade's shareholders in connection with their purchases of Brocade common stock at

28   times relevant.

385.   Brocade's violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 caused an artificial inflation of the Company's stock price.  The Insider Selling Defendants took advantage of this artificial inflation by selling over $1.5 billion worth of shares of Brocade's common stock at inflated prices while in possession of material non-public information.   These defendants misappropriated Brocade's proprietary information and violated their so-called "abstain or disclose" duties under the federal securities laws when they sold Brocade stock without disclosing the information alleged to have been concealed herein.

386.   As a result of defendants Reyes, Jensen, Neiman, Dempsey and Sonsini's misconduct, Brocade was exposed to massive liability as alleged in the Federal Securities Class Action.  Under the terms of the settlement reached in that action, Brocade must pay $160 million.  The Federal Securities Class Action alleged that Brocade violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 and was liable to a class of shareholders.  In turn, defendants Reyes, Jensen, Neiman, Dempsey and Sonsini are liable to Brocade for the damages that the Company faced in the securities class action.

## COUNT V

**Against the Individual Defendants for Breach of Fiduciary Duty for Approving Improperly-Dated Stock Option Grants to Brocade's Employees and Executive Officers**

387.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

388.   The Individual Defendants owed and owe Brocade fiduciary obligations.  By reason of their fiduciary relationships, the Officer Defendants and Director Defendants owed and owe Brocade the highest obligation of good faith, fair dealing, loyalty and due care.

389.   The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

390.   Each of the Individual Defendants had actual or constructive knowledge that they had approved the improper backdating of stock option grants and the corresponding issuance of inaccurate financial results that did not properly account for the stock option grants and failed to

1  correct or prevent these improprieties. These actions could not have been a good faith exercise of

2  prudent business judgment to protect and promote the Company's corporate interests.

3      391.    As a direct and proximate result of the Individual Defendants' failure to perform their

4  fiduciary obligations, Brocade has sustained significant damages. For example, the backdating

5  harmed Brocade's reputation and ruined a potential multi-billion dollar transaction with Cisco. As a

6  result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

7      392.    Plaintiff on behalf of Brocade has no adequate remedy at law.

## COUNT VI

**Against Defendants Dempsey, House, Klayko, Krause, Rose, Vaswani and Walker for
Breach of Fiduciary Duty for Approving the Proposed Settlement**

10     393.    Plaintiff incorporates by reference and realleges each and every allegation contained

11 above, as though fully set forth herein.

12     394.    Defendants Dempsey, House, Klayko, Krause, Rose, Vaswani and Walker owed and

13 owe Brocade fiduciary obligations. By reason of their fiduciary relationships, these defendants owed

14 and owe Brocade the highest obligation of good faith, fair dealing, loyalty and due care.

15     395.    Defendants Dempsey, House, Klayko, Krause, Rose, Vaswani and Walker, and each

16 of them, violated and breached their fiduciary duties of care, loyalty and good faith by approving the

17 Proposed Settlement.

18     396.    Each of defendants Dempsey, House, Klayko, Krause, Rose, Vaswani and Walker

19 approved the Proposed Settlement on behalf of the Company. As detailed in great particularity

20 herein, the Individual Defendants and defendant KPMG were each involved in the egregious

21 wrongdoing which caused Brocade substantial harm. Under the terms of the Proposed Settlement,

22 however, the Company would have implemented some corporate governance changes but also would

23 have recovered nothing for the substantial monetary losses alleged in the Federal Derivative Action,

24 which are similar to those alleged here.

25     397.    As a direct and proximate result of defendants Dempsey, House, Klayko, Krause,

26 Rose, Vaswani and Walker's failure to perform their fiduciary obligations, if the Proposed

27 Settlement had been approved, Brocade would never have recovered for its losses that KPMG and

28 the Individual Defendants, including Dempsey, House, Klayko, Krause, Vaswani and Walker,

- 159 -

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1   caused the Company.  As a result of the misconduct alleged herein, Dempsey, House, Klayko,

2   Krause, Rose, Vaswani and Walker are liable to the Company.

3        398.    Plaintiff on behalf of Brocade has no adequate remedy at law.

4                                       **COUNT VII**

5            **Against the Insider Selling Defendants for Violation of**
              **California Corporations Code Section 25402**

6

7        399.    Plaintiff incorporates by reference and realleges each and every allegation set forth

above, as though fully set forth herein.

8

9        400.    At the time that the Insider Selling Defendants sold their Brocade common stock as

set forth herein, by reason of their high executive and/or directorship positions with Brocade, the

10

11   Insider Selling Defendants had access to highly material information regarding the Company,

including the information set forth herein regarding the true adverse facts concerning defendants'

12

13   backdating practices.  Further, the Insider Selling Defendants cashed in their illegally-backdated

stock options and sold them for over $1.5 billion in proceeds.

14

15        401.    At the time of such sales, that information was not generally available to the public or

the securities markets.  Had such information been generally available, it would have significantly

16

17   reduced the market price of Brocade shares at that time.

       402.    The Insider Selling Defendants, and each of them, had actual knowledge of material,

18

19   adverse, non-public information and thus sold their Brocade common stock in California in violation

of California Corporations Code section 25402.

20

21        403.    Pursuant to California Corporations Code section 25502.5, the Insider Selling

Defendants, and each of them, are liable to Brocade for damages in an amount up to three times the

22

23   difference between the price at which Brocade common stock was sold by the defendants, and each

of them, and the market value which that Brocade common stock would have had at the time of the

24

25   sale if the information known to the defendants, and each of them, had been publicly disseminated

prior to that time and a reasonable time had elapsed for the market to absorb the information.

26

27

28

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1

**COUNT VIII**

2

**Against the Director Defendants for Violation of
California Corporations Code Section 25403**

3

404.    Plaintiff incorporates by reference and realleges each and every allegation set forth

4

above, as though fully set forth herein.

5

405.    The Director Defendants, through their positions, possessed control and influence

6

over the Insider Selling Defendants' sale of Brocade common stock in violation of the California

7

Corporations Code.  The Director Defendants are statutorily liable to the same extent as the Insider

8

Selling Defendants under California Corporations Code section 25403.

9

406.    The Director Defendants were aware of the Insider Selling Defendants' knowledge of

10

the material adverse non-public information and the Director Defendants were aware of the Insider

11

Selling Defendants' intent to sell Brocade common stock while in possession material adverse non-

12

public information.

13

407.    The Director Defendants are culpable for the Insider Selling Defendants' underlying

14

violations of California Corporations Code section 25402 because of their knowledge and ability to

15

control and influence the Insider Selling Defendants and because their involvement in preparing

16

and/or approving financials that improperly accounted for the Company's compensation expenses

17

related to grants of stock options to Brocade officers, directors and employees.

18

408.    Under California Corporations Code section 25403, the Director Defendants, and

19

each of them, are liable to Brocade for damages in an amount up to three times the difference

20

between the price at which Brocade common stock was sold by the Insider Selling Defendants, and

21

each of them, and the market value which that Brocade common stock would have had at the time of

22

the sale if the information known to the Individual Defendants, and each of them, had been publicly

23

disseminated prior to that time and a reasonable time had elapsed for the market to absorb the

24

information.

25

26

27

28

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1

## COUNT IX

2

**Against the Insider Selling Defendants for Breach of Fiduciary
Duties for Insider Selling and Misappropriation of Information**

3

4

409.    Plaintiff incorporates by reference and realleges each and every allegation set forth

above, as though fully set forth herein.

5

6

410.    At the time of the stock sales set forth herein, the Insider Selling Defendants knew the

information described above, and sold Brocade common stock on the basis of such information.

7

8

411.    The information described above was proprietary non-public information concerning

the Company's illegal granting of backdated stock options.  It was a proprietary asset belonging to

9

the Company, which the Insider Selling Defendants used for their own benefit when they sold

10

Brocade common stock.

11

412.    The Insider Selling Defendants' sales of Brocade common stock while in possession

12

and control of this material adverse, non-public information was a breach of their fiduciary duties of

13

loyalty and good faith.

14

413.    Since the use of the Company's proprietary information for their own gain constitutes

15

a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the

16

imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

17

## COUNT X

18

**Against All Defendants for Conspiracy to Breach Fiduciary Duties**

19

414.    Plaintiff incorporates by reference and realleges each and every allegation set forth

20

above, as though fully set forth herein.

21

415.    In committing the wrongful acts alleged herein, the Individual Defendants, defendant

22

KPMG and defendant WSGR have pursued, or joined in the pursuit of, a common course of conduct,

23

and have acted in concert with and conspired with one another in furtherance of their common plan

24

or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the

25

Individual Defendants, KPMG and WSGR further aided and abetted and/or assisted each other in

26

breach of their respective duties.

27

416.    During all times relevant hereto, the Individual Defendants, defendant KPMG and

28

defendant WSGR collectively and individually initiated a course of conduct that was designed to and

- 162 -

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1   did: (i) conceal the fact that Company executives were improperly backdating their stock option

2   grants; (ii) maintain the Individual Defendants' executive and directorial positions at Brocade and the

3   profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; (iii)

4   deceive the shareholders of Brocade regarding the level of compensation being paid to the

5   Company's executives and the Company's financial condition; and (iv) artificially inflate the price of

6   Brocade common stock so they could dispose of over $1.5 billion of their personally-held stock. In

7   furtherance of this plan, conspiracy and course of conduct, the Individual Defendants, KPMG and

8   WSGR collectively and individually took the actions set forth herein.

9        417.   The Individual Defendants, defendant KPMG and defendant WSGR engaged in a

10  conspiracy, common enterprise and/or common course of conduct.  During this time the Individual

11  Defendants, KPMG and WSGR caused the Company to conceal the true fact that Brocade was

12  misrepresenting its financial results and that Brocade executives were improperly backdating their

13  stock option grants.

14       418.   The purpose and effect of the conspiracy, common enterprise, and/or common course

15  of conduct by and among the Individual Defendants, defendant KPMG and defendant WSGR was,

16  among other things, to grant themselves undisclosed and unaccounted for compensation in the form

17  of backdated stock option grants and to disguise the Individual Defendants' breaches of fiduciary

18  duties, unjust enrichment, violations of state law prohibitions on insider selling codified in California

19  Corporations Code sections 25402 and 25403 and corporate waste.

20       419.   The Individual Defendants, defendant KPMG and defendant WSGR accomplished

21  their conspiracy, common enterprise and/or common course of conduct by causing the Company to

22  purposefully, recklessly or negligently misrepresent its financial results.  Because the actions

23  described herein occurred under the authority of the Board, each of the Individual Defendants was a

24  direct, necessary and substantial participant in the conspiracy, common enterprise and/or common

25  course of conduct complained of herein.

26       420.   Each of the Individual Defendants, defendant KPMG and defendant WSGR aided and

27  abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such

28  actions to substantially assist the commission of the wrongdoing complained of herein, each

- 163 -

1    Individual Defendant, defendant KPMG and defendant WSGR acted with knowledge of the primary

2    wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or

3    her overall contribution to and furtherance of the wrongdoing.

4        421.    As a direct and proximate result of the conspiracy, common enterprise and/or

5    common course of conduct by and among the Individual Defendants, defendant KPMG and

6    defendant WSGR to breach their fiduciary obligations, Brocade has sustained significant damages.

7    As a result of the misconduct alleged herein, the Individual Defendants, KPMG and WSGR are

8    liable to the Company.

9        422.    Plaintiff on behalf of Brocade has no adequate remedy at law

10    **COUNT XI**

11    **Against the Defendants Reyes, Jensen, Canova and Byrd for Fraud and Deceit Pursuant to
California Civil Code Sections 1709 and 1710**

12

13        423.    Plaintiff incorporates by reference and realleges each and every allegation set forth

14    above, as though fully set forth herein.

15        424.    California Civil Code section 1709 provides that "[o]ne who willfully deceives

16    another with intent to induce him to alter his position to his injury or risk, is liable for any damage"

17    suffered as a result of the deceit.

18        425.    California Civil Code section 1710 provides as follows:  "A deceit, within the

19    meaning of is either:

20        (1)    The suggestion, as a fact, of that which is not true, by one who does not believe it to

21    be true;

22        (2)    The assertion, as a fact, of that which is not true, by one who has no reasonable

23    ground for believing it to be true,

24        (3)    The suppression of a fact, by one who is bound to disclose it or who gives

25    information of other facts which are likely to mislead for want of communication of that fact; or

26        (4)    A promise, made without any intention of performing it."

27        426.    Due to the following, defendants Reyes, Jensen, Canova and Byrd committed

28    fraudulent deceit within the meaning of California Civil Code sections 1709 and 1710:

1    (a)    Said defendants knowingly manipulated internal Brocade documents as
2 alleged herein to provide false grant dates of stock options granted by the Company;

3    (b)    Said defendants had actual knowledge that the backdated stock option grants
4 were not granted on the stated date and therefore did not conform to Brocade's stock option plans,
5 employment contracts or other applicable compensation policies under which the Board had
6 authorized such options to be awarded;

7    (c)    Said defendants intended that Brocade rely on their false, material
8 representations as alleged above to the detriment of the Company;

9    (d)    Brocade reasonably believed and relied on the actions taken and
10 representations made by said defendants in connection with the backdating of stock options; and

11    (e)    As a proximate result of such reliance, the Company incurred damages,
12 including costs of over $73 million paid out to outside counsel, accounting firms and consultants to
13 prepare the restatements and to respond to the governmental investigations and enforcement actions
14 and $7 million in fines in connection with the governmental investigations and enforcement actions,
15 a market capitalization loss of over $9.1 billion and approximately $3.5 to $4.5 million paid in the
16 tender offer. Moreover, Brocade has advanced at least $46,709,323 in legal fees and expenses to
17 Reyes and $7,140,253 in legal fees and expenses to Jensen for their legal defenses.

18    427.    Pursuant to California Civil Code sections sections 1709 and 1710, Reyes, Jensen,
19 Canova and Byrd are liable to Brocade for punitive damages.

20                              **COUNT XII**

21              **Against All Defendants for Unjust Enrichment**

22    428.    Plaintiff incorporates by reference and realleges each and every allegation set forth
23 above, as though fully set forth herein.

24    429.    By their wrongful acts and omissions, the Individual Defendants were unjustly
25 enriched at the expense of and to the detriment of Brocade. These wrongful acts included the
26 approval of improperly-backdated stock options by the Director Defendants as well as the receipt of
27 underserved compensation in connection with those options by the Officer Defendants.

28

1    430.    Plaintiff, as a shareholder and representative of Brocade, seeks restitution from these

2    defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and

3    other compensation obtained by these defendants, and each of them, from their wrongful conduct

4    and fiduciary breaches.

5    **COUNT XIII**

6    **Against the Individual Defendants for Waste of Corporate Assets**

7    431.    Plaintiff incorporates by reference and realleges each and every allegation contained

8    above, as though fully set forth herein.

9    432.    As a result of the improprieties alleged herein, and by failing to properly consider the

10   interests of the Company and its public shareholders by failing to conduct proper supervision,

11   defendants have caused Brocade to waste valuable corporate assets and incur costs to conduct

12   investigations, hire outside counsel, accounting firms and consultants, and to direct manpower to the

13   task of restating Brocade's past financials to correct for the improperly-backdated stock option

14   grants.

15   433.    As a result of the waste of corporate assets, the Individual Defendants are liable to the

16   Company.

17   434.    Plaintiff on behalf of Brocade has no adequate remedy at law.

18   **COUNT XIV**

19   **Against Defendant Reyes for Declaratory Relief**

20   435.    Plaintiff incorporates by reference and realleges each and every allegation contained

21   above, as though fully set forth herein.

22   436.    On July 20, 2006, the United States Attorney for the Northern District of California

23   brought criminal charges against defendant Reyes. On August 7, 2007, following a trial by jury,

24   defendant Reyes was convicted for one count of conspiracy to commit securities and mail fraud in

25   violation of 18 U.S.C. §371, one count of securities fraud in violation of 15 U.S.C. §§78j(b) and

26   78ff, 17 C.F.R. §240.10b-5; 18 U.S.C. §2, three counts of filing false documents with the SEC in

27   violation of 15 U.S.C. §§78j(b) and 78ff, 17 C.F.R. §240.10b-5; 18 U.S.C. §2, one count of

28   falsifying Brocade's books, and records and accounts in violation of 15 U.S.C. §§78m(b)(2)(A),

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  78m(b)(5) and 78ff, 17 C.F.R. §240.13b2; 18 U.S.C. §2, and four counts of making a false statement

2  to an accountant in violation of 15 U.S.C. §§78ff, 17 C.F.R. §240.13b2-2, and 18 U.S.C. §2.

3      437.    Brocade has advanced at least $46,709,323 in legal fees and expenses to defendant

4  Reyes pursuant to, *inter alia*, the Company's certificate of incorporation, bylaws, Reyes'

5  indemnification agreement, California Corporations Code section 317, California Labor Code

6  section 2802 and 8 Delaware Code section 145.  The Company advanced such funds to Reyes to

7  defray legal fees and expenses that he incurred in connection with his defense of the criminal action

8  filed against him, as well as in connection with investigations and other litigation arising out of the

9  same misconduct that gave rise to the criminal action, including investigations by the Company and

10  SEC, shareholder class and derivative actions, and the enforcement action filed by the SEC.

11      438.    Defendant Reyes must return all monies advanced to him as alleged herein to

12  Brocade, because under applicable law the Company may not indemnify Reyes for acts that: (i) were

13  not in good faith; (ii) were not in the best interests of the Company; and (iii) were unlawful.  As

14  alleged herein and found by a jury at his criminal trial, Reyes' actions were in bad faith, not in

15  Brocade's best interest, and were unlawful.

16      439.    Accordingly, plaintiff seeks a declaration that defendant Reyes is not entitled to

17  indemnification from Brocade and must therefore return all advanced legal fees, expenses and other

18  monies to the Company.

19      440.    Plaintiff does not concede the validity of any indemnification agreements entered into

20  between Brocade and defendant Reyes.

21                          **COUNT XV**

22              **Against Defendant Jensen for Declaratory Relief**

23      441.    Plaintiff incorporates by reference and realleges each and every allegation contained

24  above, as though fully set forth herein.

25      442.    On July 20, 2006, the United States Attorney for the Northern District of California

26  brought criminal charges against defendant Jensen.  On December 5, 2007, following a jury trial,

27  Jensen was convicted following a jury trial on December 5, 2007 on two criminal counts –

28  conspiracy to falsify books, records and accounts in violation of 18 U.S.C. §371; and falsifying

1    books, records and accounts in violation of 15 U.S.C. §§78m(b)(2)(A), 78m(b)(5), 78ff, and 17

2    C.F.R. §240.13b2-1, all arising out of her role in the illegal employee compensation scheme that

3    took place at Brocade.

4        443.    Brocade has advanced at least $7,140,253 in legal fees and expenses to defendant

5    Jensen pursuant to, *inter alia*, the Company's certificate of incorporation, bylaws, Jensen's

6    indemnification agreement, California Corporations Code section 317, California Labor Code

7    section 2802 and 8 Delaware Code section 145. The Company advanced such funds to Jensen to

8    defray legal fees and expenses that she incurred in connection with her defense of the criminal action

9    filed against her, as well as in connection with investigations and other litigation arising out of the

10   same misconduct that gave rise to the criminal action, including investigations by the Company and

11   SEC, shareholder class and derivative actions, and the enforcement action filed by the SEC.

12       444.    Defendant Jensen must return all monies advanced to her as alleged herein to Brocade

13   because under applicable law, the Company may not indemnify Jensen for acts that: (i) were not in

14   good faith; (ii) were not in the best interests of the Company; and (iii) were unlawful.  As alleged

15   herein and found by a jury at her criminal trial, Jensen's actions were in bad faith, not in Brocade's

16   best interest, and were unlawful.

17       445.    Accordingly, plaintiff seeks a declaration that defendant Jensen is not entitled to

18   indemnification from Brocade and must therefore return all advanced legal fees, expenses and other

19   monies to the Company.

20       446.    Plaintiff does not concede the validity of any indemnification agreements entered into

21   between Brocade and defendant Jensen.

22                                    **COUNT XVI**

23   **Against Defendants House, Klayko, Deranleau, Malavalli, Canova, Byrd, Dempsey,
     Vaswani, Krause, Walker, Neiman, Moore, Paisley, O'Brien, Sonsini and Leslie for**

24                              **Declaratory Relief**

25       447.    Plaintiff incorporates by reference and realleges each and every allegation contained

26   above, as though fully set forth herein.

27       448.    As alleged herein, defendants House, Klayko, Deranleau, Malavalli, Canova, Byrd,

28   Dempsey, Vaswani, Krause, Walker, Neiman, Moore, Paisley, O'Brien, Sonsini and Leslie engaged

                                      - 168 -

1  in willful breaches of fiduciary duties owed to Brocade in bad faith.   In connection with this and

2  other lawsuits, Brocade has advanced millions of dollars in legal fees and expenses to such

3  defendants based upon the Company's obligations pursuant to, *inter alia*, its certificate of

4  incorporation, bylaws, indemnification agreements, California Corporations Code section 317,

5  California Labor Code section 2802 and 8 Delaware Code section145.

6        449.    Defendants House, Klayko, Deranleau, Malavalli, Canova, Byrd, Dempsey, Vaswani,

7  Krause, Walker, Neiman, Moore, Paisley, O'Brien, Sonsini and Leslie must return all monies

8  advanced to them as alleged herein to Brocade, because under applicable law, the Company may not

9  indemnify these defendants for acts that: (i) were not in good faith; (ii) were not in the best interests

10  of the Company; and (iii) were unlawful. As alleged herein, actions taken by these defendants were

11  in bad faith, not in Brocade's best interest, and were unlawful.

12        450.    Accordingly, plaintiff seeks a declaration that defendants House, Klayko, Deranleau,

13  Malavalli, Canova, Byrd, Dempsey, Vaswani, Krause, Walker, Neiman, Moore, Paisley, O'Brien,

14  Sonsini and Leslie are not entitled to indemnification from Brocade and must therefore return all

15  advanced legal fees, expenses and other monies to the Company.

16        451.    Plaintiff does not concede the validity of any indemnification agreements entered into

17  between Brocade and any defendant or non-party.

18                              **COUNT XVII**

19                **Against the Individual Defendants for Declaratory Relief**

20        452.    Plaintiff incorporates by reference and realleges each and every allegation contained

21  above, as though fully set forth herein.

22        453.    As alleged herein, defendant Reyes granted numerous stock options under the Plans at

23  times in which he had no authority to grant such options.   All stock options granted by Reyes

24  between May 1999 and February 2001 are void because Reyes did not have authority to grant such

25  options.

26        454.    All stock options granted by Reyes after February 2001 are also void because the

27  Board did not properly delegate its authority to grant stock option under the 1999 Plan. The Board

28

1  attempted to make this delegation via a UWC, which was not effective because it was not preceded

2  by an in-person meeting of the Board and after consultation with counsel.

3      455.   All backdated stock option grants, whether or not granted by defendant Reyes, are

4  void because such options violated the Plans under which they were granted.

5      456.   Accordingly, plaintiff seeks a declaration that the stock options grants described

6  above are void and incapable of ratification.  Plaintiff also seeks a declaration that all attempted

7  ratifications of these stock option grants were ineffectual.

8                          **COUNT XVIII**

9      **Direct Individual Claim for Declaratory and Injunctive Relief**
       **Against the Individual Defendants**

10

11     457.   Plaintiff incorporates by reference and realleges each and every allegation contained

12  above as though fully set forth herein.

13     458.   Plaintiff brings this cause of action directly in her individual capacity, and in such

14  capacity, seeks only declaratory and injunctive relief.

15     459.   The stock options granted by Brocade were not issued in conformity with the

16  Company's shareholder-approved stock option plans, violated applicable laws and regulations, and

17  therefore were and are void.  The stock options were also issued for an improper purpose – *i.e.* to

18  unjustly enrich the recipients of the options.

19     460.   The recipients of the stock options were unjustly enriched as a result of their receipt

20  of the stock option grants, which has proximately caused damage to Brocade.

21     461.   Brocade also has been damaged by the improper granting, documenting, accounting

22  and reporting of the backdated stock option grants.

23     462.   Plaintiff seeks a declaration and determination that the Brocade stock options that

24  were issued in non-conformity with the shareholder-approved stock option plans, and which violated

25  applicable laws and regulations, were and are void and/or constitute waste.  Plaintiff also seeks

26  injunctive relief in two forms:  (a) a constructive trust imposed over whatever profits or other

27  benefits the Individual Defendants may have received upon the exercise of any backdated stock

28  options so that such funds are not dissipated pending a ruling on the declaratory relief sought by

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  plaintiff; and (b) a preliminary and permanent injunction that prohibits the Individual Defendants

2  from exercising any backdated stock option grant.

3  ### COUNT XIX

4  ### Professional Negligence and Accounting Malpractice
   ### Against Defendant KPMG

5

6  463.    Plaintiff incorporates by reference and realleges each and every allegation contained

   above as though fully set forth herein.

7

8  464.    Defendant KPMG issued "clean" or unqualified opinions on Brocade's financial

   statements issued between 2002 and the present, stating that those financial statements were

9  presented in accordance with GAAP based on KPMG's audits which were performed in accordance

10 with GAAS.  GAAS, as approved and adopted by the AICPA, governs the conduct of audit

11 engagements.  In fact, the audit reports were false and misleading due to, among other things,

12 KPMG's failure to conduct the audits in accordance with GAAS, and the fact that Brocade's financial

13 statements issued between 2002 and 2004 were not prepared in conformity with GAAP.  KPMG's

14 reports were therefore in violation of GAAS, GAAP and SEC rules.

15 465.    The objective of audits of financial statements by the independent auditor is the

16 expression of an opinion on the fairness with which they present, in all material respects, financial

17 position, results of operations and cash flows in conformity with GAAP.  The auditor's report is the

18 medium through which he expresses his opinion or, if circumstances require, disclaims an opinion.

19 In either case, he states his audit has been in accordance with GAAS.  These standards require him to

20 state whether, in his opinion, the financial statements are presented in accordance with GAAP and to

21 identify those circumstances in which such principles have not been consistently observed in the

22 preparation of the financial statements of the current period in relation to those of the preceding

23 period.  AU § 110.01.

24 466.    GAAS as approved and adopted by the membership of the AICPA, are comprised of

25 ten general standards.  These standards to a great extent are interrelated and interdependent.  The

26 independent auditor is responsible for compliance with GAAS in an audit engagement.  The ten

27 general standards are as follows:

28

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1          (a)      **General Standards**

2                   (i)      The audit is to be performed by a person or persons having adequate

3  technical training and proficiency as an auditor.

4                   (ii)     In all matters relating to the assignment, independence in mental

5  attitude is to be maintained by the auditor or auditors.

6                   (iii)    Due professional care is to be exercised in the performance of the audit

7  and the preparation of the report.

8          (b)      **Standards of Fieldwork**

9                   (iv)     The work is to be adequately planned and assistants, if any, are to be

10  properly supervised.

11                  (v)      A sufficient understanding of the internal control structure is to be

12  obtained to plan the audit and to determine the nature, timing and extent of tests to be performed.

13                  (vi)     Sufficient competent evidential matter is to be obtained through

14  inspection, observation, inquiries, and confirmations to afford a reasonable basis for an opinion

15  regarding the financial statements under audit.

16         (c)      **Standards of Reporting**

17                  (vii)    The report shall state whether the financial statements are presented in

18  accordance with GAAP.

19                  (viii)   The report shall identify those circumstances in which such principles

20  have not been consistently observed in the current period in relation to the preceding period.

21                  (ix)     Informative disclosures in the financial statements are to be regarded

22  as reasonably adequate unless otherwise stated in the report.

23                  (x)      The report shall either contain an expression of opinion regarding the

24  financial statements, taken as a whole, or an assertion to the effect that an opinion cannot be

25  expressed.  When an overall opinion cannot be expressed, the reasons therefore should be stated.  In

26  all cases where an auditor's name is associated with financial statements, the report should contain a

27  clear-cut indication of the character of the auditor's work, if any, and the degree of responsibility the

28  auditor is taking.

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    467.    Defendant KPMG's audits of Brocade's financial statements issued for fiscal years

2    2002 through 2004, inclusive, violated each of the general standards.

3    468.    Defendant KPMG is one of the largest international firms of certified public

4    accountants. KPMG was the auditor of Brocade's financial statements from fiscal year 2002 to the

5    present.  In addition, they were paid to review the quarterly financial statements of Brocade

6    throughout this period. KPMG audited Brocade's financial statements issued from fiscal year 2002

7    to the present, and issued their audit opinions stating that those financial statements were fairly

8    presented in accordance with GAAP, and that they had audited those financial statements in

9    accordance with GAAS. Both of those statements were false.  KPMG either knew or should have

10    been aware of facts that undeniably precluded them from making those statements at the time they

11    were made. Brocade's financial statements and KPMG's opinions on them were then used by the

12    Company with KPMG's consent to publicly disseminate Brocade's financial results in the filing of

13    their annual Forms 10-K with the SEC.

14    469.    Defendant KPMG was negligent in failing to comply with GAAS as Brocade's

15    independent accountant. Brocade issued unqualified opinions stating that the financial statements of

16    Brocade were fairly presented in accordance with GAAP, when they were aware of or should have

17    been aware of facts and circumstances that undermined such unqualified opinions and rendered them

18    false and misleading.

19    470.    In the course of performing their audit services, defendant KPMG reasonably could

20    have obtained evidential matter revealing the adverse facts detailed above about Brocade's

21    undisclosed compensation, but improperly failed to require them to adjust their financial statements

22    or make disclosure of such facts.  As a result of their investigations and audit work, KPMG

23    reasonably should have known that the reports and financial statements described herein were

24    materially misleading or negligently disregarded facts that showed that all such statements were

25    materially misleading.

26    471.    Because: (a) defendant KPMG spoke regularly with Brocade Board and Audit

27    Committee members who were knowledgeable about the undisclosed option practices; and (b)

28    KPMG attended certain of Board and Audit Committee meetings where legal compliance was

1    discussed, KPMG knew or negligently disregarded facts that indicated that they should have: (i)

2    qualified their opinions on Brocade's financial statements issued for fiscal years 2002 through 2004,

3    inclusive; or (ii) required the Company to adjust its financial statements; or (iii) refused to give

4    opinions in light of the materially adverse effects of the undisclosed facts about Brocade's financial

5    condition, including the material overstatement of earnings based on the fact that Brocade's

6    compensation expenses were being materially understated. The failure to make such qualification,

7    correction, modification or withdrawal was a violation of GAAS, including the Fourth Standard of

8    Reporting.

9        472.    Defendant KPMG failed to require Brocade to disclose material adverse facts and

10   allowed the Company to make material misrepresentations to their shareholders and to the investing

11   public.

12       473.    Defendant KPMG violated GAAS General Standard No. 3, which requires that due

13   professional care must be exercised by the auditor in performance of the examination and the

14   preparation of the audit report.

15       474.    Defendant KPMG violated GAAS Standard of Field Work No. 2, which requires the

16   auditor to make a proper study of existing internal controls, to determine whether reliance thereon

17   was justified, and if such controls are not reliable, to expand the nature and scope of the auditing

18   procedures to be applied. KPMG reasonably should have known that Brocade's internal controls

19   were insufficient yet still failed to expand their auditing procedures.

20       475.    Defendant KPMG violated GAAS Standard of Field Work No. 3, which requires

21   sufficient competent evidential matter be obtained through inspection, observation, inquiries and

22   confirmations to afford a reasonable basis for an opinion to be issued on the subject financial

23   statements. As described above, KPMG failed to obtain sufficient competent evidential matter as to

24   Brocade's accounting and disclosure practices related to the timing and granting of stock option

25   grants.

26       476.    Defendant KPMG violated GAAS Standard of Reporting No. 1, which requires the

27   audit report to state whether the financial statements are presented in accordance with GAAP.

28

1    KPMG's opinions falsely represented that Brocade's financial statements complied with GAAP,

2    when KPMG knew or negligently disregarded that they did not for the reasons herein alleged.

3        477.   Defendant KPMG violated GAAS Standard of Reporting No. 4, which requires, when

4    an opinion on the financial statements as a whole cannot be expressed, that the reasons be stated.

5    KPMG should have either stated that no opinion could be issued by them on Brocade's financial

6    statements or issued an adverse opinion stating that the financial statements were not fairly

7    presented.

8        478.   Defendant KPMG violated Standard of Field Work No. 1 and the standards set forth

9    in AU sections 310, 320 and 327 by, among other things, failing to adequately plan their audit and

10   properly supervise the work of their assistants so as to establish and carry out procedures reasonably

11   designed to search for and detect the existence of errors and irregularities that would have a material

12   effect upon the financial statements.

13       479.   Defendant KPMG violated SAS No. 16 in that they failed to perform their

14   examination with an attitude of professional skepticism and, in connection with the audits of

15   Brocade's financials, ignored numerous "red flags" that would reasonably have led to the discovery

16   of the Individual Defendants' backdating practices and the resulting gross understatement of

17   compensation expenses and overstatement of Brocade's earnings.

18       480.   Defendant KPMG violated AU section 316.20, which requires that additional

19   procedures should be performed when evaluation at the financial-statement level indicates

20   significant risk.

21       481.   As a result of the foregoing, defendant KPMG's certification of Brocade's financial

22   statements issued between 2002 and the present falsely represented that the statements were audited

23   pursuant to GAAS and that Brocade's financial statements were presented in conformity with GAAP.

24   KPMG knew that such certification was false and misleading because, as detailed herein: (a) KPMG

25   knew or were negligent in not knowing that the Company's financial statements violated GAAP; and

26   (b) KPMG knew they had not complied with GAAS.

27       482.   As a result of the services rendered to Brocade, KPMG's personnel were present at

28   their corporate headquarters and major operating offices and examined or participated in reviews,

- 175 -

1    investigations and audit procedures regarding the financial condition, business operations and

2    financial, accounting and management-control systems of Brocade. In the course of performing such

3    services, KPMG had virtually unlimited access to substantial evidential matter revealing the adverse

4    facts about the Company's compliance with educational finance reporting requirements and laws and

5    the finances of Brocade, but improperly failed to require adjustment for or disclosure of such facts.

6        483.    Defendant KPMG: (a) knew or were negligent in not knowing of the material,

7    adverse, non-public information about the financial statements of Brocade, which was not disclosed;

8    and (b) participated in drafting, reviewing and/or approving the misleading statements, releases,

9    reports and other public representations of and about Brocade pleaded herein, involving the SEC

10   reports on Form 10-K.

11       484.    In performing auditing and accounting services on behalf of Brocade and engaging in

12   the wrongful acts alleged herein, defendant KPMG knew or should have known that their clients

13   would, and did, transmit false and misleading financial information to the investing public.

14   However, KPMG failed to discharge their duties in adherence to GAAP and GAAS to detect errors

15   and irregularities.

16       485.    In performing the auditing and accounting services to Brocade in the manner alleged

17   herein, defendant KPMG owed a duty to Brocade and their shareholders to use such skill, care and

18   diligence as other members of its profession commonly exercised. KPMG, however, breached such

19   duty by committing the wrongful acts and conduct alleged herein.

20       486.    Brocade reasonably relied to its detriment on defendant KPMG and was damaged

21   thereby.

22       487.    As a direct, foreseeable and proximate result of defendant KPMG's breach of duties

23   owed to Brocade, the Company suffered damages.

24                              **COUNT XX**

25              **Against Defendant KPMG for Breach of Contract**

26       488.    Plaintiff incorporates by reference and realleges each and every allegation set forth

27   above, as though fully set forth herein.

28

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1    489.    At times relevant hereto, defendant KPMG and Brocade were parties to written

2  contracts pursuant to which KPMG agreed to provide audit services to Brocade in accordance with

3  GAAS.

4    490.    Defendant KPMG breached its contracts with Brocade by, among other things, failing

5  to render services in accordance with GAAS and preparing and/or approving financial statements

6  that were not prepared in accordance with GAAP.

7    491.    As a direct and proximate result of defendant KPMG's breaches of contract, Brocade

8  has sustained damages, as alleged herein.

9                                **COUNT XXI**

10                  **Professional Negligence and Legal Malpractice**
                              **Against Defendant WSGR**
11

12    492.    Plaintiff incorporates by reference and realleges each and every allegation contained

      above as though fully set forth herein.
13

      493.    Defendant WSGR committed professional negligence and legal malpractice with
14

15  respect to the legal opinions that the firm gave to the Board with respect to legality of the steps taken

16  by defendants alleged herein to carry out the stock option backdating, including, *inter alia*, the

      advice given by WSGR to Brocade with respect to the part-time program.  WSGR also committed
17

18  professional negligence and legal malpractice in connection with its advice that Brocade should enter

19  into the Proposed Settlement to resolve the derivative claims alleged in the State Derivative Action

20  and Federal Derivative Action arising out of the backdating activity alleged herein on terms and

      conditions that were did not represent a fair, reasonable or adequate resolution of such claims.
21

22    494.    Further, defendant WSGR violated Rule 3-110 of the California Rules of Professional

23  Conduct in that it intentionally, recklessly and repeatedly failed to perform legal services with

24  competence.  WSGR also violated Rule 3-210 because it advised Brocade to violate applicable law

25  with respect to the disclosure of backdated stock options and with respect to the part-time program.

26    495.    Defendant WSGR also violated Rule 3-310(c) because it failed to properly obtain a

27  waiver of a conflict of interest arising from the firm's representation of the Company and defendant

28  Sonsini and the other Individual Defendants' interests.

1    496.    The negligent acts or omissions by defendant WSGR alleged herein constitute failures

2    by WSGR to use such skill, prudence and diligence as lawyers of ordinary skill and capacity

3    commonly possess and exercise in the performance of similar tasks of which they undertake.

4    497.    Such negligent acts or omissions by defendant WSGR caused and will continue to

5    proximately cause damage to Brocade, which reasonably relied to its detriment upon the negligent

6    legal advice proferred to the Company by defendant WSGR.

7                                    **COUNT XXII**

8                    **Against Defendant WSGR for Breach of Contract**

9    498.    Plaintiff incorporates by reference and realleges each and every allegation set forth

10    above, as though fully set forth herein.

11    499.    At times relevant hereto, defendant WSGR and Brocade were parties to written

12    contracts pursuant to which WSGR agreed to provide legal services to Brocade in accordance with

13    the California Rules of Professional Conduct.

14    500.    Defendant WSGR breached its contracts with Brocade by, among other things, failing

15    to use such skill, prudence and diligence as lawyers of ordinary skill and capacity commonly possess

16    and exercise in the performance of similar tasks of which they undertake, and its failure to render

17    services in accordance with the California Rules of Professional Conduct.

18    501.    As a direct and proximate result of defendant WSGR's breaches of contract, Brocade

19    has sustained damages, as alleged herein.

20                                **PRAYER FOR RELIEF**

21    WHEREFORE, plaintiff demands judgment as follows:

22    A.    Against all of the Individual Defendants and in favor of Brocade for the amount of

23    damages sustained by the Company as a result of the Individual Defendants' violations of and

24    conspiracy to violate RICO breaches of fiduciary duties and conspiracy to breach such duties, unjust

25    enrichment, violations of state law prohibitions on insider selling codified in California Corporations

26    Code sections 25402 and 25403 and corporate waste;

27    B.    Determining and awarding Brocade treble damages pursuant to 18 U.S.C. §1964 for

28    the RICO Defendants' violations of RICO, 18 U.S.C. §1962(c);

1        C.     Declaring that defendants Reyes and Canova are liable under §302 of the SOX, and

2 requiring them to reimburse Brocade for all bonuses or other incentive based or equity based

3 compensation received by them during the period in which Brocade has restated its financial results;

4        D.     Against all of the Individual Defendants and in favor of Brocade for the amount of

5 damages sustained by the Company as a result of the Individual Defendants' violations of and

6 conspiracy to violate breaches of fiduciary duties and conspiracy to breach such duties, unjust

7 enrichment, violations of state law prohibitions on insider selling codified in California Corporations

8 Code sections 25402 and 25403 and corporate waste;

9        E.     Determining and awarding Brocade treble damages pursuant to California

10 Corporations Code section 25502.5(a) for the Insider Selling Defendants' violations of California

11 Corporations Code section 25402;

12        F.     Determining and awarding Brocade treble damages against the Director Defendants

13 pursuant to California Corporations Code section 25403 for the Insider Selling Defendants'

14 violations of California Corporations Code section 25402;

15        G.     Determining and awarding Brocade punitive damages against defendants Reyes,

16 Jensen, Byrd and Canova pursuant to California Civil Code sections 1709 and 1710;

17        H.     Directing Brocade to take all necessary actions to reform and improve its corporate

18 governance and internal procedures to comply with applicable laws and to protect the Company and

19 its shareholders from a repeat of the damaging events alleged herein, including, but not limited to,

20 putting forward for shareholder vote resolutions for amendments to the Company's Bylaws or

21 Articles of Incorporation and taking such other action as may be necessary to place before

22 shareholders for a vote the following enhancements to and improvements for Brocade's corporate

23 governance policies:

24        1.     a proposal to strengthen the Board's supervision of operations and develop and

25 implement procedures for greater shareholder input into the policies and guidelines of the Board;

26        2.     a proposal to ensure that all stock options granted to executive and non-

27 executive employees are properly awarded, valued and administered;

28        3.     control and limit insider stock selling;

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1        4.        a provision to permit the shareholders of Brocade to nominate at least three

2   candidates for election to the Board;

3            5.        appropriately test and then strengthen internal audit and control functions; and

4            6.        a proposal to remove all defendants in this case from Brocade's board of

5   directors.

6   I.        Extraordinary equitable and/or injunctive relief as permitted by law, equity and state

7   statutory provisions sued hereunder, including attaching, impounding, enjoining the indemnification

8   of any defendant who failed to act in good faith and in a manner that he or she reasonably believed

9   to be in the best interest of the Company and who did not have reasonable cause to believe that his or

10  her conduct was unlawful, imposing a constructive trust on or otherwise restricting the proceeds of

11  defendants' trading activities or their other assets so as to assure that plaintiffs on behalf of Brocade

12  have an effective remedy;

13  J.        Directing an accounting of all stock option grants awarded from November 1999 to

14  the present, including, without limitation, the grant dates, exercise dates, value, amount and

15  recipients of all such grants, as well as the disposition of any proceeds received by the recipients of

16  any options that were backdated via an exercise, sale, gift or any other transfer of any such option;

17  K.        Directing that all the unexercised backdated options granted to defendants since 1999

18  be cancelled, ordering the financial gains obtained via the exercise of such stock options returned to

19  the Company, and ordering to have Brocade revise the Company's financial statements to reflect the

20  truth concerning these option grants;

21  L.        Declaring that any improperly-backdated stock options, and all proceeds derived from

22  exercise thereof, and any assets or other property acquired in connection therewith, are and have

23  been held in constructive trust for the Company's benefit from the true grant date of the manipulated

24  stock options and other equity or incentive-based compensation;

25  M.        Imposing a constructive trust on all proceeds derived from the exercise of any

26  improperly-backdated stock options and any property acquired in connection therewith;

27  N.        Awarding to Brocade restitution from defendants, and each of them, and ordering

28  disgorgement of all profits, benefits and other compensation obtained by defendants through the

AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  improper backdating of stock option grants;

2       O.    Imposing a constructive trust on any profits the Insider Selling Defendants obtained

3  by the sale of any Brocade shares while in possession and control of material adverse, non-public

4  information relative to the backdating of Brocade stock options as alleged herein;

5       P.    Declaring that defendants Reyes, Jensen, House, Klayko, Deranleau, Malavalli,

6  Canova, Byrd, Dempsey, Vaswani, Krause, Walker, Neiman, Moore, Paisley, O'Brien, Sonsini and

7  Leslie are not entitled to indemnification from Brocade and must therefore return all advanced legal

8  fees, expenses and other funds;

9       Q.    Awarding to Brocade restitution from defendant KPMG and ordering disgorgement

10  of all profits, benefits and other compensation obtained by KPMG for its failure to properly audit the

11  Company's financial statements in accordance with professional standards;

12       R.    Awarding to Brocade restitution from defendant WSGR and ordering disgorgement

13  of all profits, benefits and other compensation obtained by WSGR for its failure to properly perform

14  legal services in accordance with the California Rules of Professional Conduct;

15       S.    Awarding to plaintiff the costs and disbursements of the action, including reasonable

16  attorneys' fees, accountants' and experts' fees, costs and expenses; and

17       T.    Granting such other and further relief as the Court deems just and proper.

18                              **JURY DEMAND**

19       Plaintiff demands a trial by jury.

20  DATED: July 21, 2008              JOHNSON BOTTINI, LLP
                                      FRANK J. JOHNSON
21                                    FRANCIS A. BOTTINI, JR.
                                      DEREK J. WILSON
22
23                                    _Francis a Bott___
24                                    FRANCIS A. BOTTINI, JR.

25                                    655 W. Broadway, Suite 1400
                                      San Diego, CA 92101
26                                    Telephone: (619) 230-0063
                                      Facsimile:  (619) 233-5535
27
                                      Counsel for Plaintiff
28

                              - 181 -

**VERIFICATION**

I hereby verify that I am a shareholder of Brocade Communications Systems, Inc. (the "Company"), and am ready, willing, and able to pursue this action in the hope of improving the Company and recovering damages for the Company caused by defendants' conduct. I have reviewed the allegations made in this Amended Shareholder Derivative Complaint. The allegations pertaining to me and my holdings of stock in the Company are true based on my personal knowledge. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true. Having received a copy of this Amended Complaint, having reviewed it with my counsel, I hereby authorize its filing.

Date: _7—21—08_

_Mary E Barbour_

Mary E. Barbour, as Trustee of the
Mary E. Barbour Family Trust One