1  JOHNSON BOTTINI, LLP
   FRANK J. JOHNSON (174882)
2  frankj@johnsonbottini.com
   FRANCIS A. BOTTINI, JR. (175783)
3  frankb@johnsonbottini.com
   DEREK J. WILSON (250309)
4  derekw@johnsonbottini.com
   655 W. Broadway, Suite 1400
5  San Diego, CA 92101
   Telephone: (619) 230-0063
6  Facsimile:  (619) 233-5535

7  Attorneys for Plaintiff

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

| | |
|---|---|
| 11  MARY E. BARBOUR AS TRUSTEE FOR THE MARY E. BARBOUR FAMILY TRUST 12  ONE, Derivatively On Behalf of BROCADE COMMUNICATIONS SYSTEMS, INC., 13 <br>                    Plaintiff, 14 <br>        vs. 15  GREGORY L. REYES, DAVID L. HOUSE, 16  MICHAEL KLAYKO, RICHARD DERANLEAU, KUMAR MALAVALLI 17  ANTONIO CANOVA, MICHAEL J. BYRD, STEPHANIE JENSEN, NEIL DEMPSEY, 18  SANJAY VASWANI, L. WILLIAM KRAUSE, ROBERT R. WALKER, GLENN 19  C. JONES, MICHAEL J. ROSE, SETH D. NEIMAN, NICHOLAS G. MOORE, 20  CHRISTOPHER B. PAISLEY, WILLIAM K. O'BRIEN, LARRY SONSINI, MARK 21  LESLIE, TYLER WALL, RENATO A. DIPENTIMA, JOHN W. GERDELMAN, 22  ROBERT D. BOSSI, KPMG, LLP, WILSON SONSINI GOODRICH & ROSATI, P.C. AND 23  DOES 1-25, inclusive, 24 <br>                    Defendants, 25 <br>        and 26  BROCADE COMMUNICATIONS SYSTEMS, INC., a Delaware corporation, 27 <br>                    Nominal Defendant. 28 | ) Case No.  C 08-02029 CRB <br>) <br>) (Derivative Action) <br>) <br>) PLAINTIFF'S NOTICE OF MOTION AND <br>) MOTION FOR PARTIAL SUMMARY <br>) JUDGMENT AGAINST DEFENDANT <br>) GREGORY L. REYES ON COUNT XIV <br>) (DECLARATORY RELIEF) OF PLAINTIFF'S <br>) AMENDED SHAREHOLDER DERIVATIVE <br>) COMPLAINT; MEMORANDUM OF POINTS <br>) AND AUTHORITIES IN SUPPORT <br>) THEREOF <br>) <br>) <br>) Hearing Date: August 29, 2008 <br>) Hearing Time: 10:00 a.m. <br>) <br>) Department:  Courtroom 8, 19th Floor <br>) Judge:  Honorable Charles R. Breyer <br>) Date Action Filed:  April 18, 2008 <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

NOTICE OF MOTION AND MOTION ................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................2

I.     SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES TO BE DECIDED ..................................................................................................................2

II.    STATEMENT OF FACTS ....................................................................................3

    A.    Reyes' Backdating Scheme ..........................................................................3

    B.    Actions Filed Against Reyes and Brocade..................................................5

    C.    Advancement of Defense Costs ...................................................................7

    D.    Reyes' Criminal Conviction ........................................................................8

    E.    Collateral Estoppel in the Securities Fraud Class Action and SEC Action .............9

III.   EVIDENCE OF FACTS MATERIAL TO THIS MOTION ...........................................11

IV.   PARTIAL SUMMARY JUDGMENT AND DECLARATORY RELIEF IS NECESSARY AND PROPER ........................................................................................12

    A.    Summary Judgment Standard ....................................................................12

    B.    Federal Law Prohibits Advancement and Indemnification in Connection with Any Claim that Reyes Violated the Federal Securities Laws........................13

        1.    Federal Public Policy Prohibits Indemnification for Violations of the Federal Securities Laws ........................................................13

        2.    Federal Public Policy Preempts Any Entitlement to Indemnification Under State Law .............................................................14

    C.    Under the Doctrine of Collateral Estoppel, Reyes' Conviction Should Be Applied to Terminate His Entitlement to Advancement and Indemnification in Any Action Based on Claims that He Violated the Federal Securities Laws ........................................................................16

        1.    The Issues Determined in Reyes' Criminal Conviction Terminate His Indemnification and Advancement Rights ..........................................17

        2.    Reyes Had a Full and Fair Opportunity to Litigate and Actually Litigated the Issues Material to this Motion in the Criminal Action .........19

3.  The Criminal Judgment Is Final and Should Be Accorded Full
Preclusive Effect in this Action ...............................................................21

D.  The Court Should Declare that Reyes Is Not Entitled to Indemnification or
Advancement in Connection with Any Claim that He Violated the Federal
Securities Laws .........................................................................................................23

V.  CONCLUSION.................................................................................................................25

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*Allstate Ins. Co. v. Davis*,
    430 F. Supp. 2d 1112 (D. Haw. 2006) ............................................................ 23

5

6

*Alvarado Partners L.P. v. Mehta*,
    723 F. Supp. 540 (D. Colo. 1989) ........................................................... 14, 15

7

*Am. States Ins. Co. v. Kearns*,
    15 F.3d 142 (9th Cir. 1994) ......................................................................... 23

8

9

*Anderson v. Janovich*,
    543 F. Supp. 1124 (W.D. Wash. 1982) ................................................ 19, 20, 22

10

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..................................................................................... 13

11

12

*Appling v. State Farm Mut. Auto Ins. Co.*,
    340 F.2d 769 (9th Cir. 2003) ....................................................................... 17

13

14

*Baker, Watts & Co. v. Miles & Stockbridge*,
    876 F.2d 1101 (4th Cir. 1989) ............................................................. *passim*

15

16

*Bilbrey by Bilbrey v. Brown*,
    738 F.2d 1462 (9th Cir. 1984) ..................................................................... 23

17

18

*Brillhart v. Excess Ins. Co. of Am.*,
    316 U.S. 491 (1942) ..................................................................................... 23

19

*Celotex Corp. v. Vatrett*,
    477 U.S. 317 (1986) ............................................................................... 12, 13

20

21

*Collins v. D.R. Horton, Inc.*,
    505 F.3d 874 (9th Cir. 2007) ....................................................................... 17

22

23

*Considine v. United States*,
    683 F.2d 1285 (9th Cir. 1982) ..................................................................... 16

24

*Globus v. Law Research Serv., Inc.*,
    418 F.2d 1276 (2nd Cir. 1969) ............................................... 3, 13, 14, 15

25

26

*Globus v. Law Research Service, Inc.*,
    287 F. Supp. 188 (S.D.N.Y. 1968) ............................................................... 14

27

*Gov't Employees Ins. Co. v. Dizol*,
    133 F.3d 1220 (9th Cir. 1998) ..................................................................... 23

28

- iii -

*Hawkins v. Risley*,
    984 F.2d 321 (9th Cir. 1993) ................................................................... 2, 21

*Heizer Corp. v. Ross*,
    601 F.2d 330 (7th Cir. 1979) ............................................. 3, 14, 15, 16

*Home Diagnostics Inc. v. Lifesan Inc.*,
    120 F. Supp. 2d 864 (N.D. Cal. 2000) ................................................. 12

*Huron Holding Corp. v. Lincoln Mine Operating Co.*,
    312 U.S. 183 (1941) ............................................................................... 21

*Hurtt v. Stirone*,
    206 A.2d 624 (Pa. 1965) ....................................................................... 19

*In re Olympia Brewing Co. Sec. Litig.*,
    674 F. Supp. 597 (N.D. Ill. 1987) ................................................. 14, 16

*Kowalski v. Gagne*,
    914 F.2d 299 (1st Cir. 1990) ................................................................. 22

*Laventhol Krekstein, Horwath & Horwath v. Horwith*,
    637 F.2d 672 (9th Cir. 1980) ............................................. 3, 14, 15, 16

*Leader v. California*,
    182 Cal. App. 3d 1079 (1986) ............................................................. 20

*Lies v. Farrell Lines Inc.*,
    641 F.2d 765 (9th Cir. 1981) ............................................................... 12

*Lucas v. Hackett Assoc., Inc.*,
    18 F. Supp. 2d 531 (E.D. Pa. 1998) ................................................... 15

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,
    81 F.3d 881 (9th Cir. 1996) ................................................................. 13

*Martinez v. Universal Underwriters Ins. Co.*,
    819 F. Supp. 921 (W.D. Wash. 1992) ........................................... 18, 20

*Maryville Academy v. Loeb Rhoades & Co.*,
    530 F. Supp. 1061 (N.D. Ill. 1981) ..................................................... 15

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) ............................................................................... 19

*Petrella v. Siegel*,
    843 F.2d 87 (2nd Cir. 1988) ................................................................. 21

*Radobenko v. Automated Equip. Co.*,
    520 F. 2d 540 (9th Cir. 1975) ............................................................. 12

*Raychem Corp. v. Fed. Ins. Co.*,
   853 F. Supp. 1170 (N.D. Cal. 1994) ........................................... 15

*Rice v. Dep't of Treasury*,
   998 F.2d 997 (Fed. Cir. 1993)................................................. 2, 22

*Richey v. U.S. Internal Revenue Serv.*,
   9 F.3d 1407 (9th Cir. 1993) .............................................. 3, 16, 18

*Robi v. Five Platters, Inc.*,
   838 F.2d 318 (9th Cir. 1988) ................................................... 21

*Sec. & Exch. Comm'n v. Bilzerian*,
   29 F.3d 689 (D.C. Cir. 1994) ................................................... 22

*Sec. & Exch. Comm'n v. Gruenberg*,
   989 F.2d. 977 (8th Cir. 1993) .................................................. 22

*Silkwood v. Kerr-McGee Corp.*,
   464 U.S. 238 (1984)............................................................... 15

*Smith v. Sec. & Exch. Comm'n*,
   129 F.3d 356 (6th Cir. 1997) ............................................... 3, 21

*Stewart v. Am. Int'l Oil & Gas Co.*,
   845 F.2d 196 (9th Cir. 1988) ................................................... 14

*Syverson v. IBM*,
   472 F.3d 1072 (9th Cir. 2007)................................................. 17

*Transaero, Inc. v. Fuerza Aerea Boliviana*,
   99 F.3d 538 (2nd Cir. 1996)................................................... 21

*Tripati v. Henman*,
   857 F.2d 1366 (9th Cir. 1988) .............................................. 2, 21

*United States ex rel. Anderson v. N. Telecom, Inc.*,
   52 F.3d 810 (9th Cir. 1995).................................................... 13

*United States v. Charnay*,
   537 F.2d 341 (9th Cir. 1976) .................................................. 19

*United States v. Int'l Bhd. of Teamsters*,
   905 F.2d 610 (2nd Cir. 1990).................................................. 22

*Winkler v. Trico Fin. Corp.*,
   693 F. Supp. 896 (W.D. Wash. 1988)................................. 3, 16, 18

**STATUTES**

Del. Code Ann. Tit. 8,
§145(e) ................................................................................................................. 22

Fed. R. Civ. P.
56(a) ..................................................................................................................... 12
56(c) ..................................................................................................................... 12
56(f) ...................................................................................................................... 13

**OTHER AUTHORITIES**

David A. Drexler et al., *Delaware Corporation Law and Practice*,
§16.02[3][a] (2006) ............................................................................................. 14

Ralph C. Ferrara *et al.*, *Shareholder Derivative Litigation: Besieging the Board*,
§12.10 (2007) ...................................................................................................... 13

Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*
§4433 (1981) ....................................................................................................... 21

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 29, 2008 at 10:00 a.m., before the Honorable Charles R. Breyer, District Court Judge, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiff Mary E. Barbour, as Trustee for the Mary E. Barbour Family Trust ("Plaintiff") will, and hereby does, move, for an order granting partial summary judgment against defendant Gregory Reyes ("Reyes") on Count XIV of the Amended Shareholder Derivative Complaint ("Amended Complaint"), filed on July 21, 2008, which seeks a declaration that Reyes is not entitled to indemnification or advancement, and must return to Brocade Communications Systems, Inc. ("Brocade" or "the Company") monies advanced towards the costs of his defense against claims that he violated the federal securities laws in connection with his scheme to backdate stock option grants and misrepresent Brocade's stock option grant process and accounting.

Judgment is proper for the following reasons: (1) Reyes' criminal conviction in *United States v. Reyes*, No. CR 06-00556 CRB, constitutes a final judgment that he knowingly and willfully violated the federal securities laws in connection with stock option backdating at Brocade; (2) federal public policy prohibits indemnification against violations of the federal securities laws and preempts any entitlement to indemnification or advancement under state law; and (3) pursuant to collateral estoppel principles, Reyes' conviction should be applied to terminate his entitlement to indemnification and advancement in any action based on claims that he violated the federal securities laws in connection with stock option backdating. Reyes should be required to return immediately to Brocade any monies advanced towards the defense of any such claim.

This motion is based on the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, the Declaration of Francis A. Bottini, Jr., and the documents attached thereto, the pleadings and other documents on file in this action, and such further evidence, documents and arguments as may hereafter be submitted to the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES TO BE DECIDED**

Gregory Reyes, the former Chief Executive Officer ("CEO") and Chairman of Brocade, was the principal architect of a six-year scheme to grant backdated "in-the-money" stock options to himself and other officers and employees, in violation of Brocade's shareholder-approved stock option plans. Reyes knowingly and willfully falsified Brocade's books and records, published false financial statements and reports with the Securities and Exchange Commission ("SEC"), and lied to Brocade's outside auditors. Reyes' criminal conduct has cost Brocade and its shareholders hundreds of million of dollars. Among the costs are more than $46,000,000 (and counting) in legal fees and costs advanced by Brocade to pay for Reyes' defense in government and shareholder lawsuits.

The facts surrounding Reyes' criminal misconduct are no longer subject to argument. Reyes' violations of the federal securities laws have been conclusively established by a unanimous jury of Reyes' peers and recorded in a final judgment entered by this Court. The pendency of Reyes' appeal does not change this fact. *Hawkins v. Risley*, 984 F.2d 321, 324-25 (9th Cir. 1993); *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988); *Rice v. Dep't of Treasury*, 998 F.2d 997, 999 (Fed. Cir. 1993).

The question presented by this motion is simple: Must Brocade continue to pay to defend Reyes and indemnify him against claims that his stock option backdating scheme and misrepresentations violated the federal securities laws, despite the entry of a final criminal judgment that conclusively establishes his culpability for these crimes? The answer dictated by federal law is, no. Federal public policy *prohibits* advancement and indemnification against violations of the federal securities laws, and *preempts* any such entitlements under state law. Reyes may not be indemnified and must return all advanced defense expenses.

Only three indisputable facts are material to the determination of this question: (1) Reyes claims an entitlement to advances and indemnification; (2) Reyes has received substantial advances to cover his defense costs in actions alleging that he violated the federal securities laws; and (3) Reyes was convicted of violating the federal securities laws through his stock option backdating scheme and misrepresentations.

1    Federal public policy prohibits indemnification for violations of the federal securities laws

2    because indemnification would permit a wrongdoer "'to escape loss by shifting his entire

3    responsibility to another party.'"  *Laventhol Krekstein, Horwath & Horwath v. Horwith*, 637 F.2d

4    672, 676 (9th Cir. 1980) (quoting *Heizer Corp. v. Ross*, 601 F.2d 330, 334 (7th Cir. 1979)); *Globus*

5    *v. Law Research Serv., Inc.*, 418 F.2d 1276, 1288 (2nd Cir. 1969).  Because indemnification of an

6    individual adjudged to have violated the federal securities laws would directly conflict with the

7    policies underlying those federal laws, state law-based entitlements to advancement and

8    indemnification are preempted.  *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1108

9    (4th Cir. 1989) (following *Laventhol* and *Globus*) ("plaintiff's wrongdoing has been plainly

10    adjudicated, and a state action for indemnification would frustrate the basic enforcement of federal

11    securities law.  Plaintiff's claim for indemnification is therefore preempted and should be dismissed

12    with prejudice.").

13    Collateral estoppel principles, informed by this strong federal public policy, compel the

14    conclusion that Reyes' conviction should be applied to bar advancement and indemnification as to

15    any claim in any action that Reyes' stock option backdating scheme and misrepresentations violated

16    the federal securities laws.  *Richey v. U.S. Internal Revenue Serv.*, 9 F.3d 1407, 1410-14 (9th Cir.

17    1993); *Smith v. Sec. & Exch. Comm'n*, 129 F.3d 356, 362 (6th Cir. 1997) (*en banc*); *Winkler v. Trico*

18    *Fin. Corp.,* 693 F. Supp. 896, 903 (W.D. Wash. 1988).

19    Declaratory relief is necessary and appropriate.  Federal public policy prohibits

20    indemnification and advancement, state law notwithstanding.  The declaration Plaintiff seeks will

21    eliminate the need to commence wasteful collateral litigation, perhaps in a third forum, that would

22    involve questions of Reyes' entitlement to indemnification under state law.  More importantly, only

23    declaratory relief will prevent further violence to the federal public policy against indemnifying an

24    individual who has knowingly and willfully violated the federal securities laws.

25    **II.    STATEMENT OF FACTS**

26    **A.    Reyes' Backdating Scheme**

27    On January 24, 2005, Brocade publicly announced the completion of an internal review of

28    the Company's stock option grants by the Audit Committee of the Board of Directors (the "Board").

- 3 -

1   The Audit Committee concluded that there was an "'insufficient basis to rely on the Company's

2   process and related documentation to support recorded measurement dates used to account for

3   certain stock options granted prior to August 2003.'"[1]  Brocade had systematically backdated stock

4   options in violation of shareholder approved stock option plans, improperly accounted for grants of

5   in-the-money options, and misstated Brocade's financial results.[2]

6         The principal architect of this scheme to backdate stock options was Gregory Reyes.

7   Beginning in January 1999, the Board gave Reyes sweeping powers over Brocade's stock option

8   granting process, authorizing him to act as a "compensation committee of one" with respect to non-

9   executive employee stock options granted after the Company's initial public offering.  Reyes

10  exceeded the limits of that authority and granted backdated stock options to executives and non-

11  executive employees alike.[3]  Reyes also falsified internal corporate documents and records,

12  including compensation committee minutes, in an attempt to avoid detection.[4]

13        After the Audit Committee's investigation, Reyes was permitted to resign as CEO.[5]  The

14  Board allowed Reyes to remain as a director until his resignation on April 21, 2005.[6]

15        On January 24, 2005, Brocade filed a restatement of its 2002 and 2003 financial statements to

16  correct understated equity-based compensation expenses of $303 million caused by stock option

17

18  [1]  Declaration of Francis A. Bottini, Jr. in Support of Plaintiff's Motion for Partial Summary Judgment Against Defendant Gregory L. Reyes on Count XIV (Declaratory Relief) of Plaintiff's

19  Amended Shareholder Derivative Complaint ("Decl."), Ex. A (Brocade's Current Report (Form 8-K) filed January 24, 2005) ("Jan. 24, 2005 Form 8-K"); Ex. B (Order Denying Defendant's Motion for a

20  Judgment of Acquittal (Docket No. 582) at 2:4 ("That a backdating scheme existed is beyond dispute.")).  Exhibits lettered A through Z are attached to the Decl., filed herewith.

21  [2]  *Id.*

22  [3]  Decl., Ex. C, ¶11 (Indictment filed August 10, 2006, in *United States v. Reyes et al.*, Case No.

23  3:06-cr-00556-CRB (N.D. Cal.) (Docket No. 23) ("Indct.")); Ex. D (Transcript of Proceedings, *United States v. Reyes*, No. CR 06-00556 (N.D. Cal.)) ("Tr.") at 15, 3810; Ex. E (Order Denying

24  Motion for New Trial and to Dismiss the Indictment) (Docket No. 583) at 2:20-21, 3:5.

25  [4]  Decl., Ex. C (Indct.), ¶17; Ex. D (Tr.) at 539, 898, 1141; Ex. F (Verdict Form, *United States v. Reyes*, No. CR 06-00556 (N.D. Cal. August 7, 2007) (Docket No. 562) ("Verdict").

26  [5]  Decl., Ex. A (Jan. 24, 2005 Form 8-K).

27  [6]  Decl., Ex. G (Brocade's Amendment to Annual Report (Form 10-K/A) (Nov. 14, 2005)) at 74.

28

1  backdating.[7]  This restatement was rushed and deficient, and Reyes had lied to Brocade's outside

2  auditors during their investigation.[8]  Brocade was forced to file a second restatement on November

3  14, 2005, adding another $71 million in equity-based compensation expenses to its 1999 through

4  2004 financial statements.[9]

5  **B.    Actions Filed Against Reyes and Brocade**

6  Shortly after the Company announced the second restatement, a series of now-consolidated

7  federal securities fraud class actions were commenced against Brocade, Reyes and several current

8  and former officers and directors (the "Securities Fraud Class Action").[10]   The Amended

9  Consolidated Complaint asserted two causes of action against Reyes.  Count I charged Brocade and

10  certain director defendants with securities fraud in violation of Section 10(b) of the Securities

11  Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder.  Count II charged

12  certain officer defendants with securities fraud in violation of Section 20(a) of the Exchange Act.[11]

13  Both causes of action were predicated on the same operative factual allegations: Reyes secretly

14  granted backdated, in-the-money stock options in violation of shareholder approved stock option

15  plans, and caused Brocade to publish false and misleading financial statements that misrepresented

16  Brocade's stock options grants and accounting.[12]

17  On May 16, 2005, Brocade announced that the SEC and the United States Department of

18  Justice ("DOJ") had commenced an investigation into Brocade's accounting and disclosure of stock

19  option grants.[13]

20

21  [7]  Decl., Ex. A.

22  [8]  Decl., Ex. D (Tr.) at 2156-57; Ex. F, ¶¶7-9.

23  [9]  Decl., Ex. G at 3.

24  [10]  *See In re Brocade Sec. Litig*., No. 3:05-cv-02042-CRB (N.D. Cal. May 19, 2005).

25  [11]  *See* Decl., Ex. H. (the Securities Fraud Class Action Amended Consolidated Complaint) (Docket No. 248), ¶¶388-99 (Count I); ¶¶400−08 (Count II).

26  [12]  *Id*., ¶6.

27  [13]  Decl., Ex. I. (Brocade's Current Report (Form 8-K) (May 16, 2005)).

28

P'S NTC. OF MOT. & MOT. FOR PARTIAL
SUMMARY JUDGMENT & MEMO. OF POINTS & AUTHORITIES          CASE NO. C 08-02029 CRB

1    Also in May 2005, three shareholder derivative actions alleging breaches of fiduciary duty in

2    connection with Reyes' stock option backdating scheme were filed in California state court.  The

3    actions are now consolidated in the Superior Court of California, County of Santa Clara.[14]  One

4    week later, a Brocade shareholder brought the first of four derivative actions filed in the United

5    States District Court for the Northern District of California.  These actions were later consolidated

6    before this Court.[15]  The present action was filed on April 18, 2008, and an Amended Complaint was

7    filed on July 21, 2008.[16]

8    On July 20, 2006, the United States Attorney for the Northern District of California filed a

9    criminal complaint (the "Criminal Action") and the SEC filed a civil complaint (the "SEC Action")

10   against Reyes and others alleging essentially the same violations of federal securities laws.[17]  The

11   complaints alleged that Reyes violated the Exchange Act and the rules promulgated thereunder

12   including, Rules 10b-5, 13b2-1, 13b2-2 and 13a-14, by: (1) backdating meeting minutes and other

13   documents so that it would appear that Brocade's compensation committee met and granted stock

14   options on dates when the Company's stock price was low; (2) backdating employment offer letters

15   and other personnel records to facilitate the award of in-the-money stock options; (3) making and

16   causing to be made fraudulent entries into Brocade's financial books and records; (4) making and

17   causing to be made materially false and misleading statements to outside auditors; and (5) filing and

18   causing to be filed materially false and misleading financial statements with the SEC.[18]

19   On August 10, 2006, a grand jury indicted Reyes, charging him with:

---

[14]  *See In re Brocade Comm'ns Sys., Inc. Derivative Litig.*, No. 1-05-cv-041683 (Cal. Super. Ct. -
Santa Clara May 23, 2005).

[15]  *See In re Brocade Comm'ns Sys., Inc. Derivative Litig.*, No. 3:05-cv-02233-CRB (N.D. Cal. June
1, 2005).

[16]  Decl., Ex. J (Amended Verified Shareholder Derivative Complaint, *Barbour v. Reyes et al.*,
No. C 08-02029 CRB) (Docket No. 54-56).

[17]  *See* Decl., Ex. K (criminal complaint in *United States v. Reyes et al.*, No. 3:06-cr-70450 (N.D.
Cal. July 20, 2006) (Docket No. 1) ("Criminal Complaint")); Ex. L (complaint in *Securities &
Exchange Commission v. Reyes et al.*, No. 3:06-cv-04435 (N.D. Cal. July 20, 2006) (Docket No. 1)
("SEC Complaint")).

[18]  Decl., Ex. K (Criminal Complaint), ¶¶6, 22-40; Ex. L (SEC Complaint), ¶¶1-3, 20-31, 36.

P'S NTC. OF MOT. & MOT. FOR PARTIAL
SUMMARY JUDGMENT & MEMO. OF POINTS & AUTHORITIES          CASE NO. C 08-02029 CRB

- one count of conspiracy to commit securities and mail fraud in violation of 18 U.S.C. §371;

- one count of aiding, abetting and willfully causing fraud in connection with Brocade stock in violation of 15 U.S.C. §§78j(b) and 78ff, 17 C.F.R. §240.10b-5, 18 U.S.C. §2;

- two counts of mail fraud in violation of 18 U.S.C. §§1341, 1346 and 2;

- three counts of aiding, abetting and willfully causing to be filed with the SEC false filings in violation of 15 U.S.C. §§78j(b) and 78ff, 17 C.F.R. §240.10-b-5, 18 U.S.C. §2;

- one count of aiding, abetting and willfully causing the falsifying of books, records and accounts in violation of 15 U.S.C. §§78m(b)(2)(A), 78m(b)(5) and 78ff, 17 C.F.R. §240.13b2-1 and 18 U.S.C. §2; and

- four counts of aiding, abetting and willfully causing to be made false statements to an accountant in violation of 15 U.S.C. 78ff, 17 C.F.R. §240.13b2-2, 18 U.S.C. §2.[19]

The factual predicate for these charges was that Reyes caused Brocade to publish false and misleading statements regarding Brocade's stock option grants and accounting.[20]

## C. Advancement of Defense Costs

As authorized under Delaware General Corporate Law Section 145, Brocade's Articles of Incorporation and Bylaws provide its officers and directors with rights to advancement of defense costs, including attorneys' fees, subject to an obligation to repay any advances in the event that it is determined that they are not entitled to indemnification.[21]  In addition, defendant Michael C. Byrd executed a purported indemnification agreement on behalf of Brocade for the benefit of Reyes on August 15, 2002.[22]

---

[19] *See* Decl., Ex. C (Indct.).

[20] *Id.*, ¶¶16-28.

[21] Decl., Ex. M (Brocade's Amended and Restated Bylaws attached as Exhibit 3.2 to the Quarterly Report (Form 10-Q) (Sept. 13, 2004)); Ex. N (Brocade's Restated and Amended Certificate of Incorporation attached as Exhibit 3.1 to the Annual Report (Form 10-K) (Jan. 24, 2002)).

[22] Decl., Ex. O (John C. Dwyer's Letter dated January 9, 2008 to Timothy Crudo regarding indemnification, attached as Exhibit 1 to Declaration of AUSA Timothy P. Crudo in Support of United States' Sentencing Memorandum in the matter of *United States v. Reyes*, No. CR 06-00556

Upon learning of the investigation by the SEC and DOJ, Reyes executed an undertaking promising to repay to Brocade all advances upon a determination that he is not entitled to indemnification.[23] Since that time, Brocade has been advancing Reyes' defense expenses in all the actions filed following Brocade's restatements.[24] As of January 9, 2008, those costs exceeded $46 million.[25]

## D. Reyes' Criminal Conviction

Reyes' criminal trial lasted more than five weeks.  Over 400 exhibits were entered into evidence, and twenty-three witnesses testified.[26] At the conclusion of the trial, this Court instructed the jury on ten counts against Reyes.[27]  As to the first two counts, which charged Reyes with conspiracy to commit securities fraud and securities fraud, the Court instructed the jury that to find Reyes guilty, they were required to find beyond a reasonable doubt that Reyes acted "with an intent to cheat or deceive," and that he "acted willfully."[28]

As to the fifth, six and seventh counts of the indictment, which charged that Reyes made false SEC filings, the Court instructed the jury that the "government must prove beyond a reasonable

---

CRB (N.D. Cal. July 20, 2006) (Docket No. 798)), Attachment B (Reyes' Indemnification Agreement) at 28-37.  Reyes executed an identical purported indemnification agreement for the benefit of Mr. Byrd on the same date.  Plaintiff contends that these agreements were executed in bad faith and constitute prohibited self-dealing, and are therefore void and unenforceable.  If granted, the relief sought by this motion would moot issues as to whether these agreements provide for indemnification in the Criminal Action, the Securities Fraud Class Action and the SEC Action.

[23] *Id*., Attachment B (Reyes' Undertaking) ("Gregory Reyes agrees to repay to Brocade any and all legal fees and expenses advanced by Brocade concerning the Investigations in the event that it is ultimately determined that Reyes is not entitled to be indemnified by Brocade under the General Corporation Law of Delaware or Brocade's Certificate of Incorporation or Brocade's Bylaws of the Reyes Indemnification Agreement.") at 39.

[24] *See id*., Attachment A (Fee Advancements Schedule) and Attachment B (Reyes' Undertaking) at 39.

[25] *Id*., Attachment A (Fee Advancements Schedule); Decl., Ex. P (Reyes' Response to the United States' Sentencing Memorandum) (Docket No. 805) at 21.

[26] *See* Decl., Ex. D (Tr.).

[27] *See* Decl., Ex. Q (Jury Instructions, *United States v. Reyes et al.*, No. CR 06-00556 CRB (N.D. Cal. July 30, 2007) (Docket No. 543) ("Jury Instructions").

[28] *Id*. at 22, 24.

1  doubt that Mr. Reyes acted with knowledge that the relevant filings contained a false and misleading

2  statement, or with reckless disregard as to their false or misleading character."[29]

3      As to the eighth count, which charged Reyes with falsifying books, records and accounts, the

4  Court instructed the jury that the government was required to prove beyond a reasonable doubt that

5  "Mr. Reyes acted with knowledge that the relevant books, records and accounts contained a false or

6  misleading statement or with reckless disregard as to their false or misleading character," and that

7  "Mr. Reyes acted knowingly and willfully."[30]

8      Finally, as to counts nine, ten, eleven and twelve, the Court instructed the jury that the

9  government must prove beyond a reasonable doubt that "Mr. Reyes acted with knowledge that the

10  relevant statements to Brocade's accountants were false or misleading, or that he acted with reckless

11  disregard as to the false or misleading character of those statements," and that Reyes acted

12  "knowingly and willfully."[31]

13      On August 7, 2007, the jury returned a unanimous verdict finding Reyes guilty on all ten

14  counts.[32]  After the verdict, Reyes filed a Rule 29 motion for a judgment of acquittal and a Rule 33

15  motion for a new trial and to dismiss the indictment, which the Court denied.[33]  On January 17,

16  2008, Reyes was sentenced to twenty-one months in prison and ordered to pay a $15 million fine.[34]

17      **E.   Collateral Estoppel in the Securities Fraud Class Action and SEC Action**

18      On August 24, 2007, the lead plaintiff in the Securities Fraud Class Action moved for

19  summary judgment that Reyes' criminal conviction conclusively established four elements of their

20  federal securities fraud claims: (1) Reyes made material misrepresentations or omissions (2) with

21

22  [29]  *Id.* at 27-28.

23  [30]  *Id.* at 30.

24  [31]  *Id.* at 31-32.

25  [32]  *See* Decl., Ex. F (Verdict) (Docket No. 562).

26  [33]  Decl., Ex. B (Order Denying Defendant's Motion for a Judgment of Acquittal (Docket No. 582)); Ex. E (Order Denying Motion for New Trial and to Dismiss the Indictment (Docket No. 583)).

27  [34]  Decl., Ex. R (Judgment) (Docket No. 813).

28

1    scienter (3) in connection with the purchase or sale of Brocade securities and (4) plaintiff relied on

2    these misrepresentations or omissions.[35]  Reyes argued that the issue preclusion sought by plaintiff

3    was "grossly overbroad" because Reyes had been convicted of securities fraud in connection with

4    three sets of statements made in Form 10-Ks filed in 2001, 2002 and 2003.[36]  Plaintiff argued that

5    the jury's verdict conclusively established that the thirty-four other statements alleged in the

6    complaint were fraudulent because they were made in the course of the same fraudulent scheme and

7    restated the same false facts regarding Brocade's stock options grants and accounting.[37]  On October

8    12, 2007, the Court granted the motion in part and barred Reyes from relitigating the jury's

9    determination that Reyes, acting with scienter, knowingly and willfully made material

10   misrepresentations about Brocade's stock option grants and accounting in violation of the federal

11   securities laws.[38]

12         On May 13, 2008, the Court granted APERS' Partial Summary Judgment Motion against

13   Brocade, holding that the Company was liable under the doctrine of respondeat superior for Reyes'

14   securities fraud.[39]  On June 2, 2008, Brocade announced that it had entered into an agreement in

15   principle to settle the Securities Fraud Class Action, under which Brocade would pay $160 million to

16   the class.[40]

17

18   [35]  Decl., Ex. S (APERS' Notice of Motion and Motion for Partial Summary Judgment against
     Defendant Gregory Reyes on Elements (1-4) of Count I in APERS' Amended Consolidated Class
19   Action Complaint, and Memorandum of Points and Authorities *In re Brocade Sec. Litig*., No. 3:05-
     cv-02042-CRB (N.D. Cal. Aug. 24, 2007)) (Docket No. 332) ("APERS' Partial Summary Judgment
20   Motion").

21   [36]  Decl., Ex. T (Gregory Reyes' Opposition to APERS' Partial Summary Judgment Motion) (Docket
     No. 366) at 3.

22   [37]  Decl., Ex. U (APERS' Reply to Gregory Reyes' Opposition to APERS' Partial Summary
23   Judgment Motion (Docket No. 370)).

24   [38]  *See* Decl., Ex. V (Civil Minutes (Docket No. 392) and Transcript of Proceedings (Oct. 12, 2007)).
     The Court determined that the elements of reliance, causation, and damages, which are not necessary
25   to establish a violation of the securities laws, but which must be shown for the class to recover, had
     not been determined in the Criminal Action.  *See id*.

26   [39]  Decl., Ex. W (Order Granting Motion for Partial Summary Judgment) (Docket No. 458).

27   [40]  Decl., Ex. X (Brocade's Current Report (Form 8-K) (June 2, 2008) announcing the settlement).

28

1    On May 9, 2008, the SEC moved for summary judgment, requesting that the Court grant

2 preclusive effect to Reyes' criminal conviction and find him civilly liable for violations of the federal

3 securities laws.[41]  This motion is scheduled to be heard on August 22, 2008.[42]

4 **III.    EVIDENCE OF FACTS MATERIAL TO THIS MOTION**

5    Three facts are material to the determination that Reyes is not entitled to indemnification

6 against claims that he violated the federal securities laws:  (1) Reyes claims that he is entitled to

7 advances and indemnification; (2) Brocade has advanced funds towards Reyes' defense of the

8 Criminal Action and appeal, the Securities Fraud Class Action, and the SEC Action; and (3) a

9 judgment of conviction has been entered against Reyes, which conclusively established that he

10 violated the federal securities laws by fraudulently misrepresenting Brocade's stock option grants

11 and accounting, falsifying Brocade's books and records, and making false statements to Brocade's

12 auditors.  Plaintiff offers the following evidence of these facts, which is incorporated as if set forth

13 fully herein:

14        1.    Indictment, *United States v. Reyes*, No. CR 06-00556 CRB, in the United
             States District Court, Northern District of California, San Francisco Division,
15           filed on August 10, 2006 (Docket No. 23).[43]

16        2.    Jury Instructions, *United States v. Reyes*, No. CR 06-0055 CRB, in the
             United States District Court, Northern District of California, San Francisco
17           Division given on July 30, 2007 (Docket No. 543).[44]

18        3.    Verdict Form, *United States v. Reyes*, No. CR 06-00556 CRB, in the United
             States District Court, Northern District of California, San Francisco Division,
19           returned and filed on August 7, 2007 (Docket No. 562).[45]

20

21 ――――――――――――――――
[41]  Decl., Ex. Y (SEC's Notice of Motion and Motion for Summary Judgment against Defendants
22 Reyes and Jensen) (Docket No. 385).

23 [42] Decl., Ex Z (Stipulation and Order Setting Briefing and Hearing Schedule for SEC's Motion for
Summary Judgment and Defendant's Motion Under Federal Rule of Civil Procedure 56(f), *Securities
24 & Exchange Commission v. Reyes*, No. C-06-04435 CRB (N.D. Cal. May 28, 2008)) (Docket No.
392).

25 [43]  Decl., Ex. C.

26 [44]  Decl., Ex. Q.

27 [45]  Decl., Ex. F.

28

4.      Undertaking executed by Gregory Reyes requesting advancement of legal fees and expenses.[46]

5.      Gregory Reyes' Response to the United States Sentencing Memorandum in *United States v. Reyes*, No. CR 06-00556 CRB in the United States District Court, Northern District of California, San Francisco Division, filed on January 14, 2008 (Docket No. 805).[47]

6.      Judgment, *United States v. Reyes*, No. CR 06-00556-001 CRB, in the United States District Court, Northern District of California, San Francisco Division, filed on January 17, 2008 (Docket No. 813).[48]

## IV.    PARTIAL SUMMARY JUDGMENT AND DECLARATORY RELIEF IS NECESSARY AND PROPER

### A.    Summary Judgment Standard

The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Vatrett*, 477 U.S. 317, 323-24 (1986); *Home Diagnostics Inc. v. Lifesan Inc.*, 120 F. Supp. 2d 864, 865 (N.D. Cal. 2000). A party may move for summary judgment "on all or any part" of a claim. Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("'It is clear that Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim[.]'").[49]

Summary judgment is proper if "there is no genuine issue as to any material fact and … the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Radobenko v. Automated Equip. Co.*, 520 F. 2d 540, 543 (9th Cir. 1975). A fact is material only if it would affect the outcome

---

[46] Decl., Ex. O, Attachment B at 39 ("Reyes has requested advancement of legal fees and expenses that have been and may be expended in obtaining legal representation for the Investigations and Brocade has agreed to so provide under the provisions of the Indemnification Agreement between Brocade and Reyes (the "Reyes Indemnification Agreement"), Article XII of Brocade's Certificate of Incorporation, and Article VI, Section 6.5 of Brocade's Bylaws which requires Reyes to provide an undertaking.").

[47] Decl., Ex. P at 21:5 ("Brocade advanced legal fees to Mr. Reyes…").

[48] Decl., Ex. R.

[49] The present motion seeks *partial* summary judgment insofar as it seeks adjudication of Reyes' entitlement to indemnification against claims that he violated the federal securities laws. Plaintiff also maintains that Reyes' conviction terminates his entitlement to indemnification in the federal and state derivative actions, to the extent that the claims in those cases are coextensive with the claims that Reyes violated the federal securities laws. Where those claims are not coextensive, Reyes' misconduct disqualifies him for indemnification under state law. Plaintiff reserves those issues for separate motion.

1  of a motion under governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

2  (1986).  There can be no genuine dispute about the facts material to this motion.  No additional

3  discovery is necessary and none should be permitted.  *See* Fed. R. Civ. P. 56(f); *Maljack Prods., Inc.*

4  *v. GoodTimes Home Video Corp.*, 81 F.3d 881, 888 (9th Cir. 1996) (no additional discovery

5  required, unless it would yield evidence sufficient to preclude summary judgment).[50]

6      Summary judgment is "not a disfavored procedural shortcut, but … the principal tool by

7  which factually insufficient claims or defenses can be isolated and prevented from going to trial with

8  the attendant unwarranted consumption of public and private resources."  *United States ex rel.*

9  *Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 816 (9th Cir. 1995) (citing *Celotex*, 477 U.S. at 327).

10  Summary judgment is the appropriate procedural mechanism for establishing the preclusive effect of

11  prior judgments in subsequent litigation.  *See infra* Section V.C.3.

12      For the reasons set forth below, partial summary judgment on Count XIV of the Amended

13  Complaint, which seeks a declaration that Reyes may not be indemnified or advanced monies to

14  defend against claims that he violated the federal securities laws, is necessary and proper.

15      **B.    Federal Law Prohibits Advancement and Indemnification in Connection with
        Any Claim that Reyes Violated the Federal Securities Laws**

16

17      **1.    Federal Public Policy Prohibits Indemnification for Violations of the
            Federal Securities Laws**

18      "The federal securities laws have been uniformly found not to contain either an express or an

19  implied right to indemnity.  Indeed, indemnification for violations of the federal securities laws has

20  been found to 'run counter to the basic policy of the federal securities laws.'"  Ralph C. Ferrara *et al.*,

21  *Shareholder Derivative Litigation: Besieging the Board*, §12.10 at 12-30 (2007).  The leading case is

22  *Globus*, 418 F.2d at 1288, which sets forth the widely recognized federal prohibition against

23  indemnification:

24      '[I]t would be against the public policy embodied in the federal securities legislation
        to permit [a defendant "found guilty of misconduct in violation of the public interest
25      involving actual knowledge of false and misleading statements or omissions and
        wanton indifference to its obligations and the rights of others"] to enforce its
26      indemnification agreement.'

27  ───────────────
    [50]  Here, as throughout, citations are omitted and emphasis is added, unless otherwise indicated.

28

1  *Globus*, 418 F.2d at 1288 (quoting *Globus v. Law Research Service, Inc.*, 287 F. Supp. 188, 189

2  (S.D.N.Y. 1968) (ellipsed language restored), *overruled in part on other grounds*, 418 F.2d 1276 (2d

3  Cir. 1969)).

4          Courts have consistently recognized that, whatever the source of entitlement, indemnification

5  runs counter to the policies expressed in the federal securities laws.  *Laventhol*, 637 F.2d at 676

6  (affirming dismissal of accountant's and underwriter's claims for indemnification against issuer for

7  fraud claims arising out of limited partnership prospectus) ("'Whereas contribution supports the

8  policy of securities legislation, indemnification tends to frustrate and defeat it.  *A securities*

9  *wrongdoer should not be permitted to escape loss by shifting his entire responsibility to another*

10  *party*.'") (quoting *Heizer*, 601 F.2d at 334); *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 200

11  (9th Cir. 1988) (following *Laventhol*, 637 F.2d 672); *Baker*, 876 F.2d at 1108 (following *Laventhol*)

12  ("Here, *plaintiff's wrongdoing has been plainly adjudicated, and a state action for indemnification*

13  *would frustrate the basic enforcement of federal securities law*.  Plaintiff's [state law] claim for

14  *indemnification is therefore preempted* and should be dismissed with prejudice."); *Alvarado*

15  *Partners L.P. v. Mehta*, 723 F. Supp. 540, 549, 553-54 (D. Colo. 1989) ("[C]laims for

16  indemnification based on sections of either the Securities Act or the Exchange Act have been

17  rejected uniformly as contrary to the regulatory nature of the federal securities laws."); *In re Olympia*

18  *Brewing Co. Sec. Litig.*, 674 F. Supp. 597, 610 (N.D. Ill. 1987) ("[C]ourts uniformly have denied

19  defendants the right to indemnity in federal securities law cases where those defendants acted with

20  an intent to commit a violation of those laws" because "indemnity might frustrate the congressional

21  policy of deterring securities fraud.").

22          **2.    Federal Public Policy Preempts Any Entitlement to Indemnification**
                   **Under State Law**

23

24          The strong federal public policy against indemnifying persons who violate the federal

25  securities laws preempts state law-based indemnification entitlements.  David A. Drexler et al.,

26  *Delaware Corporation Law and Practice*, §16.02[3][a], at 16-10 (2006) ("It appears well established

27  that federal law is preemptive and precludes on federal public policy grounds indemnification under

28

1   state law for judgments incurred for such violations.") (citing *Globus*, 418 F.2d 1276, 1287-89;

2   *Laventhol*, 637 F.2d 672, 676; *Heizer,* 601 F.2d 330, 334).

3       The state law sources of indemnification in this case, including Brocade's Restated and

4   Amended Certificate of Incorporation and Amended and Restated Bylaws[51] and the purported

5   August 15, 2002, Indemnification Agreement,[52] are preempted because they "actually conflict with

6   federal law."  *Baker*, 876 F.2d at 1107 (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248

7   (1984)).[53]  Indemnification "would run counter to the basic policy of the federal securities laws to

8   allow a securities wrongdoer … to shift its entire responsibility for federal violations on the basis of

9   collateral state action for indemnification."  *Baker*, 876 F.2d at 1108 (following *Globus*, 418 F.2d

10  1276); *Lucas v. Hackett Assoc., Inc.*, 18 F. Supp. 2d 531, 535-36 (E.D. Pa. 1998) ("to the extent that

11  Murland intends to seek indemnification premised on violations of federal securities laws—whether

12  those violations are clothed as state law tort claims or federal law securities claims—Murland may

13  not seek indemnity because such claims are preempted"); *Alvarado Partners*, 723 F. Supp. at 554-55

14  ("[I]n order to ensure that no party shirks its responsibility under federal securities laws and to

15  preserve the deterrent effect of those laws, courts refuse to enforce claims for indemnification

16  created by contract. ...  Thus, any state claim under an indemnification agreement that is coextensive

17  with a federal indemnification claim may be extinguished because of the overriding federal concerns

18  at issue."); *Maryville Academy v. Loeb Rhoades & Co.*, 530 F. Supp. 1061, 1072 (N.D. Ill. 1981)

19  (contractual and common law indemnification prohibited by federal public policy); *cf. Raychem

20  Corp. v. Fed. Ins. Co.*, 853 F. Supp. 1170, 1179 (N.D. Cal. 1994) (indemnification barred by conflict

21  preemption where person adjudged liable for violation of federal securities laws, but not in the

22  absence of adjudication).

23

---

24  [51]  *See* Decl., Exs. M-N.

25  [52]  *See* Decl., Ex. O.

26  [53]  Where, as here, state law "'stand[s] as an obstacle to the accomplishment and execution of the full
27  purposes and objectives of Congress,'" actual conflict is established and state law is preempted.
    *Bank of America*, 309 F.3d at 558.

28

1         The federal policy compelling preemption is at its strongest here, where the party claiming

2  entitlement to indemnification has been convicted of "knowingly" and "willfully" violating federal

3  securities laws, and of having "acted for the purpose of defrauding buyers or sellers of Brocade

4  common stock – that is, … with an intent to cheat or deceive."[54]    As the Seventh Circuit has

5  observed:

> A securities wrongdoer should not be permitted to escape loss by shifting his entire
> responsibility to another party…. This is particularly true after *Ernst & Ernst v.
> Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), holding that a
> private cause of action will not lie under §10(b) and Rule 10b-5 in the absence of
> "scienter," defined as a mental state embracing intent to deceive, manipulate, or
> defraud.  In order to be found liable under Rule 10b-5, one must be found to have
> scienter or intent to defraud and such a person should not get off scot-free through
> indemnification.

*Heizer*, 601 F.2d at 334.  *But cf. Baker*, 876 F.2d 1101, 1108 ("Although a right to indemnification

may not be preempted in each and every circumstance, we reject plaintiff's assertion that the federal

policy against indemnification extends only to intentional wrongdoing.  The goal of the 1933 and

1934 Acts is preventative as well as remedial, … and '[d]enying indemnification encourages the

reasonable care required by the federal securities provisions.'") (citing *Laventhol*, 637 F.2d at 676,

and *Olympia Brewing*, 674 F. Supp. at 611).

         Regardless of the putative source of indemnification, federal public policy prohibits advances

and indemnification against any claim in any action that Reyes violated the federal securities laws by

misrepresenting Brocade's stock option grants and accounting.

> **C.    Under the Doctrine of Collateral Estoppel, Reyes' Conviction Should Be
> Applied to Terminate His Entitlement to Advancement and Indemnification in
> Any Action Based on Claims that He Violated the Federal Securities Laws**

         "'A prior conviction will estop a party from contesting in a later suit any element necessarily

established in the criminal trial.'"  *Richey*, 9 F.3d at 1410-14 (quoting *Considine v. United States*,

683 F.2d 1285, 1286 (9th Cir. 1982)); *Winkler*, 693 F. Supp. at 903 (conviction for violation of

federal and state securities laws precludes defense in later civil action brought by investors harmed

in substantially similar fraud scheme).

---

[54]  Decl., Ex. Q (Jury Instructions) at 21, 24, 28, 30, 32.

1    This application of the doctrine of collateral estoppel is called "non-mutual offensive

2 collateral estoppel." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 876 n.1 (9th Cir. 2007). "'Offensive

3 non-mutual collateral estoppel ... arises when a plaintiff seeks to estop a defendant from relitigating

4 an issue which the defendant previously litigated and lost against another plaintiff.'" *Id.* (quoting

5 *Appling v. State Farm Mut. Auto Ins. Co.*, 340 F.2d 769, 775 (9th Cir. 2003)). The prerequisites for

6 applying non-mutual offensive collateral estoppel are:

7         (1) there was a full and fair opportunity to litigate the identical issue in the prior
          action; (2) the issue was actually litigated in that action; (3) the issue was decided in
8         a final judgment; and (4) the person against whom [collateral estoppel] is asserted
          was a party or in privity with a party in the prior action."
9
10 *Id.* at 882 n.8 (quoting *Syverson v. IBM*, 472 F.2d 1072, 1078 (9th Cir. 2007)).

11    Collateral estoppel applies in this action to preclude Reyes from relitigating the question of

12 whether he knowingly and willfully violated federal securities laws by making and repeating false

13 statements about Brocade's stock option grants and accounting. The criminal judgment conclusively

14 establishes that federal public policy prohibits Reyes' indemnification in connection with any claim

15 that his stock option backdating scheme violated the federal securities laws.

16         **1.    The Issues Determined in Reyes' Criminal Conviction Terminate His
                Indemnification and Advancement Rights**

17    Subject to his purported entitlement to indemnification under state law, Reyes has received

18 advances of expenses, including attorneys' fees and costs, in at least three actions predicated on

19 allegations that he knowingly and willfully violated federal securities laws by making false

20 statements about Brocade's stock option grants and accounting: the Criminal Action, the Securities

21 Fraud Class Action and the SEC Action.

22    With regard to the Criminal Action, the identical issue requirement plainly is satisfied. As a

23 matter of federal law, the criminal verdict eliminated Reyes' entitlement to advancement or

24 indemnification from any source against fines, expenses and attorneys' fees arising out of the

25 Criminal Action and appeal therefrom. *See supra* Section V.B.

26    This Court has already heard and rejected Reyes' arguments that the issues conclusively

27 determined in the Criminal Action were not the same as those at issue in the Securities Fraud Class

28

1   Action, and so Plaintiff will not belabor the point here.[55]  Suffice it to say, the indictment, trial

2   transcript, jury instructions and post-trial briefing inform the general verdict, and make clear that the

3   issues decided by the jury in convicting Reyes were substantially the same as those at issue in the

4   Securities Fraud Class Action.[56]

5           Reyes' argument that preclusion should be limited to the three sets of statements identified in

6   the verdict was properly rejected because the scheme and statements alleged in the Securities Fraud

7   Class Action were substantially the same as those for which he was convicted.  *See Winkler*, 693 F.

8   Supp. at 902-03 (summary judgment granted on basis of conviction for substantially same fraud

9   scheme and statements, even where count of indictment concerning civil claimant was dropped

10  before criminal trial); *see also Richey*, 9 F.3d at 1410-11 (felony willful assistance in preparation of

11  false tax return held substantially same issue as willful attempt to understate tax liabilities in

12  subsequent civil action for refund and abatement of penalties under different statute); *Martinez v.*

13  *Universal Underwriters Ins. Co.*, 819 F. Supp. 921, 922 (W.D. Wash. 1992) (conviction of first

14  degree arson established intent for purpose of insurance exclusion); authorities cited *infra* Section

15  V.C.3.

16          The Court correctly held that Reyes was precluded by facts necessarily established in his

17  conviction from relitigating the first three elements of the Section 10(b)/ Rule 10b-5 claims.  These

18  elements are sufficient to establish liability for a federal securities law violation, i.e., that Reyes

19  knowingly and willfully made material misrepresentations in connection with the purchase or sale of

20  a security "for the purpose of defrauding buyers or sellers of Brocade stock -- that is, Mr. Reyes

21  acted with an intent to cheat or deceive."[57]  Although the class' recovery required proof of reliance,

22  causation and damages, insofar as federal public policy is concerned, the criminal finding that Reyes

23

---

24  [55]  *See* Decl., Ex. V (Civil Minutes and Trial Transcript) (Docket No. 392).

25  [56]  In fact, Reyes was convicted of a broader range of conduct in violation of the federal securities
26  laws than was charged in the Class Action.  In addition to making false SEC filings, Reyes was
    convicted of lying to outside auditors, falsifying books, records and accounts and conspiracy.  Decl.,
    Ex. F.

27  [57]  *See* Decl., Ex. Q (Jury Instructions) at 24 (Docket No. 543).

28

1    knowingly and willfully violated the federal securities laws is enough to bar indemnification in the

2    civil action.  *See, e.g.*, *United States v. Charnay*, 537 F.2d 341, 348 (9th Cir. 1976) ("The primary

3    difference between criminal and civil prosecutions under the securities laws is the burden of proof

4    required for a verdict…. '[T]here is no reasonable basis for holding that some different interpretation

5    of (Rule 10b-5) should apply to a criminal action' than in a civil action.").  *See supra* Section V.B.

6         Although the Court has yet to decide the SEC's motion for summary judgment, the claims in

7    that matter also align with the issues determined in the criminal judgment.[58]  Even where the specific

8    statutory violations differ, the predicate facts remain the same:  Did Reyes knowingly and willfully

9    violate the federal securities laws by making false statements about Brocade's stock option grants

10   and accounting?  The jury's guilty verdict is conclusive of that question.  *See also infra* Section

11   V.C.3.

12              **2.    Reyes Had a Full and Fair Opportunity to Litigate and Actually
13                     Litigated the Issues Material to this Motion in the Criminal Action**

14        Whether a party had a "full and fair opportunity" to litigate the issues in the first action turns

15   on two factors: (1) whether the party against whom prelusion is sought had sufficient incentive to

16   actually litigate the issues; and (2) whether "procedural opportunities unavailable in the first action

17   … could readily cause a different result" in the subsequent action.  *Parklane Hosiery Co. v. Shore*,

18   439 U.S. 322, 331 & n.15 (1979).

19        The urgent need for the relief sought by this motion arises from the extraordinary sums of

20   Brocade's money that Reyes has spent in defending these actions – over $40 million, most of which

21   was spent in the Criminal Action.[59]  With his freedom and fortune at stake, Reyes had the highest

22   incentive to fiercely litigate the relevant issues, and he did so.  *See Anderson v. Janovich*, 543 F.

23   Supp. 1124, 1130 (W.D. Wash. 1982) ("defendants had an extremely high incentive to litigate

24   vigorously in the prior action since they faced long prison terms if convicted"); *Hurtt v. Stirone*, 206

25   A.2d 624, 627 (Pa. 1965) ("we find it incredible in such a situation that a defendant would present

26   _____

     [58]  Decl., Ex. C (Indct.) at 16-28; Ex. L (SEC Complaint) at 15-20.

27   [59]  Decl., Ex. O at Attachment A.

28

- 19 -

1   less than his best defense, knowing that his failure would result in the loss of substantial property or

2   even his liberty").  Reyes retained a talented legal team who mounted a vigorous, cost-is-no-object

3   defense.  The trial lasted over five weeks.  Twenty-three witnesses testified and hundreds of exhibits

4   were entered into evidence.[60]

5       Reyes' opportunity to litigate the Criminal Action was fair, and no procedural opportunities

6   available to him in the civil actions would readily cause a different result.  Reyes was afforded all the

7   special procedural protections to which a criminal defendant is entitled, including the requirements

8   that the government prove every element of the crimes beyond a reasonable doubt and that the jury

9   reach a unanimous verdict.[61]  *See Martinez*, 819 F. Supp. at 922 (errors urged on appeal do not

10  establish that prior criminal proceeding was unfair) ("A criminal conviction is especially full and fair

11  in light of the special procedural protections afforded the defendant, including the higher burden of

12  proof."); *Anderson*, 543 F. Supp. 1124, 1130 (arguments that "inherent differences between criminal

13  and civil procedure prevent the fair use of collateral estoppel in a civil case following a criminal

14  conviction" have been "implicitly yet forcefully rejected over the years").

15      Moreover, Reyes filed Rule 29 and Rule 33 motions objecting to various aspects of the trial,

16  which this Court found lacked merit.[62]  Under these circumstances, there can be no reasonable

17  dispute that the first, second and fourth requirements for the application of collateral estoppel are

18  satisfied.  *See, e.g.*, *Leader v. California*, 182 Cal. App. 3d 1079, 1088 (1986) ("The criminal

19  charges were thoroughly litigated.  Leader was represented by counsel, engaged in pretrial

20  discovery, had a three-day trial wherein witnesses testified and were cross-examined, and diagrams

21  and photographs were introduced, and following the guilty verdict, a motion for a new trial was

22  argued.  Therefore, Leader not only had a full and fair opportunity to defend himself, but in fact did

23  so.").

24

25  [60]  *See* Decl., Ex. D (Tr.).

26  [61]  *See* Decl., Ex. Q (Jury Instructions); Ex. F (Verdict).

27  [62]  *See* Decl., Exs. B, E.

28

1

2

### 3. The Criminal Judgment Is Final and Should Be Accorded Full Preclusive Effect in this Action

3

With regard to the third element of collateral estoppel, all issues material to this motion were

4

conclusively determined against Reyes in a final federal criminal judgment.[63] Federal judgments are

5

final and accorded full preclusive effect notwithstanding the pendency of an appeal. *Huron Holding*

6

*Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 188 (1941) ("[I]n the federal courts, the general

7

rule has long been recognized that ... until and unless [the judgment] is reversed," an appeal does not

8

"detract from a decision's decisiveness and finality."); *Tripati*, 857 F.2d at 1367 ("'The established

9

rule in the federal courts is that a final judgment retains all of its res judicata consequences pending

10

decision on appeal ….") (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and*

11

*Procedure* §4433, at 308 (1981)); *Hawkins*, 984 F.2d 321, 324 ("'"[I]n federal courts … the

12

preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that

13

remains undecided."'") (quoting *Robi v. Five Platters, Inc*., 838 F.2d 318, 327 (9th Cir. 1988));

14

*Transaero, Inc. v. Fuerza Aerea Boliviana*, 99 F.3d 538, 540 (2nd Cir. 1996) (following *Huron*, 312

15

U.S. 183); *Petrella v. Siegel*, 843 F.2d 87, 90 (2nd Cir. 1988) (same).

16

This rule applies with equal force to the preclusive effect of criminal convictions in

17

subsequent civil proceedings. *Smith*, 129 F.3d at 362 (*en banc*) (injunction against civil enforcement

18

action lifted because evidence suppressed in criminal trial unnecessary in civil proceedings; SEC

19

20

21

22

23

24

25

26

27

28

---

[63] The question of when a judgment is final and accorded preclusive effect is determined by the law of the court that entered judgment, and is therefore governed by federal law here. *Hawkins v. Risley*, 984 F.2d 321, 324-25 (9th Cir. 1993) ("Although federal courts apply state law to determine the preclusive effect of state court judgments, … we apply federal law to determine the preclusive effect of federal court judgments on federal questions."); *Performance Plus Fund, Ltd. v. Winfield & Co.*, 443 F. Supp. 1188, 1189-90 (N.D. Cal. 1977) (federal finality rule applies to federal judgment, even where federal court sits in diversity and state rule differs); *C.F. Trust, Inc. v. First Flight, Ltd. P'ship*, 140 F. Supp. 2d 628, 641 (E.D. Va. 2001) (same), *aff'd*, 338 F.3d 316 (4th Cir. 2003); *Swaffield v. Universal ECSCO Corp.*, 271 Cal. App. 2d 147, 158-60 (1969) (securities fraud conviction conclusive proof of conduct charged in subsequent civil action despite pendency of appeal) ("Although the California rule is that a judgment is not final for purposes of collateral estoppel until final disposition on appeal …, under the federal rule which is the law of the forum, the pendency of an appeal does not suspend the operation of an otherwise final judgment for purposes of … collateral estoppel."). The Delaware rule is consistent with the federal rule of finality. *Maldonado v. Flynn*, 417 A.2d 378, 384 (Del. Ch. 1980) ("a judgment being appealed will support the application of the doctrine of res judicata"); *In re Nat'l Auto Credit, Inc.-S'holders Litig.*, No. 19028-NC, 2004 WL 1859825, at *2 (Del. Ch. Aug. 3, 2004) (same).

1   would be permitted to rely on conviction's preclusive effects, notwithstanding appeal); *Sec. & Exch.*

2   *Comm'n v. Bilzerian*, 29 F.3d 689, 693-94 (D.C. Cir. 1994) (conviction of securities law violations

3   established all facts required to prove SEC's claims in subsequent action for civil remedies); *Rice*,

4   998 F.2d at 999 (conviction precluded relitigation of issues on which discharge based in subsequent

5   administrative discharge proceedings) (the "law is well settled that the pendency of an appeal has no

6   effect on the finality or binding effect of a trial court's holding"); *Sec. & Exch. Comm'n v.*

7   *Gruenberg*, 989 F.2d. 977, 978 (8th Cir. 1993) (convictions for wire fraud and securities fraud

8   establish issue preclusion supporting SEC's summary judgment seeking permanent injunction);

9   *Kowalski v. Gagne*, 914 F.2d 299, 302-04 (1st Cir. 1990) (defendant in wrongful death action

10  precluded from relitigating intent established by second degree murder conviction); *United States v.*

11  *Int'l Bhd. of Teamsters*, 905 F.2d 610, 620-21 (2nd Cir. 1990) (conviction supports issue preclusion

12  in union disciplinary hearings, despite pendency of appeals; if convictions reversed, orders based on

13  them may be reopened); *Anderson*, 543 F. Supp. at 1130-32 (civil plaintiffs suing for damages under

14  RICO Act properly relied upon criminal RICO conviction for issue preclusion).

15      All the elements support application of collateral estoppel in this matter, and Reyes' criminal

16  conviction should be given full preclusive effect.  This Court should therefore declare that, as a

17  matter of federal public policy, Reyes is not entitled to indemnification or advancement in

18  connection with any claim that his backdating scheme and statements about Brocade's stock option

19  grants and accounting violated the federal securities laws. [64]

20

21  [64]   Although under Delaware law, advancement and indemnification are treated as separate
    entitlements, the criminal judgment precludes advancement for the same reasons that
22  indemnification is prohibited.  Any further advances are contrary to public policy and any
    entitlement to advancement as may arise under state law is preempted.  Once a determination is
23  made that Reyes is not entitled to indemnification, any monies advanced to Reyes must be returned
    to Brocade, so as to prevent Reyes from shifting his responsibility for his wrongdoing to Brocade
24  and undermining the deterrent effects of the federal securities laws. *See, e.g.*, *Baker*, 876 F.2d at
    1108.  State law compels the same result.  Under Delaware law, defense expenses may be advanced,
25  subject to an ultimate determination that the recipient is not entitled to be indemnified.  Del. Code
    Ann. Tit. 8, §145(e).  Reyes was required to execute an undertaking in which he promised "to repay
26  such amount if it shall ultimately be determined that [he] is not entitled to be indemnified by the
    corporation as authorized in this section."  *Id.*  Reyes executed such an undertaking and should be
27  estopped from arguing that he is entitled to further advancements or to retain expenses advanced to
    date.  *See* Decl., Ex. O, Attachment B (Reyes' Undertaking) at 39.

28

- 22 -

1    **D.    The Court Should Declare that Reyes Is Not Entitled to Indemnification or Advancement in Connection with Any Claim that He Violated the Federal Securities Laws**

2

3    Count XIV of the Amended Complaint seeks a declaration that "Reyes is not entitled to

4    indemnification from Brocade and must therefore return all advanced legal fees, expenses and other

5    monies to the Company."  This motion seeks partial summary adjudication of this request for relief,

6    specifically as to advancements and indemnification in the Criminal Action, the Securities Fraud

7    Class Action and the SEC Action.  *See* Proposed Order filed herewith.

8    "Granting declaratory relief is committed to the sound discretion of the trial court."  *Bilbrey*

9    *by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984).  "The Courts have generally recognized

10    two criteria for determining whether declaratory relief is appropriate: ' (1) when the judgment will

11    serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will

12    terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the

13    proceeding." *Id.*  District Courts are cautioned to "(1) avoid needless determination of state law

14    issues; (2) discourage litigants from filing declaratory actions in an attempt to forum shop; and (3)

15    avoid duplicative litigation." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)

16    (*en banc*) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)).  The Ninth Circuit

17    suggests consideration of additional factors, as well:

18    "whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue;

19    whether the declaratory action is being sought merely for purposes of procedural fencing or to obtain 'res judicata' advantage; or whether the use of a declaratory

20    action will result in entanglement between the federal and state court systems.  In addition, the district court might also consider the convenience of the parties, and the

21    availability and relative convenience of other remedies."

22    *Id.* 1225 n.5 (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 145 (9th Cir. 1994)).

23    Declaratory judgment here will accomplish all of these objectives, and raises none of these

24    concerns.  First, by clarifying that Reyes is not entitled to advancement or indemnification in

25    connection with claims that he violated the federal securities laws, declaratory judgment will settle

26    all aspects of the controversy regarding Reyes' rights and Brocade's obligations to indemnify Reyes

27    in connection with the Criminal Action and appeal, the Securities Fraud Class Action and the SEC

28    Action.  *Allstate Ins. Co. v. Davis*, 430 F. Supp. 2d 1112, 1122 (D. Haw. 2006) ("'a declaratory

- 23 -

1  judgment need not resolve all the issues or the entire controversy, '[t]he controversy settled by

2  declaratory judgment need only be an autonomous dispute.'").

3         Second, this claim for declaratory relief has nothing to do with forum shopping or procedural

4  fencing.  In fact, this claim is brought in a forum that is convenient to all parties, before a Court that

5  is uniquely well-positioned to decide these issues.  The declaration sought will *prevent* entanglement

6  between the federal and state court systems, *reduce* duplicative collateral litigation and *avoid* the

7  needless determination of state law issues.  Following his conviction, preemption principles require

8  that the question of Reyes' entitlement to advancement and indemnification in connection with

9  claims that he violated the federal securities laws be decided under federal law.  Federal public

10  policy prohibits indemnification and advancement, notwithstanding state law or contract terms.  The

11  declaratory relief sought by Plaintiff in this motion will eliminate the need to commence collateral

12  litigation, perhaps in a third forum, that might involve questions of Reyes' entitlement to

13  advancement and indemnification under state law.

14         The case for declaratory relief is especially compelling here because only a declaration can

15  prevent further violation of the federal public policy against indemnifying persons guilty of violating

16  the federal securities laws.  The day Reyes was convicted of securities fraud, he lost any entitlement

17  he might have had to advancement and indemnification.  Reyes cannot now demand advances, and

18  Brocade cannot, consistent with federal public policy, continue to advance expenses incurred in

19  Reyes' defense against claims that he violated the federal securities laws.  Reyes' continued

20  enjoyment of monies advanced to date, and any future advances, is contrary to public policy and

21  should not be countenanced by this Court.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    **V.    CONCLUSION**

2          For the foregoing reasons, Plaintiff respectfully requests that this motion be granted and that

3    the proposed order, as well as any other relief that the Court deems appropriate, be entered forthwith.

4    Dated: July 25, 2008                              Respectfully submitted,

5                                                      JOHNSON BOTTINI, LLP
                                                       FRANK J. JOHNSON
6                                                      FRANCIS A. BOTTINI, JR.
                                                       DEREK J. WILSON
7

8                                                      _____/s/Francis A. Bottini, Jr._____
                                                              FRANCIS A. BOTTINI, JR.
9
                                                       655 W. Broadway, Suite 1400
10                                                     San Diego, CA 92101
                                                       Telephone: (619) 230-0063
11                                                     Facsimile:  (619) 233-5535

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  JOHNSON BOTTINI, LLP
    FRANK J. JOHNSON (174882)
2  frankj@johnsonbottini.com
    FRANCIS A. BOTTINI, JR. (175783)
3  frankb@johnsonbottini.com
    DEREK J. WILSON (250309)
4  derekw@johnsonbottini.com
    655 W. Broadway, Suite 1400
5  San Diego, CA 92101
    Telephone: (619) 230-0063
6  Facsimile:  (619) 233-5535

7  Attorneys for Plaintiff

8

               UNITED STATES DISTRICT COURT
9
            NORTHERN DISTRICT OF CALIFORNIA
10
                SAN FRANCISCO DIVISION
11

| | |
|---|---|
| 12  MARY E. BARBOUR AS TRUSTEE FOR THE MARY E. BARBOUR FAMILY TRUST ONE, Derivatively On Behalf of BROCADE COMMUNICATIONS SYSTEMS, INC., | ) Case No.  C 08-02029 CRB ) ) (Derivative Action) ) |
| 13 | ) |
| 14                Plaintiff, | ) [PROPOSED] ORDER GRANTING MOTION ) FOR PARTIAL SUMMARY JUDGMENT ) AGAINST DEFENDANT GREGORY L. |
| 15        vs. | ) REYES ON COUNT XIV (DECLARATORY ) RELIEF) OF PLAINTIFF'S AMENDED |
| 16  GREGORY L. REYES, DAVID L. HOUSE, MICHAEL KLAYKO, RICHARD | ) SHAREHOLDER DERIVATIVE ) COMPLAINT |
| 17  DERANLEAU, KUMAR MALAVALLI ANTONIO CANOVA, MICHAEL J. BYRD, | ) ) |
| 18  STEPHANIE JENSEN, NEIL DEMPSEY, SANJAY VASWANI, L. WILLIAM | ) Hearing Date: August 29, 2008 ) Hearing Time: 10:00 a.m. |
| 19  KRAUSE, ROBERT R. WALKER, GLENN C. JONES, MICHAEL J. ROSE, SETH D. | ) ) Department:  Courtroom 8, 19th Floor |
| 20  NEIMAN, NICHOLAS G. MOORE, CHRISTOPHER B. PAISLEY, WILLIAM K. | ) Judge:  Honorable Charles R. Breyer ) Date Action Filed:  April 18, 2008 |
| 21  O'BRIEN, LARRY SONSINI, MARK LESLIE, TYLER WALL, RENATO A. | ) ) |
| 22  DIPENTIMA, JOHN W. GERDELMAN, ROBERT D. BOSSI, KPMG, LLP, WILSON | ) ) |
| 23  SONSINI GOODRICH & ROSATI, P.C. AND DOES 1-25, inclusive, | ) ) |
| 24               Defendants, | ) ) |
| 25      And | ) ) |
| 26 | ) |
| 27  BROCADE COMMUNICATIONS SYSTEMS, INC., a Delaware corporation, | ) ) |
| 28            Nominal Defendant. | ) ) |

1    On August 29, 2008, Plaintiff's Motion for Partial Summary Judgment Against Defendant

2    Gregory L. Reyes on Count XIV (Declaratory Relief) of Plaintiff's Amended Shareholder Derivative

3    Complaint came on for hearing.

4    THE COURT, having considered Plaintiff's Motion for Partial Summary Judgment Against

5    Defendant Gregory L. Reyes on Count XIV (Declaratory Relief) of Plaintiff's Amended Shareholder

6    Derivative Complaint and evidence submitted in support thereof, all responses thereto, and argument

7    of counsel, if any, and for good cause shown, HEREBY ORDERS as follows:

8    1.    The criminal conviction of Defendant Gregory Reyes ("Reyes") in *United States v.*

9    *Reyes*, No. CR 06-00556 CRB (the "Criminal Action") conclusively establishes that Reyes

10   knowingly and willfully violated the federal securities laws by granting backdated in-the-money

11   stock options in violation of shareholder-approved stock option plans and by causing Brocade

12   Communications Systems, Inc. ("Brocade") to publish false and misleading financial statements that

13   misrepresented Brocade's stock option grants and accounting.

14   2.    Federal public policy prohibits the indemnification of Reyes against any claim in any

15   action that he violated the federal securities laws in connection with his backdating scheme and

16   misrepresentations regarding Brocade's stock option grants and accounting.  This federal policy

17   preempts and terminates any entitlement to indemnification or advancement to which Reyes might

18   otherwise have been entitled under state law.

19   3.    Reyes may not receive further advances, and, within 35 days of the date of entry of

20   this Order, must return to Brocade all funds advanced to date against expenses and costs, including

21   attorneys' fees, incurred by Reyes in defending the following actions and their antecedents:

22        (a)    the Criminal Action and Reyes' appeal from the final judgment therein;

23        (b)    *In re Brocade Securities Litigation*, No. 3:05-CV-02042-CRB; and

24        (c)    *Securities & Exchange Commission v. Reyes et al.*, No. 3:06-CV-04435-CRB.

25   IT IS SO ORDERED

26   DATE: _____          _____

27                                                  CHARLES R. BREYER
                                                    UNITED STATES DISTRICT JUDGE

28

- 1 -
[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT