DEWEY & LEBOEUF LLP
Barbara Caulfield  (bcaulfield@dl.com)
Peter Root (proot@dl.com)
1950 University Avenue, Suite 500
East Palo Alto, CA  94303
Telephone:  (650) 845-7000
Facsimile:  (650) 845-7333

Ralph C. Ferrara (rferrara@dl.com)
Ann M. Ashton (amashton@dl.com)
1101 New York Avenue, N.W., Suite 1100
Washington, DC 20005
Telephone:  (202) 346-8000
Facsimile:  (202) 346-8102

Jonathan E. Richman (jrichman@dl.com)
1301 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 259-8537
Facsimile:  (212) 259-6333

*Attorneys for*
*Brocade Communications Systems, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **MARY E. BARBOUR AS TRUSTEE FOR THE MARY E. BARBOUR FAMILY TRUST ONE, Derivatively On Behalf of BROCADE COMMUNICATIONS SYSTEMS, INC.,**<br><br>    **Plaintiff,**<br>    vs.<br>**GREGORY L. REYES, *et al*.,**<br><br>    **Defendants,**<br>    -and-<br><br>    **BROCADE COMMUNICATIONS SYSTEMS, INC., a Delaware corporation,**<br><br>    **Nominal Defendant.** | Case No.  C08-02029 CRB<br><br>ENGAGEMENT LETTER FILED AT THE REQUEST OF THE HON. CHARLES BREYER<br><br> Dept.:  8, 19th Floor<br> Judge:  The Honorable Charles R. Breyer |

ENGAGEMENT LETTER
CASE NO.:  C-08-02029 CRB

As requested by the Hon. Charles Breyer on August 21, 2008 at the Case Management Conference, counsel for Brocade's Special Litigation Committee files the engagement letter attached hereto as Exhibit A.

Respectfully submitted,

DEWEY & LEBOEUF LLP

By:  /s/ Barbara A. Caulfield
Barbara A. Caulfield
Peter E. Root
Attorneys for Nominal Defendant/Plaintiff
Brocade Communications

ENGAGEMENT LETTER
CASE NO.: C-08-02029 CRB

1

# EXHIBIT A

Engagement Letter Between Brocade Communications Systems, Inc. through its Special Litigation Committee and the law firms of Johnson Bottini, LLP and Robbins Umeda & Fink

**Case No. C-08-02029 CRB**

**BARBOUR V. REYES**

*JOHNSON BOTTINI, LLP*

*ROBBINS UMEDA & FINK, LLP*

**PRIVILEGED AND CONFIDENTIAL**

August 8, 2008

Dr. Renato DiPentima
Mr. John W. Gerdelman
Special Litigation Committee
c/o Brocade Communications Systems, Inc.
1745 Technology Drive
San Jose, California 95110

Re:    *Engagement Letter*

Dear Dr. DiPentima and Mr. Gerdelman:

We are pleased that you have asked Johnson Bottini, LLP and Robbins Umeda & Fink, LLP (the "Co-Counsel Firms") to serve as co-counsel with Dewey & LeBoeuf LLP in connection with the lawsuits captioned *Brocade Communications Systems, Inc. v. Reyes, et. al*, Case No. C05-02233 CRB (N.D. Cal.) (Breyer, J.), *In re Brocade Communications Systems, Inc. Derivative Litigation*, 05-cv-2233 (N.D. Cal.) (Breyer, J.), *In re Brocade Communication Systems, Inc. Derivative Litigation*, 05-cv-41683 (Cal. Santa Clara Super. Ct.) (Komar, J.), and *Barbour v. Reyes*, 08-cv-2029 (N.D. Cal.) (Breyer, J.), or in any other lawsuit in which the Special Litigation Committee asserts claims on behalf of Brocade Communications Systems, Inc. (all pending lawsuits and any subsequently filed, collectively, the "Lawsuits") While we will be engaged by Brocade, we will report, through Dewey & LeBoeuf as lead counsel, exclusively to the Special Litigation Committee that was created pursuant to a February 22, 2008 resolution of Brocade's Board of Directors.

The purpose of this letter is to set out the scope of our engagement and the compensation structure pursuant to which Brocade will pay the Co-Counsel Firms in connection with their work on the Lawsuits.

### *Scope of Engagement*

In connection with this representation, we understand that Dewey & LeBoeuf will be lead counsel with respect to the Lawsuits and that Dewey & LeBoeuf will inform us as to the specific work the Special Litigation Committee wishes the Co-Counsel Firms to conduct. We will discuss such work with Dewey & LeBoeuf prior to engaging in any work. In no event will we

Dr. Renato DiPentima  
Mr. John W. Gerdelman  - 2 -  August 8, 2008

undertake work or incur expenses not authorized by Dewey & LeBoeuf unless directed to do so by the Special Litigation Committee.

While the Special Litigation Committee may seek advice from Dewey & LeBoeuf and the Co-Counsel Firms or any combination of these firms on issues relating to the Lawsuits, we understand that the Special Litigation Committee will retain the exclusive authority to make all decisions respecting the pursuit and/or resolution of claims in the Lawsuits. In particular, we understand that the Special Litigation Committee will have exclusive authority to determine how to proceed with respect to the derivative actions that we filed, *In re Brocade Communication Systems, Inc. Derivative Litigation*, 05-cv-41683 (Cal. Santa Clara Super. Ct.) (Komar, J.), and *Barbour v. Reyes*, 08-cv-2029 (N.D. Cal.) (Breyer, J.), and that we will facilitate any action that the Special Litigation Committee determines to take – including substituting Brocade as the plaintiff and Dewey & LeBoeuf as lead counsel in the actions and/or dismissing one or both of these actions if the Special Litigation Committee decides such dismissal is appropriate. To that end, we represent that (*i*) Chan Huat Lim and Mary Barbour, (plaintiffs in these cases, respectively) are aware of, and have authorized us to enter into, this agreement and (*ii*) Mr. Lim and Ms. Barbour understand that Brocade will be substituted as plaintiff in their actions, that Dewey & LeBoeuf will become lead counsel in their actions, that it will be the exclusive decision of the Special Litigation Committee as to how to proceed in these actions and that the Co-Counsel Firms may not make any arguments or take any positions in any proceedings or any of the Lawsuits unless the Special Litigation Committee expressly authorizes them to do so.

### Conflicts of Interest

At present, we are not aware of any conflicts of interest in undertaking this representation of Brocade. Should a conflict of interest develop between the company and any other client we represent, we will inform the Special Litigation Committee immediately. We will not take on any new matter that creates a non-waivable conflict between Brocade and any other client, and we will not take on any new matter that creates a waivable conflict between Brocade and any other client unless the Special Litigation Committee and the other client agree to waive the conflict. The Special Litigation Committee may refuse to grant such waiver at its sole discretion.

### Compensation Arrangements

The following provisions set out the arrangements by which the Co-Counsel Firms will be compensated for work in connection with the Lawsuits. We understand that in no event will the Co-Counsel Firms have a right to any payment from Brocade for fees and expenses incurred and/or for benefits conferred on Brocade other than as set out in this letter.

Dr. Renato DiPentima  
Mr. John W. Gerdelman                           - 3 -                                   August 8, 2008

A.     *Fees and Expenses for Work Performed for Brocade's Benefit*

The Special Litigation Committee recognizes the benefits that the Co-Counsel Firms have conferred upon Brocade. Therefore, subject to court approval, Brocade will pay fees and expenses to the Co-Counsel Firms in the aggregate amount of $8,000,000 (the "Initial Payment"). Payment of 50% of this amount shall be made within 30 business days after the execution of this engagement letter by Brocade; payment of the remaining 50% shall be made (*i*) within 30 business days after either (*x*) the date on which all claims made in the Lawsuits are finally resolved or (*y*) the date on which the Special Litigation Committee determines to pursue no claims against any person or entity, or (*ii*) as set out in paragraph C. In addition, subject to court approval, at the time Brocade pays the first 50% of the Initial Payment, it will also pay $10,000 to each of Chan Huat Lim and Mary Barbour (as trustee of the Mary E. Barbour Family Trust One) who served as plaintiffs in, respectively, *In re Brocade Communication Systems, Inc. Derivative Litigation*, 05-cv-41683 (Cal. Santa Clara Super. Ct.) (Komar, J.), and *Barbour v. Reyes*, 08-cv-2029 (N.D. Cal.) (Breyer, J.), as incentive plaintiffs' awards for serving as derivative plaintiffs.

Payment of the Initial Payment is for the benefits conferred upon Brocade and will be made without regard to whether (*i*) any of the claims made in the Lawsuits are successful, (*ii*) any monetary damages are collected by Brocade in connection with the Lawsuits or (*iii*) the Co-Counsel Firms resign or are terminated pursuant to Paragraph C.

B.     *Compensation for Work Performed for Brocade After Execution of Engagement Letter*

If (*i*) none of the claims made in the Lawsuits is successful or (*ii*) Brocade does not collect any monetary damages in connection with the Lawsuits, Brocade shall not be obligated to make any further payments to the Co-Counsel Firms other than as set out in paragraph A above.

If Brocade is successful on any claims brought in the Lawsuits either as result of a judgment or a settlement that has become final and no longer subject to appeal, within 30 business days after the later of (*i*) the date on which *all* monies are collected by Brocade in connection with all such final judgments and/or settlements and (*ii*) the date on which *all* lawsuits that might be filed seeking indemnification for claims brought in the Lawsuits (including, but not limited to, lawsuits making claims for indemnification for fees and expenses) have been resolved by a judgment or settlement that has become final and no longer subject to appeal, Brocade will, subject to court approval, pay to the Co-Counsel Firms the Additional Compensation Amount, which amount shall be calculated pursuant to the formula

Dr. Renato DiPentima  
Mr. John W. Gerdelman                     - 4 -                            August 8, 2008

> Additional Compensation Amount = the lesser of (*i*) the Compensation Calculation and (*ii*) the Limitation Amount

where the capitalized terms of such formula shall have the following meanings:

1. The "Compensation Calculation" means the Aggregated Compensation Balance less the Offset Amount

2. The "Aggregated Compensation Balance" means the sum of:

    a. 25% of the portion of the Aggregated Recovery that is between $0.01 and $249,999,999.99;

    b. 10% of the portion of the Aggregated Recovery that is between $250,000,000 and $349,999,999.99; and

    c. 5% of the portion of the Aggregated Recovery that is over $350,000,000

    where the term "Aggregated Recovery" means the sum of all amounts collected by Brocade (including, but not limited to, all recoveries on asserted claims, all settlements, all recovery of advanced fees and expenses and all interest that is collected on any such amounts) less the aggregated sum of all expenditures paid by Brocade with respect to:

    (1) the Lawsuits since the time each of the Lawsuits was filed and until the claims in each are finally resolved including (but not limited to) (*i*) all *expenses* paid to Dewey & LeBoeuf in connection with the Lawsuits, (*ii*) all *expenses* paid to any other firms (other than the Co-Counsel Firms) retained by Brocade in connection with the Lawsuits, (*iii*) all *fees and expenses* paid on behalf of Brocade in connection with the retention of any experts for the Lawsuits, and (*iv*) any *fees and expenses* that Brocade, in its discretion, agrees to indemnify or that a court determines by judgment or order are indemnifiable; and

    (2) any (*i*) lawsuits that might be filed seeking indemnification or advancement of fees for claims brought in the Lawsuits (including, but not limited to, lawsuits making claims for indemnification or advancement of for fees and expenses)

Dr. Renato DiPentima  
Mr. John W. Gerdelman         - 5 -              August 8, 2008

from the time any such lawsuits are filed until they are finally resolved or (*ii*) claims that might be asserted against Brocade or the Special Litigation Committee arising out of the Lawsuits from the time any such claims are made until they are finally resolved (collectively, the "Defendants' Claims").

3. The "Offset Amount" means the sum of:

    a. All *fees* paid to Dewey & LeBoeuf in connection with (*i*) the Lawsuits (from the time that firm was retained by Brocade and/or until the time at which all claims in each of the Lawsuits are finally resolved) and (*ii*) any Defendants' Claims;

    b. All *fees* paid to firms or counsel retained by Brocade (other than the Co-Counsel Firms) in connection with (*i*) the Lawsuits (from the time each firm or counsel was retained by Brocade and until the time at which all claims in each of the Lawsuits are finally resolved) and/or (*ii*) any Defendants' Claims; *provided* that the $9,500,000 contribution made by the law firm of Wilson Sonsini Goodrich & Rosati, P.C. to Brocade shall be offset against such fees; *provided further* that such $9,500,000 contribution payment shall not be included in the Aggregated Recovery; and

    c. The Initial Payment

4. The Limitation Amount means:

    a. if the Compensation Calculation is $1,000,000 or less (including a negative amount), Brocade shall have no obligation to pay any amount under this Paragraph B of this engagement letter, and, under such circumstances, the only payment that Brocade shall be obligated to make under this engagement letter shall be the Initial Payment, which shall be paid pursuant to the terms set out in Paragraph A above;

    b. if the Compensation Calculation is between $1,000,000.01 and $2,000,000, Brocade shall be obligated to pay a Limitation Amount of $1,000,000;

Dr. Renato DiPentima  
Mr. John W. Gerdelman                            - 6 -                              August 8, 2008

    c.    if the Compensation Calculation is between $2,000,000.01 and $4,000,000, Brocade shall be obligated to pay a Limitation Amount of $2,000,000;

    d.    if the Compensation Calculation is between $4,000,000.01 and $8,000,000, Brocade shall be obligated to pay a Limitation Amount of $3,000,000;

    e.    if the Compensation Calculation is $8,000,000.01 or more, Brocade shall be obligated to pay the Compensation Calculation; *provided however*, that in no event shall the amount that Brocade is obligated to pay under this engagement letter (including both the Initial Payment and the Additional Compensation Amount (collectively, the "Aggregate Amount")) be in excess of $25,000,000; *provided further* that the Special Litigation Committee may, in its sole discretion, determine to have Brocade pay all or some portion of the Aggregate Amount that is in excess of $25,000,000.

For purposes of calculating the amounts referenced as "paid" in the above definitions, Brocade's payment records shall be deemed dispositive proof of all amounts paid.

    C.    **Termination of Engagement**

In the event that, prior to the later of (*i*) when all claims brought in the Lawsuits are finally resolved either by judgment or settlement and (*ii*) the final resolution by judgment or settlement of any Defendants' Claims, (*x*) we resign from our representation of Brocade under this engagement letter or (*y*) the Special Litigation Committee terminates our representation of Brocade because it determines in good faith that the representation provided by the Co-Counsel Firms does not meet the Special Litigation Committee's expectation for professionalism, cooperation or service, Brocade shall not be required to make any payment to the Co-Counsel Firms pursuant to paragraph B above. Within 30 business days following the Co-Counsel Firms' resignation in writing or the Special Litigation Committee's written notice of termination, Brocade shall pay the Co-Counsel Firms the second 50% of the Initial Payment. In the event of our resignation or termination under this paragraph C, the Co-Counsel Firms agree that we will have an unwaivable conflict should we seek directly or indirectly to bring any claims against Brocade or any of its current or former officers, directors or employees that arise from the allegations made in the Lawsuits.

Dr. Renato DiPentima  
Mr. John W. Gerdelman                              - 7 -                              August 8, 2008

D.    **Allocation of Compensation to Federal Plaintiffs' Counsel**

We understand that the Special Litigation Committee may reach a settlement with respect to the amount of fees and expenses that Brocade will be obligated to pay to the law firms of Federman & Sherwood and Faruqi & Faruqi, LLP (the "Federal Plaintiffs' Counsel") in connection with their work in prosecuting the derivative action captioned *In re Brocade Communications Systems, Inc. Derivative Litigation*, 05-cv-2233 (N.D. Cal.) (Breyer, J.) (the "Federal Consolidated Action"). We further understand that we shall be responsible for such amount up to $525,000 and that the amount paid to the Federal Plaintiffs' Counsel (up to $525,000) shall be subtracted from the first 50% of the Initial Payment that will be paid to us under Paragraph A above.

We further understand that, if the Federal Plaintiffs' Counsel and their clients agree to support Brocade's motion to realign the parties that was filed in the Federal Consolidated Action and the Court grants that motion, we will be responsible for allocating to the Federal Plaintiffs' Counsel a portion of the compensation that is paid to us under this engagement letter, such portion to be in excess of the payment referred to in the preceding paragraph. If the Co-Counsel Firms are unable to reach an allocation to the Federal Plaintiffs' Counsel in a manner acceptable to the Federal Plaintiffs' Counsel, the Co-Counsel Firms agree that the allocation issue shall be submitted to binding mediation in California (the costs of which will be borne equally by the Co-Counsel Firms and the Federal Plaintiffs' Counsel), with such mediation to be scheduled at or before the later of (*i*) the time at which the payment described in Paragraph B above is due to be paid to the Co-Counsel Firms and (*ii*) the time at which the Co-Counsel Firms resign or are terminated under Paragraph C.

* * * * *

We look forward to working with the Special Litigation Committee in connection with the Lawsuits.

Please confirm your understanding of our representation by signing and returning to the undersigned the enclosed copy of this letter.

Sincerely,

*[signature]*

Frank A. Bottini  
Johnson Bottini, LLP

Dr. Renato DiPentima  
Mr. John W. Gerdelman

- 8 -

August 8, 2008

*[signature]*

Marc Umeda  
Robbins Umeda & Fink, LLP

AGREED TO AND ACCEPTED  
ON BEHALF OF  
Brocade Communications Systems, Inc.

_____  
Renato DiPentima

_____  
John W. Gerdelman

Signed this \_\_\_ day of \_\_\_, 2008.

Dr. Renato DiPentima  
Mr. John W. Gerdelman                        - 8 -                              August 8, 2008

                                                    Marc Umeda  
                                                    Robbins Umeda & Fink, LLP

AGREED TO AND ACCEPTED  
ON BEHALF OF  
Brocade Communications Systems, Inc.

_/s/ Renato DiPentima_  
Renato DiPentima

_____  
John W. Gerdelman

Signed this _8_ day of _August_ 2008.

Dr. Renato DiPentima  
Mr. John W. Gerdelman                    - 8 -                        August 8, 2008

                                                                    Marc Umeda  
                                                                    Robbins Umeda & Fink, LLP

AGREED TO AND ACCEPTED  
ON BEHALF OF  
Brocade Communications Systems, Inc.

_____  
Renato DiPentima

*/s/ John W. Gerdelman*  
John W. Gerdelman  
Signed this __8__ day of August 2008.